**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

BARBARA DUKA,

                    *Plaintiff*,

          v.                                             No. 15-cv-357

U.S. SECURITIES AND EXCHANGE
    COMMISSION,

                    *Defendant*.

<u>**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A**
**TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 3

ARGUMENT ................................................................................................................... 7

I. STANDARD OF REVIEW ................................................................................... 7

II. PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS OF HER CLAIMS ........ 7

    A. This Court Lacks Jurisdiction ............................................................... 7

    B. Plaintiff's Article II Challenge Lacks Merit ....................................... 11

        1. SEC ALJs Are Employees, Not Inferior Officers of the United States ..... 11

        2. Even If SEC ALJs Are Officers, There Is No Separation of Powers Violation ............................................................................... 20

III. PLAINTIFF WILL NOT BE IRREPARABLY HARMED ABSENT AN INJUNCTION ........................................................................................... 23

IV. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST ARE IN THE GOVERNMENT'S FAVOR ............................................................................ 25

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE(S)**

*Altman v. SEC,*
    687 F.3d 44 (2d Cir. 2012) ................................................................. 1, 8, 9, 10

*Altman v. SEC,*
    768 F. Supp. 2d 554 (S.D.N.Y. 2011) ....................................................... 8, 9, 10

*Am. Benefits Grp. v. Nat'l Ass'n of Sec. Dealers,*
    No. 99 CIV 4733, 1999 WL 605246 (S.D.N.Y. Aug. 10, 1999) ....................... 10

*Brennan v. HHS,*
    787 F.2d 1559 (Fed. Cir. 1986) ....................................................................... 18

*Buckley v. Valeo,*
    424 U.S. 1 (1976) ................................................................................. 12, 13, 15

*Cannon v. Univ. of Chicago,*
    441 U.S. 677 (1979) ........................................................................................ 15

*Charles Hughes & Co. v. SEC,*
    139 F.2d 434 (2d Cir. 1943) ............................................................................. 6

*Chau v. SEC,*
    -- F. Supp. 3d --, 2014 WL 6984236 (S.D.N.Y. 2014) ............................. 8, 10, 11

*CleanTech Innovations v. NASDAQ,*
    No. 11-cv-9358, 2011 WL 7138696 (S.D.N.Y. Dec. 30, 2011) ...................... 8, 25

*CleanTech Innovations v. NASDAQ,*
    No. 11-cv-9358, 2012 WL 345902 (S.D.N.Y. Jan. 31, 2012) .............................. 8

*Dames & Moore v. Regan,*
    453 U.S. 654 (1981) .................................................................................. 20, 23

*EEOC v. Local, 638,*
    No. 71 Civ. 2877, 1995 WL 355589 (S.D.N.Y. June 7, 1995) ......................... 23

*Elgin v. U.S. Dep't of Treasury,*
    132 S. Ct. 2126 (2012) ......................................................................... 7, 8, 10, 11

*Fort v. Am. Fed'n of State, Cnty. & Mun. Emps.,*
    375 F. App'x 109 (2d Cir. 2010) .................................................................... 23

*Free Enterprise Fund v. Public Company Accounting Oversight Board,*
    561 U.S. 477 (2010) .................................................................................. *passim*

*Freytag v. Comm'r,*
    501 U.S. 868 (1991) .................................................................................. 14, 15

*FTC v. Standard Oil Co.*,
   449 U.S. 232 (1980) ............................................................... 3, 10, 24

*Gray v. Office of Pers. Mgmt.*,
   771 F.2d 1504 (D.C. Cir. 1985) .......................................................... 18

*Gupta v. SEC*,
   796 F. Supp. 2d 503 (S.D.N.Y. 2011) .................................................. 10

*Hare v. Hurwitz*,
   248 F.2d 458 (2d Cir. 1957) ............................................................. 16

*Humphrey's Executor v. United States*,
   295 U.S. 602 (1935) ....................................................................... 21

*In re Hennen*,
   38 U.S. 230 (1839) ......................................................................... 12

*Jarkesy v. SEC*,
   -- F. Supp. 2d --, 2014 WL 2584403 (D.D.C. 2014) ............................... 8

*Kamerling v. Massanari*,
   295 F.3d 206 (2d Cir. 2002) ............................................................. 24

*Landry v. FDIC*,
   204 F.3d 1125 (D.C. Cir. 2000) ............................................ 2, 12, 14, 15

*Mahoney v. Donovan*,
   721 F.3d 633 (D.C. Cir. 2013) ...................................................... 5, 18

*McGrath v. United States*,
   275 F. 294 (2d Cir. 1921) ................................................................ 16

*Morrison v. Olson*,
   487 U.S. 654 (1988) ........................................................... 19, 20, 21

*Munaf v. Geren*,
   553 U.S. 674 (2008) ......................................................................... 7

*Myers v. United States*,
   272 U.S. 52 (1926) .................................................................... 12, 19

*Nash v. Bowen*,
   869 F.2d 675 (2d Cir. 1989) ...................................................... 7, 13, 19

*Okin v. SEC*,
   143 F.2d 960 (2d Cir. 1944) ............................................................... 6

*Ramspeck v. Fed. Trial Exam'rs Conference*,
   345 U.S. 128 (1953) ....................................................................... 17

*Rolex Watch v. City Styles 313*,
   No. 12 Civ. 4754, 2012 WL 5992102 (S.D.N.Y. Nov. 29, 2012) .............. 25

*Rosenthal & Co. v. Bagley*,
  581 F.2d 1258 (7th Cir. 1978) ........................................................................ 10

*Sampson v. Murray*,
  415 U.S. 61 (1974)............................................................................. 3, 24, 25

*Samuels, Kramer & Co. v. Comm'r*,
  930 F.2d 975 (2d Cir. 1991)......................................................................... 12, 15

*SEC v. Wilde*,
  No. SA CV 11-0315, 2013 WL 2303761 (C.D. Cal. May 20, 2013) ................................... 24

*In re Sealed Case*,
  838 F.2d 476 (D.C. Cir. 1988), ....................................................................... 19

*Stanley v. U.S. Dep't of Justice*,
  423 F.3d 1271 (Fed. Cir. 2005)....................................................................... 19

*Statharos v. N.Y. City Taxi & Limousine Comm'n*,
  198 F.3d 317 (2d Cir. 1999).......................................................................... 23

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ........................................................................ 7, 9, 10, 11

*Time Warner Cable of N.Y.C. v. Bloomberg L.P.*,
  118 F.3d 917 (2d Cir. 1997).......................................................................... 7

*Touche Ross & Co. v. SEC*,
  609 F.2d 570 (2d Cir. 1979).......................................................................... 10

*Tucker v. Comm'r*,
  676 F.3d 1129 (D.C. Cir. 2012) ..................................................................... 12, 14

*United States v. Fausto*,
  484 U.S. 439 (1988) ................................................................................. 18

*United States v. Germaine*,
  99 U.S. 508 (1878)............................................................................... 12, 16

*United States v. Mouat*,
  124 U.S. 303 (1888) ................................................................................. 16

*United States v. Perkins*,
  116 U.S. 483 (1886)................................................................................. 19

*United States v. Smith*,
  124 U.S. 525 (1888)................................................................................. 16

*United States v. Wittig*,
  575 F.3d 1085 (10th Cir. 2009) ...................................................................... 25

*USAA Fed. Sav. Bank v. McLaughlin*,
  849 F.2d 1505 (D.C. Cir. 1988) ...................................................................... 11

*VIP of Berlin v. Town of Berlin*,
   593 F.3d 179 (2d Cir. 2010)......................................................1, 7

*Weathers v. Univ. of N.C.*,
   No. 1:08CV847, 2008 WL 5110952 (M.D.N.C. Dec. 4, 2008)....................24

*Weiss v. United States*,
   510 U.S. 163 (1994)...................................................................15

*Wise v. Withers*,
   7 U.S. 331 (1806)......................................................................16

*Wong Yang Sung v. McGrath*,
   339 U.S. 33 (1950)....................................................................16

**STATUTES**

5 U.S.C. § 557.............................................................................13

5 U.S.C. § 2102.............................................................................5

5 U.S.C. § 2103.............................................................................5

5 U.S.C. § 2301.............................................................................5

5 U.S.C. § 2302...........................................................................19

5 U.S.C. § 3105..................................................................5, 13, 16

5 U.S.C. § 3313.............................................................................6

5 U.S.C. § 7511...........................................................................19

5 U.S.C. § 7521.......................................................................18, 22

5 U.S.C. § 1101.............................................................................5

5 U.S.C. § 1104.............................................................................6

5 U.S.C. § 1302.............................................................................6

5 U.S.C. § 3317.............................................................................6

5 U.S.C. § 3318.............................................................................6

15 U.S.C. § 77i..........................................................................4, 8

15 U.S.C. § 78d-1...................................................................7, 12, 13

15 U.S.C. § 78u.......................................................................4, 22

15 U.S.C. § 78u-2 ......................................................................... 3, 22

15 U.S.C. § 78u-3 ......................................................................... 3, 22

15 U.S.C. § 78y ............................................................................ *passim*

15 U.S.C. § 80a-42 ........................................................................ 4, 8

15 U.S.C. § 80b-13 ........................................................................ 8

Administrative Procedure Act of 1946, Pub. L. No. 79-404, 60 Stat. 237 ............................ 16, 17

## REGULATIONS

5 C.F.R. § 1201.2 .......................................................................... 6

5 C.F.R. § 212.101 ......................................................................... 5

5 C.F.R. § 332.401 ......................................................................... 6

5 C.F.R. § 332.402 ......................................................................... 6

5 C.F.R. § 332.404 ......................................................................... 6

5 C.F.R. § 930.201 ......................................................................... 5, 6

5 C.F.R. § 930.203 ......................................................................... 6

5 C.F.R. § 930.204 ......................................................................... 18

5 C.F.R. § 930.211 ......................................................................... 6

5 C.F.R. § 1201.137 ........................................................................ 18

5 C.F.R. § 1201.140 ........................................................................ 6

17 C.F.R. § 200.14 ......................................................................... 5, 7

17 C.F.R. § 201.101 ........................................................................ 13, 22

17 C.F.R. § 201.360 ........................................................................ 4, 13

17 C.F.R. § 201.400 ........................................................................ 13

17 C.F.R. § 201.101 ........................................................................ 21

17 C.F.R. § 201.110 ........................................................................ 5

17 C.F.R. § 201.300 ........................................................................ 5

17 C.F.R. § 201.360 ........................................................................ 21, 22

17 C.F.R. § 201.410 ................................................................................................... 21, 22

17 C.F.R. § 201.411 ........................................................................................................ 22

17 C.F.R. § 201.452 ........................................................................................................ 22

## UNITED STATES CONSTITUTION

U.S. Const. art. II, § 2, cl. 2 ......................................................................................... 12

U.S. Const. art. II, § 3 ................................................................................................... 20

## MISCELLANEOUS

*Authority of Education Department Administrative Law Judges in Conducting Hearings*,
      14 Op. O.L.C. 1 (1990) ........................................................................................ 7

Daniel J. Gifford, *Federal Administrative Law Judges: The Relevance of Past Choices to Future Directions*,
      49 Admin. L. Rev. 1 (1997) .................................................................................. 6

Neomi Rao, *Removal: Necessary and Sufficient for Presidential Control*,
      65 Ala. L. Rev. 1205 (2014) ............................................................................... 20

11A C. Wright & A. Miller, Federal Practice and Procedure (3d ed. 2014),
      § 2949 ................................................................................................................. 25

## INTRODUCTION

Plaintiff seeks a temporary restraining order or preliminary injunction to halt an ongoing Securities and Exchange Commission administrative proceeding. But there is no support for such a drastic remedy. Plaintiff is a respondent in a run-of-the-mill SEC proceeding—the kind of proceeding that has been occurring for decades, and that occurs by the dozens every year. And if the Court does not issue the relief Plaintiff seeks, the only consequence is that Plaintiff will have to litigate the claims presented in the administrative proceeding under the scheme that Congress devised, with judicial review thereafter in the court of appeals. Such mundane circumstances do not call for the extraordinary remedy of thwarting the enforcement and adjudicatory authority of the SEC over alleged securities violations.

The law supports this commonsense conclusion. Because Plaintiff seeks to enjoin "government action taken in the public interest pursuant to a statutory or regulatory scheme" in a way that would alter the status quo, she must meet a high bar. *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 185-86 (2d Cir. 2010). Plaintiff must demonstrate a clear or substantial likelihood of success on the merits, that she would be irreparably harmed absent an injunction, and that the balance of equities tips in her favor. *Id.* She cannot satisfy this standard.

Plaintiff cannot demonstrate a clear entitlement to relief. To start, this Court lacks jurisdiction over Plaintiff's suit. Congress created an exclusive remedial framework for resolving challenges to SEC administrative proceedings that divests this Court of jurisdiction. Under this framework, challenges must be raised before the agency with judicial review in the courts of appeals. And with narrow exceptions that are not applicable here, the Second Circuit has held that district courts cannot exercise jurisdiction over challenges like Plaintiff's. *Altman v. SEC*, 687 F.3d 44 (2d Cir. 2012) (per curiam). For this reason alone, Plaintiff has no likelihood of success because this case does not belong in district court at all.

Plaintiff's claim fares no better on the merits. She contends that her administrative proceeding, in which an administrative law judge ("ALJ") presides during the initial stages, violates Article II of the Constitution. She argues that ALJs are inferior officers and that

Congress has impermissibly limited the President's power to remove them. But ALJs are employees, not officers. The SEC need not use ALJs; it can assign the functions that they perform to others. As for ALJs' functions, they are limited, and do not include issuing final decisions: only the Commission can issue those. Congress has long treated ALJs as employees through the methods of appointment and hiring it established and by deciding to place them within the competitive civil service. Indeed, the only court of appeals to address this issue decided that the ALJs in question—FDIC ALJs, who like SEC ALJs cannot issue final decisions—were employees, not officers. *Landry v. FDIC*, 204 F.3d 1125, 1132-34 (D.C. Cir. 2000).

Even if SEC ALJs were officers, Plaintiff's claim would fail. Time and again, the Supreme Court has instructed that the question to be resolved in cases involving the removal authority is whether the President retains adequate control of the Executive power. Here, he does. SEC ALJs possess the limited adjudicatory authority that the Commission has delegated to them, play a part in a process over which the Commission retains ultimate control, enjoy ordinary tenure protection, and have a long history of use. These factors distinguish this case from *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), on which Plaintiff relies. In *Free Enterprise*, the Court deemed unconstitutional a recently enacted statutory framework that insulated the members of a powerful enforcement agency—the Public Company Accounting Oversight Board—beneath multiple layers of for-cause tenure protection. Board members possessed broad regulatory and enforcement powers (as well as adjudicatory powers), operated with little supervision from their parent agency (the SEC), enjoyed extraordinary tenure protection, and comprised a new, untested agency. The power and independence of SEC ALJs pales in comparison; there is no constitutional infirmity here.

Plaintiff will not be irreparably harmed if her motion is denied. She identifies three alleged harms, but none passes muster. Plaintiff argues that the Court should presume that she will be irreparably harmed because she alleges that the administrative proceeding violates the

Constitution. But the proceeding does not violate the Constitution, and the constitutional violation she alleges is not the sort that triggers a presumption of irreparable harm. Alleged violations of the provisions related to the structure of the government do not give rise to a presumption of irreparable harm because they do not implicate the kind of personal harm that warrants such a presumption. Plaintiff also argues that she would be irreparably harmed if an injunction were not entered because she would bear the burden and expense of litigation. The Supreme Court, however, rejected this argument more than 30 years ago. *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980). Lastly, Plaintiff maintains that her reputation would be damaged irreparably if she were to lose the administrative proceeding. This argument also misses the mark: Whether Plaintiff will prevail or not is a matter of speculation; reputational harm does not suffice to establish irreparable harm, *Sampson v. Murray*, 415 U.S. 61, 91 (1974); and Plaintiff has failed to proffer any evidence that she faces irreparable reputational harm. And in any event, her statutory recourse for an adverse administrative decision is in the court of appeals. Finally, the balance of harm supports denying Plaintiff's motion. An injunction would delay the SEC's efforts to protect investors and maintain the integrity of the securities markets, but (as explained) the denial of a TRO or a preliminary injunction would impose no irreparable harm on Plaintiff.

## BACKGROUND

## I.  THE PENDING SEC PROCEEDING

As part of its mission to protect investors, to maintain fair, orderly, and efficient markets, and to facilitate capital formation, the SEC oversees credit rating agencies registered with the Commission as nationally recognized statistical rating organizations ("NRSROs"), conducts investigations into possible violations of the federal securities laws, and enforces those laws. The Securities Exchange Act of 1934 (the "Exchange Act"), the Securities Act of 1933 (the "Securities Act"), the Investment Company Act (the "Investment Co. Act") (here, the "federal securities laws"), and the regulations thereunder establish the comprehensive scheme used by the SEC for the commencement and review of civil enforcement actions. These laws provide the Commission discretion to address potential violations either by filing a civil action in district

court or by initiating an administrative proceeding before the agency. *See, e.g.*, 15 U.S.C. §§ 78u(d), 78u-2, 78u-3.

On January 21, 2015, the SEC issued an Order Instituting Public Administrative and Cease-and-Desist Proceedings ("OIP") initiating an administrative proceeding against Plaintiff. Plaintiff previously was a managing director in the U.S. commercial mortgage backed securities group of Standard & Poor's Rating Services ("S&P"), an NRSRO regulated by the SEC. *See* Compl. ¶¶ 8, 10; Goldman Decl. Ex. 3, ECF No. 8-5. The OIP alleges that Plaintiff violated federal securities laws by, among other things, fraudulently misrepresenting the manner in which S&P calculated certain commercial mortgage backed securities ratings in 2011. *Id.* ¶¶ 3-8.

The SEC has directed an ALJ to preside over the initial stages of the administrative proceeding, including an evidentiary hearing. *Id.* at 11; Compl. ¶ 19. The ALJ will issue the initial decision, 17 C.F.R. § 201.360(a)(1), which Plaintiff or the SEC's Division of Enforcement may appeal to the Commission, *id.* § 201.410, or which the Commission may review "on its own initiative," *id.* § 201.411(c). If Plaintiff does not appeal and if the Commission does not initiate review on its own, "the Commission will issue an order" making the ALJ's initial "decision . . . final." *Id.* § 201.360(d)(2). The Commission's review of the ALJ's initial decision is *de novo, id.* §§ 201.411(a), 201.452, and only the Commission can issue the final decision of the agency.[1] If a majority of participating Commissioners do not agree to a disposition, the ALJ's "initial decision shall be of no effect, and an order will be issued [by the Commission] in accordance with this result." *Id.* § 201.411(f).

Should the Commission rule against Plaintiff, she may petition for review in a federal court of appeals. 15 U.S.C. §§ 77i(a), 78y(a), (c), 80a-42. Upon the filing of a petition for review of a Commission decision, and the filing of the record thereof, the court of appeals has "exclusive" jurisdiction "to affirm or modify and enforce or to set aside the [Commission] order

---

[1] Plaintiff's flood of attachments, *see* Goldman Decl. Ex. 5—examples of situations where a respondent chose not to appeal an ALJ's initial decision and then the Commission entered an order of finality—do not in any way counter this basic regulatory scheme in which the ALJ's decisions cannot and do not become final without action by the Commission.

in whole or in part." *E.g.*, *id.* § 78y(a)(3). The court of appeals could permit Plaintiff to "adduce additional evidence," and also could "remand the case to the Commission for further proceedings, in whatever manner and on whatever conditions the court considers appropriate." *E.g.*, *id.* § 78y(a)(5).

## II.  THE SEC'S ADMINISTRATIVE LAW JUDGES

Pursuant to statute, the SEC appoints ALJs to conduct hearings in proceedings instituted by the Commission. 5 U.S.C. § 3105; *see also* 17 C.F.R. § 200.14(a). However, no statute requires the SEC to use ALJs. The Commission determines by order whether to hold a hearing and, if so, whether to have an ALJ preside over the hearing. 17 C.F.R. §§ 201.110, 201.300; *see* Goldman Decl. Ex. 3. at 11.

### A.  The ALJ Position Within the Competitive Service

At the SEC, as throughout the federal government, ALJs are civil service employees in the "competitive service" system. 5 C.F.R. § 930.201. The competitive service is the most basic category within the civil service; it includes positions such as corrections officers, human resources specialists, and paralegals. *See* 5 U.S.C. § 2102; 5 C.F.R. § 212.101.[2]

The Civil Service Reform Act of 1978 (the "CSRA"), 5 U.S.C. §§ 1101 *et seq.*, governs federal civil-service employment, including SEC ALJs' employment. *See, e.g.*, *Mahoney v. Donovan*, 721 F.3d 633, 635 (D.C. Cir. 2013), *cert. denied*, 134 S. Ct. 2724 (2014). The CSRA regulates SEC ALJs' employment as it does that of other federal employees by, *inter alia*: setting merit systems principles to guide agency personnel management, 5 U.S.C. § 2301; describing numerous bases on which personnel actions against employees, including ALJs, are prohibited, *id.* § 2302; and specifying the administrative and judicial remedies available in response to such prohibited personnel practices, *id.* §§ 1204, 1212, 1214, 1215, 1221. The U.S. Office of Personnel Management ("OPM"), which oversees federal employment for ALJs as it does for

---

[2] Other categories within the civil service include the "excepted service," in which some positions such as attorneys are excepted from competitive service, 5 U.S.C. § 2103, and the "Senior Executive Service," in which positions involving senior managers are placed, *id.* § 3132.

other rank and file civil servants, administers a detailed civil service system for selecting ALJs, including conducting examinations for ALJ candidates, *see id*. §§ 1104, 1302; 5 C.F.R. §§ 930.201(d)-(e), 930.203; ranking ALJ applicants for placement on a register of eligible candidates according to their qualifications and numerical ratings, 5 U.S.C. § 3313; 5 C.F.R. § 332.401; and issuing "certificates of eligibles" from which federal agencies—including the SEC—may select individuals to fill ALJ vacancies, 5 U.S.C. §§ 3317, 3318; 5 C.F.R. §§ 332.402, 332.404. OPM oversees each agency's "decisions concerning the appointment, pay, and tenure" of ALJs, *id.* § 930.201(e)(2), and establishes classification and qualification standards for the ALJ positions, *id.* § 930.201(e)(3). Like other appointments in the competitive service, appointment as an SEC ALJ is subject to an investigation and adjudication of suitability under OPM's suitability requirements. *Id.* § 930.204(a); *id.* §§ 731.101 *et seq.*

Employees including ALJs who believe their employing agencies have engaged in a prohibited personnel practice can seek redress either through the Office of Special Counsel ("OSC") or the Merit Systems Protection Board ("MSPB"). *Id.* Pursuant to statute, "the agency in which [an] administrative law judge is employed"—here, the SEC—may propose certain specified personnel actions (*i.e.*, removal, suspension, reduction in grade, reduction in pay, or a furlough of 30 days or less) against an ALJ after the ALJ has had an opportunity for a hearing before the MSPB, and "for good cause." *Id.* § 7521; 5 C.F.R. §§ 930.211, 1201.140. The employing agency initiates the proceedings. 5 U.S.C. § 7521(a), (b). The MSPB then decides whether good cause exists to remove an ALJ. *Id.*; 5 C.F.R. § 1201.2. Finally, SEC ALJs—again like other employees—are subject to agency reductions-in-force. *Id.* § 930.210.

## B. The SEC's Use of ALJs

The SEC has used ALJs since the Commission's early days.[3] The SEC's enabling statute conferred on the SEC the discretion to use ALJs; the SEC may delegate, by published order or

---

[3] For examples of the early use of ALJs by the SEC, *see Charles Hughes & Co. v. SEC*, 139 F.2d 434 (2d Cir. 1943) and *Okin v. SEC*, 143 F.2d 960 (2d Cir. 1944); *see also* Daniel J. Gifford, *Federal Administrative Law Judges: The Relevance of Past Choices to Future Directions*, 49 Admin. L. Rev. 1, 4-6, 9 n.39 (1997).

rule, "any of its functions" to an ALJ but "retain[s] a discretionary right to review" any functions delegated to ALJs. 15 U.S.C. § 78d-1(a), (b). SEC ALJs are responsible for the fair and orderly conduct of the intermediary stages of those proceedings for which they are designated to serve as hearing officers. *See* 17 C.F.R. § 200.14(a); *id.* § 201.101(a)(5). They are subject to supervision and are subordinate to the Commission on questions of policy and interpretation of law. *See, e.g.*, *Nash v. Bowen*, 869 F.2d 675, 680 (2d Cir. 1989); *Auth. of Educ. Dep't Admin. Law Judges in Conducting Hearings*, 14 Op. O.L.C. 1, 2 (1990).

## ARGUMENT

### I. STANDARD OF REVIEW

Temporary restraining orders and preliminary injunctions are "extraordinary and drastic remed[ies]" that are "never . . . awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (quotation omitted). A party seeking, through an application for emergency or preliminary relief, to enjoin "government action taken in the public interest pursuant to a statutory or regulatory scheme" in a way that would "alter, rather than maintain, the status quo . . . must demonstrate irreparable harm and a clear or substantial likelihood of success on the merits." *VIP of Berlin*, 593 F.3d at 185-86 (quotation omitted). Where, as here, there are serious questions as to the Court's jurisdiction, it is "more *unlikely*" that the plaintiff can establish a "'likelihood of success on the merits.'" *Munaf*, 553 U.S. at 690. Finally, "[w]henever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests." *Time Warner Cable of N.Y.C. v. Bloomberg L.P.*, 118 F.3d 917, 929 (2d Cir. 1997).

### II. PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS OF HER CLAIMS

#### A. This Court Lacks Jurisdiction

Plaintiff's challenge to her SEC administrative proceeding is not properly before this Court; on this basis alone, Plaintiff cannot show a likelihood of success. The Supreme Court has repeatedly held that district courts lack jurisdiction over suits, like Plaintiff's, that attempt to bypass an exclusive remedial scheme established by Congress. *E.g.*, *Elgin v. U.S. Dep't of*

*Treasury*, 132 S. Ct. 2126 (2012); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). As the Second Circuit and other courts have held, the federal securities laws "display a fairly discernible intent," *Free Enterprise*, 561 U.S. at 489 (quotation omitted), to channel review of claims like Plaintiff's through the Commission's administrative process with direct review in the courts of appeals, 15 U.S.C. §§ 77i, 78y, 80a-42; *see Altman*, 687 F.3d at 45-46.[4] These laws "supply the jurisdictional route that [Plaintiff] must follow" and they "preclude . . . review" by this Court. *Id.*

Plaintiff has not met her burden to establish otherwise. "[S]tatutory review scheme[s]" permit "pre-enforcement challenge[s] to" agency action only "in limited circumstances." *Chau*, 2014 WL 6984236, at *2. This narrow exception applies if "a finding of preclusion [would] foreclose all meaningful judicial review," if the suit "is wholly collateral to a statute's review provisions," and if the plaintiff's "claims are outside the agency's expertise." *Free Enterprise*, 561 U.S. at 489 (quotations omitted). Plaintiff cannot establish any of these factors, let alone all three. Although she attempts to frame her suit as *Free Enterprise II*, *see* Pl.'s Mem. at 4-6, ECF No. 8-1, her efforts fail. Here, meaningful judicial review will be available in a court of appeals if Plaintiff is aggrieved by the pending administrative proceeding, Plaintiff's claim is directly related to that proceeding, and the Commission has expertise that is necessary for resolving Plaintiff's challenge.

*First*, should Plaintiff be found liable before the Commission, a court of appeals will adjudicate her constitutional claim. This certain path to meaningful judicial review is the "most important" of many critical differences between *Free Enterprise* and Plaintiff's suit. *Altman*, 768

---

[4] *See, e.g.*, *Chau v. SEC*, -- F. Supp. 3d --, 2014 WL 6984236 (S.D.N.Y. 2014) (Kaplan, J.); , *Altman v. SEC*, 768 F. Supp. 2d 554 (S.D.N.Y. 2011) (Holwell, J.), *aff'd* "for the reasons set forth" in the district court's opinion, 687 F.3d at 46; *CleanTech Innovations v. NASDAQ*, No. 11-cv-9358, 2012 WL 345902 (S.D.N.Y. Jan. 31, 2012) (Forrest, J.); *CleanTech Innovations v. NASDAQ*, No. 11-cv-9358, 2011 WL 7138696 (S.D.N.Y. Dec. 30, 2011) (Sullivan, J.); *see also Jarkesy v. SEC*, -- F. Supp. 2d --, 2014 WL 2584403 (D.D.C. 2014). *Altman*, *Jarkesy*, and *CleanTech* concern the Exchange Act; *Chau* involves the Securities Act and the Investment Advisers Act (the "Advisers Act"). All four cases apply here: the statutes' review provisions are materially identical. 15 U.S.C. §§ 77i(a) (Securities Act), 78y(a), (c) (Exchange Act), 80a-42 (Investment Co. Act), 80b-13(a) (Advisers Act).

F. Supp. 2d at 559 (citing *Thunder Basin*, 510 U.S. at 215). In *Free Enterprise*, an accounting firm sought a declaration that the Public Company Accounting Oversight Board (the "PCAOB" or the "Board") violated the Appointments Clause and contravened the separation of powers, but there was no Board action pending against the plaintiff. 561 U.S. at 487. Even if there had been, because "not every Board action is encapsulated in a final Commission order," it was not certain that the federal securities laws' review provisions would permit jurisdiction in a court of appeals. *Id.* at 490. If the Exchange Act precluded the *Free Enterprise* plaintiff's district court suit, therefore, the plaintiff's only recourse would have been to challenge a "random" Board rule or induce an enforcement action by refusing to comply with a Board request. *Id.* The Supreme Court's determination that the plaintiff's suit was not barred hinged on the Court's recognition that manufacturing a risky adversarial proceeding is not a "meaningful avenue of relief." *Id.* at 490-91 ("We normally do not require plaintiffs to bet the farm by taking . . . violative action [to] test[] the validity of [a] law." (quotations omitted)).

Here, by contrast, Plaintiff need not purposely violate the law or mount a rule challenge to ensure that she obtains judicial review. Rather, she must simply raise her constitutional claim before the Commission in the very administrative proceeding that is pending against her and then petition for review in a court of appeals as necessary. Plaintiff's suit is therefore "entirely different" from the challenge to the PCAOB in *Free Enterprise*. *Altman*, 768 F. Supp. 2d at 561. Whereas no proceeding was pending in *Free Enterprise*, here, as in *Altman*, Plaintiff "challenges the SEC's constitutional authority to continue administrative proceedings against" her. *Id.* And whereas not all actions by the PCAOB result in final orders, here, the Commission will issue the agency's final decision as to whether Plaintiff violated the federal securities laws. Plaintiff thus purports to seek "'judicial review of *Commission* action,' which the *Free Enterprise* Court indicated would fall directly under" the federal securities laws' exclusive review provisions. *Id.* (quoting *Free Enterprise*, 561 U.S. at 490). Plaintiff cannot "procure a one-way ticket out of [the SEC] proceeding and into district court simply by raising

. . . constitutional allegation[s]." *Chau*, 2014 WL 6984236, at *6 ("*Thunder Basin*, *Free Enterprise Fund*, and good sense say otherwise").[5]

*Second*, Plaintiff's claim is not collateral to the pending administrative proceeding. Indeed, Plaintiff's object is to halt that proceeding. That Plaintiff styles her claim as a facial constitutional challenge, Pl.'s Mem. at 5, 6, is immaterial. In *Elgin*, the Supreme Court—applying *Free Enterprise*—rejected the argument that review provisions like those in the federal securities laws can be ignored where a plaintiff brings a facial constitutional challenge to a statute an agency administers. *Elgin*, 132 S. Ct. at 2135-36.[6] Plaintiff points to nothing that would warrant a different outcome here. Her argument boils down to the "assertion . . . that administrative respondents need not wait for actual adjudication of their cases in order to challenge their legality." *Chau*, 2014 WL 6984236, at *12. But courts have "rejected precisely this argument[:] 'Where, as here, the 'injury' inflicted on the party seeking review is the burden of going through an agency proceeding,'" the Supreme Court has instructed "'that the party must patiently await the denouement of proceedings within the Article II branch.'" *Id.* (footnote omitted) (citing *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980); quoting *USAA Fed. Sav. Bank v. McLaughlin*, 849 F.2d 1505, 1510 (D.C. Cir. 1988)).

---

[5] Plaintiff's reliance on *Touche Ross & Co. v. SEC*, 609 F.2d 570 (2d Cir. 1979), and *Gupta v. SEC*, 796 F. Supp. 2d 503 (S.D.N.Y. 2011), is misplaced. Plaintiff does not need to state a "counterclaim[] against the SEC" in her administrative proceeding, *id.* at 513, in order to pursue her Article II claim. Indeed, the very claim that Plaintiff attempts to press here has been raised in an administrative appeal currently pending before the Commission. *See Timbervest, LLC et al.*, Investment Advisers Act Release No. 4003, Investment Company Act Release No. 31424, 2015 WL 242393, at *1 (Jan. 20, 2015) (ordering supplemental briefing on an Article II claim raised by the respondent). In any event, in light of *Altman*, *Gupta* does not apply here. *See Chau*, 2014 WL 6984236, at *10-12. The same is true of *Touche Ross*: as the Second Circuit has held, "the exception identified" there "[does] not apply" to permit suits like this one. 687 F.3d at 46. Regardless, *Touche Ross* predates *Thunder Basin* and *Free Enterprise*. "Courts have read *Touche Ross* narrowly" and have "found its application especially inappropriate when a litigant invokes it to avoid agency review procedures." *Altman*, 768 F. Supp. 2d at 562.

[6] *See Altman*, 768 F. Supp. 2d at 558-59 (that "plaintiff raises a [facial] constitutional challenge . . . does not alter the analysis" (citation omitted)); *Rosenthal & Co. v. Bagley*, 581 F.2d 1258, 1260 (7th Cir. 1978) (exclusive review schemes divest district courts of jurisdiction over "challenges [to] the constitutionality of the basic statute under which the agency functions").

*Third*, Plaintiff's challenge falls within the Commission's expertise. Agencies are the experts on "the many threshold questions that may accompany a constitutional claim." *Elgin*, 132 S. Ct. at 2140. Here, Plaintiff's claim raises questions of statutory and regulatory interpretation relating to the Commission's Rules of Practice and the extent of the Commission's supervision and control over SEC ALJs. *E.g.*, Compl. ¶¶ 22-28. Determining whether SEC ALJs are "officers" of the United States "for purposes of Article II," *id.* ¶ 29, requires an assessment of SEC ALJs' authority and duties, which are governed by these rules. The SEC is in the best position to interpret its own Rules of Practice in the first instance, *see Thunder Basin*, 510 U.S. at 214-15, and in any event, the Commission's "interpretation could alleviate constitutional concerns" or the Commission could resolve the proceeding in Plaintiff's favor, thus avoiding the constitutional issues altogether, *Elgin*, 132 S. Ct. at 2140; *see, e.g.*, *Chau*, 2014 WL 6984236, at *8 ("the entire question would be moot were [Plaintiff] to prevail before the SEC").

In sum, Plaintiff's attempt to bypass the administrative process and press her claims here must be rejected. Congress has mandated—and, indeed, assured—meaningful judicial review of claims like Plaintiff's, which are inextricable from the administrative proceeding that is pending against her, in the courts of appeals. "[P]ermitting [P]laintiff[] to seek pre-enforcement relief . . . would be 'inimical to the structure and purposes' of the statutory review scheme governing SEC adjudications and would not provide an otherwise unavailable means of effective judicial review." *Chau*, 2014 WL 6984236, at *6 (quoting *Thunder Basin*, 510 U.S. at 216). "This Court's jurisdiction is not an escape hatch for litigants to delay or derail an administrative action when," as is true here, "statutory channels of review are entirely adequate." *Id.*

## B. Plaintiff's Article II Challenge Lacks Merit

Even if this Court had jurisdiction, Plaintiff's constitutional challenge has no merit.

### 1. SEC ALJs Are Employees, Not Inferior Officers of the United States

Plaintiff's Article II challenge fails at its premise: SEC ALJs are not constitutional officers. SEC ALJs are employees and thus their removal does not implicate Article II. The Appointments Clause provides that the President shall appoint all "Officers of the United States"

whose Appointments are not otherwise provided for in the Clause and further permits Congress to "vest the Appointment of . . . inferior Officers . . . in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. The power to appoint encompasses the power to remove, *see Myers v. United States*, 272 U.S. 52, 161 (1926); *In re Hennen*, 38 U.S. 230, 254-55 (1839), but the Appointments Clause does not speak to the power to either appoint or remove employees who do not rise to the level of officers, *see Buckley v. Valeo*, 424 U.S. 1, 126 n.162 (1976); *Tucker v. Comm'r*, 676 F.3d 1129, 1132 (D.C. Cir. 2012). The Supreme Court has long recognized that the vast majority of government personnel are "employees," that is, "lesser functionaries subordinate to officers of the United States." *Buckley*, 424 U.S. at 126 & n.162; *see Free Enterprise*, 561 U.S. at 506 n.9; *United States v. Germaine*, 99 U.S. 508, 509 (1878).

As discussed below, the SEC's discretion whether and how to use ALJs, the ALJs' role within the SEC's decision-making scheme, and the history of the ALJ system, including Congress's placement of the position within the competitive service system, all reflect that SEC ALJs are "mere aids" to the SEC and not officers exercising "'significant authority.'" *Samuels, Kramer & Co. v. Comm'r*, 930 F.2d 975, 985-86 (2d Cir. 1991) (quoting *Buckley*, 424 U.S. at 126). Indeed, the only court of appeals to have directly addressed this question concluded that ALJs are employees. *Landry*, 204 F.3d at 1132-34.

### a. SEC ALJs Have Only the Authority the SEC Decides to Delegate to Them and Do Not Have the Requisite "Significant Authority" to be Inferior Officers

That SEC ALJs are "lesser functionaries subordinate to officers of the United States," *Buckley*, 424 U.S. at 126 n.162, is evident in that Congress has not mandated that the SEC use ALJs at all. As set forth by statute, the SEC can decide to appoint as many ALJs as warranted, 5 U.S.C. § 3105, and has the authority to decide what functions it wishes to delegate to those ALJs, 15 U.S.C. § 78d-1. Congress has not required the SEC to use its ALJs to conduct its administrative proceedings. SEC regulations provide that a "[h]earing officer" can be an ALJ, "a

panel of Commissioners constituting less than a quorum of the Commission, an individual Commissioner, or any other person duly authorized to preside at a hearing." 17 C.F.R. § 201.101(5). If the Commission decides to initiate an administrative proceeding, the Commission also determines whether the hearing officer will be an ALJ; if so, the Chief ALJ selects which of the SEC ALJs will preside. *Id.* § 201.110. Only then would the selected ALJ have the authorities of a hearing officer, as set forth in SEC regulations. *Id.* § 201.111. Moreover, as discussed below, the SEC has plenary authority to review any functions that it decides to delegate to ALJs. 15 U.S.C. § 78d-1(b).

The Supreme Court has held that to be an "Officer of the United States" covered by Article II, a person must "exercis[e] significant authority pursuant to the laws of the United States." *Buckley*, 424 U.S. at 125-26. Contrary to Plaintiff's argument, SEC ALJs do not have such authority because they have only the power to make initial decisions. During the administrative process, "the Commission may, at any time, on its own motion, direct that any matter be submitted to it for review." 17 C.F.R. § 201.400(a). An ALJ serving as a hearing officer prepares only an "initial decision." *Id.* § 201.360(a)(1). If no further review is sought or otherwise ordered by the Commission on its own, then the Commission issues an order of finality, specifying the date on which sanctions, if any, take effect. *Id.* § 201.360(d). If the Commission grants the petition for review or otherwise decides to review the ALJ's initial decision, its review is *de novo*. The Commission "may affirm, reverse, modify, [or] set aside" the initial decision, "in whole or in part," and it "may make any findings or conclusions that in its judgment are proper and on the basis of the record." *Id.* § 201.411(a). The Commission may also "remand for further proceedings," *id.*, "remand . . . for the taking of additional evidence," or "hear additional evidence" itself, *id.* § 201.425; *see also Nash*, 869 F.2d at 680 (under the Administrative Procedure Act ("APA"), in reviewing an ALJ's initial decision the agency "retains 'all the powers which it would have in making the initial decision'" (quoting 5 U.S.C. § 557(b))). That the ALJ's decision is only preliminary is evident in that "[i]n the event a

majority of participating Commissioners do not agree to a disposition on the merits," the regulations specify that the ALJ's "initial decision shall be of no effect." *Id.* § 201.411(f).

Plaintiff cites 15 U.S.C. § 78d-1(c) for the proposition that if the Commission does not review an ALJ's initial decision, the ALJ's decision becomes the action of the Commission. Pl.'s Mem. at 11. Plaintiff also attached numerous ALJ initial decisions that were finalized by the Commission to suggest that "a SEC ALJ may render a final decision of the SEC." Pl.'s Mem. at 10; *see* Goldman Decl. Ex. 5. Plaintiff is wrong because in deciding whether to grant review on its own initiative or upon a petition, the Commission necessarily reviews the ALJ's initial decision. And, as specified by SEC regulations, if there is no petition for review and if the Commission does not order review of an initial decision on its own initiative, the ALJ's decision becomes final only after the "Commission . . . issue[s] an order that the decision has become final." 17 C.F.R. § 201.360(d) ("Finality"). Not only does the ALJ's initial decision have no effect until the Commission acts, but also it is the Commission's finality order that specifies the date on which sanctions, if any, take effect. *Id.* In other words, in all cases, the Commission issues a final decision for the agency.

The D.C. Circuit's decision in *Landry v. FDIC*, 204 F.3d at 1133-34, is directly on point. There, the D.C. Circuit rejected the argument that the FDIC's method of appointing ALJs violated the Appointments Clause. The court found that FDIC ALJs are not constitutional officers but are employees, whose appointments do not implicate Article II, because they "can never render the decision of the FDIC." *Id.* at 1133. Similarly here, SEC ALJs do not have final decision-making authority. Their adjudications represent only the first step of the agency's decision-making process. Thus, under the reasoning of *Landry*, they are not inferior officers.

Plaintiff seeks to rely on *Freytag v. Commissioner*, 501 U.S. 868, 880 (1991), which held that special trial judges of the Tax Court are inferior officers. *Freytag*, however, does not control because as the D.C. Circuit found in *Landry*, ALJs are distinguishable from special trial judges.

204 F.3d at 1133-34.[7] Although the *Landry* court recognized that there are similarities between special trial judges and FDIC ALJs, *id.*, it concluded that the former's ability to issue final decisions in certain categories of cases "was critical to the [*Freytag*] Court's decision" that they are inferior officers, *id.* at 1334. Indeed, in *Freytag*, it was conceded that special trial judges "act as inferior officers who exercise independent authority" for certain categories of the cases. 501 U.S. at 882. The D.C. Circuit in *Landry* also noted that unlike FDIC ALJs, special trial judges have significant discretion in cases over which they do not have final decision-making authority, including, for example, that the Tax Court was required to defer to the special trial judges' factual findings. 204 F.3d at 1133. Here, like the FDIC's Board, the Commission similarly need not defer to the ALJ's factual findings but reviews them *de novo*.[8]

**b. The History of the ALJ System, the ALJs' Appointments, and the Placement of ALJs Within the Competitive Service Confirm that Congress Intended ALJs to be Employees**

To the extent that there is any doubt that ALJs are employees rather than officers, this Court should defer to Congress's longstanding judgment that ALJs are employees. *See Weiss v. United States*, 510 U.S. 163, 194 (1994) (Souter, J., concurring). That judgment is reflected in Congress's specified method of appointing ALJs as well as its placement of ALJs within the competitive service system.

---

[7] Clearly, not all judges at any level within any constitutional, statutory, or regulatory scheme possess the same stature or exercise the same powers. Just as having the final decision-making authority on behalf of an Executive Branch agency would not necessarily be sufficient to render a government employee an inferior officer, *see, e.g.*, *Tucker*, 676 F.3d at 1133, whether a particular kind of judge is an inferior officer similarly does not rise or fall on whether he or she is referred to as a "judge" and performs, in the most general sense, the same kinds of tasks as judges who are inferior officers.

[8] SEC ALJs also differ from special trial judges of the Tax Court in other significant respects. The Supreme Court observed in *Freytag* that special trial judges exercise "a portion of the judicial power of the United States" pursuant to statute. 501 U.S. at 891. SEC ALJs, of course, exercise no such power. Moreover, whereas "the legislative history shows that Congress knowingly expanded the authority of special trial judges and appreciated the significance of that action," *Samuels, Kramer*, 930 F.2d at 982, as discussed below, the ALJ regime has been firmly established for decades with little change to the salient features that indicate Congress's intent to treat ALJs as employees.

Under the Appointments Clause, inferior officers must be appointed by "the President alone, by the heads of departments, or by the Judiciary." *Buckley*, 424 U.S. at 132. Congress is presumed to know the requirements of the Clause. *E.g.*, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696-97 (1979). In fact, when Congress created the position of the modern ALJ in 1946, the method of appointment generally determined the status—employee or officer—of the position. At that time, the Supreme Court had long characterized appointments pursuant to the methods prescribed in the Appointments Clause as a "well established definition of what it is that constitutes [an officer of the United States]." *United States v. Mouat*, 124 U.S. 303, 307 (1888); *see also United States v. Smith*, 124 U.S. 525, 531-32 (1888); *Germaine*, 99 U.S. at 511; *Wise v. Withers*, 7 U.S. 331, 336 (1806). Lower courts, including the Second Circuit, adhered to this precedent. *See McGrath v. United States*, 275 F. 294, 300-01 (2d Cir. 1921); *Hare v. Hurwitz*, 248 F.2d 458, 461 (2d Cir. 1957). Yet, in § 11 of the APA, Pub. L. No. 79-404, § 11, 60 Stat. 237, 244 (1946), Congress specified that it is the "agency"—not the President, the department heads, or the judiciary—that appoints ALJs. 5 U.S.C. § 3105.[9] In the seven decades since the ALJs' creation, Congress also did not see fit to change the method of appointment of ALJs to those specified in the Appointments Clause. Congress clearly knows how to properly appoint officers because Title 5 of the U.S. Code, which governs government organization and employees, defines an "officer" to mean a justice or judge of the United States and an individual who is required by law to be appointed in the civil service by the President, a Court of the United States, "*the head* of an Executive agency," or the Secretary of a military department. *Id.* § 2104 (emphasis added). In contrast, an "employee" other than an officer may be "appointed in the civil service by . . . an individual who is an employee under this section." *Id.* § 2105. If there is any doubt whether the ALJs are inferior officers, the way in which Congress provided for their appointment confirms that they are not.

---

[9] Although Plaintiff alleges that the SEC Commissioners appoint SEC ALJs, Compl. ¶ 37; Pl.'s Mem. at 7, no law provides as such, *see* 5 U.S.C. § 3105.

Given the longstanding judgment by Congress that ALJs are not inferior officers, the method as specified by Congress for ALJs' appointments can hardly be viewed as a historical accident needing rectification. This is particularly true given that since the creation of the position, ALJs—along with tens of thousands of other federal employees—have been placed in the competitive service, which is the most basic category within the civil service system. The Supreme Court's examination of the Civil Service Commission's regulations of hearing examiners—the precursor of ALJs—confirmed that ALJs bear no indicia of constitutional officers. *See Ramspeck v. Fed. Trial Exam'rs Conference*, 345 U.S. 128, 130 (1953).

Hearing examiners, like other government employees of that time period, were originally subject to the Classification Act of 1923 and depended on their agency's ratings for compensation and promotion. *Id*. In 1946, due to complaints about hearing examiners' perceived partiality when conducting administrative hearings, Congress enacted the APA to "curtail and change the practice of embodying in one person or agency the duties of prosecutor and judge," while also introducing greater uniformity of procedure and standardization of administrative practice among the diverse agencies. *See Wong Yang Sung v. McGrath*, 339 U.S. 33, 41 (1950). To "separat[e] . . . adjudicatory functions and personnel from investigative and prosecution personnel in the agencies," Congress placed hearing examiners under the jurisdiction of the Civil Service Commission in a merit-based civil service system for federal employees, and vested the Civil Service Commission with control of the ALJs' compensation, promotion, and tenure. *See Ramspeck*, 345 U.S. at 131. Section 11 of the APA specified, for example, that hearing examiners were removable by the employing agency only for "good cause" established and determined by the Civil Service Commission. 60 Stat. 237, 244.

In enacting these measures to enhance adjudicators' independence in the agencies' administrative process, Congress gave no indication that it meant to elevate the status of hearing examiners above that of the investigative and prosecution personnel of the agency. To the contrary, Congress explicitly "retained the examiners as classified Civil Service employees." *Ramspeck*, 345 U.S. at 133. Thus, on the question of whether hearing examiners' tenure

protection precluded an agency from removing them due to a reduction in force, the Supreme Court said that "Congress intended to provide tenure for the examiners *in the tradition of the Civil Service Commission*," namely that "[t]hey were not to be paid, promoted, or discharged at the whim or caprice of the agency or for political reasons." *Id.* at 142 (emphasis added). This meant that hearing examiners could be subject to the agency's reduction in force, like other employees. *Id.* at 140-41. Similarly, the Court also found that the Civil Service Commission could set various salary grades to reflect the competence and experience of the hearing examiners in each grade—again, like others in the civil service. *Id.* at 136.

Today, OPM, one of the agencies that assumed some of the functions of the Civil Service Commission, is responsible for promulgating rules relating to ALJs and for administering and overseeing the competitive process by which ALJs are screened for positions across federal agencies. An agency may appoint an individual to an ALJ position only with prior approval of OPM, except when it makes its selection from the list of eligible ALJs provided by OPM. 5 C.F.R. § 930.204. The MSPB, another agency that also assumed some of the functions of the Civil Service Commission, has jurisdiction over major personnel actions against ALJs. *See* 5 U.S.C. § 7521; 5 C.F.R. §§ 1201.137 *et seq*. Consistent with § 11 of the APA as enacted in 1946, subject to limited exceptions, an ALJ's removal, suspension, reductions in grade or pay, and furlough of certain length must be based on good cause established and determined by the MSPB. 5 U.S.C. § 7521; *see also id.* § 1305.

Notably, although agencies must proceed through the MSPB in order to take the specified personnel actions discussed above, this process is part and parcel of the Civil Service Reform Act's comprehensive remedial scheme for all major personnel actions against federal employees. *Gray v. Office of Pers. Mgmt.*, 771 F.2d 1504, 1510 (D.C. Cir. 1985) (refusing "to confer special status on ALJs beyond that expressly provided by Congress"). Congress enacted the CSRA to overhaul the civil service system and create an "elaborate new framework for evaluating adverse personnel actions against federal employees." *United States v. Fausto*, 484 U.S. 439, 443 (1988) (quotation and alteration omitted). In creating that comprehensive scheme, Congress provided no

special remedial routes for ALJs to challenge personnel disputes (except when the challenge involved one of the specified personnel actions discussed above), even when the ALJ alleges that the employing agency's action has affected her decisional independence. *See, e.g.*, *Mahoney*, 721 F.3d at 636-37; *Brennan v. HHS*, 787 F.2d 1559, 1562-63 (Fed. Cir. 1986).

Also telling is the fact that ALJs are "subordinate to [the employing agency] in matters of policy and interpretation of law." *Nash*, 869 F.2d at 680. This is consistent with the concept that "civil servants are not thought to be the President's policymakers." *In re Sealed Case,* 838 F.2d 476, 497 (D.C. Cir.), *rev'd sub nom. Morrison v. Olson*, 487 U.S. 654 (1988). In contrast with ALJs, who are competitive service employees hired from a civil service examination, those employees who occupy confidential, policy-determining or policy-making positions in the "excepted service" cannot appeal adverse personnel actions to the MSPB and may be removed without cause. 5 U.S.C. § 7511(b)(2).[10]

In sum, contrary to Plaintiff's argument that SEC ALJs are constitutional officers exercising significant authority pursuant to the laws of the United States, they are like most other federal employees, and at a minimum, Congress views them as standing in a different constitutional footing than inferior officers, who "determine[] the policy and enforce[] the laws of the United States." *Free Enterprise*, 561 U.S. at 484; *see id.* at 506-07 (noting that "[s]enior or policymaking positions in government may be excepted from the competitive service to ensure Presidential control," and emphasizing that "[n]othing in [the Court's] opinion, therefore, should be read to cast doubt on the use of what is colloquially known as the civil service system within independent agencies").

---

[10] *See Stanley v. U.S. Dep't of Justice*, 423 F.3d 1271, 1274 (Fed. Cir. 2005) (MSPB has no jurisdiction to hear claims by U.S. Trustees who were removed before the expiration of their terms, because the position of U.S. Trustee was classified as confidential and policy-making and because "inferior officers may be removed before the end of their . . . term"); *see also* 5 U.S.C. § 2302(a)(2)(B)(i) ("covered position" for purposes of appeal of personnel actions does not include those "excepted from the competitive service because of its confidential, policy-determining, policy-making, or policy-advocating character").

**2. Even If SEC ALJs Are Officers, There Is No Separation of Powers Violation**

Even if SEC ALJs are inferior officers, the removal provisions applicable to them do not raise separation of powers concerns. The Supreme Court has repeatedly held that the Constitution permits Congress to place reasonable restrictions on the removal of inferior officers without unduly infringing upon the President's exercise of the Executive power. *See, e.g.*, *Myers*, 272 U.S. at 161; *United States v. Perkins*, 116 U.S. 483, 485 (1886). Thus, inferior officers may be protected by for-cause removal provisions without implicating separation of powers concerns.

Plaintiff nonetheless argues that the removal restrictions applicable to SEC ALJs deprive the President of adequate control of the Executive power. Pl.'s Mem. at 15-17. Plaintiff's argument relies on an overly broad reading of *Free Enterprise*, which addresses the constitutionality of sheltering an entire independent sub-agency with "expansive powers to govern an entire industry"—the PCAOB—under two layers of tenure protection. 561 U.S. at 485, 504-08. The decision does not announce a blanket rule establishing that a removal framework is *per se* unconstitutional if more than one layer of tenure protection separates the President from an inferior officer. *Id.* at 506. Rather, the question posed to this Court, which is the question posed in any removal case, is simply whether the President retains adequate control over the Executive power with respect to SEC ALJs. *See Morrison*, 487 U.S. at 689-90 (removal frameworks are constitutional if they do not "interfere with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article II" (quoting U.S. Const. art. II, § 3)).

The President retains adequate control here. Again, this is not *Free Enterprise*: SEC ALJs possess only adjudicatory authority, unlike the PCAOB, which has vast rulemaking, investigative, and adjudicatory powers; they play a part in a process over which the Commission retains ultimate control from start to finish, whereas the PCAOB was in relevant respects outside of the SEC's control; they enjoy weaker tenure protection than the members of the PCAOB did; and a long history of their use (and acceptance) establishes a gloss on the Constitution, *see Dames & Moore v. Regan*, 453 U.S. 654, 686 (1981), in contrast to members of the PCAOB,

who were part of an organization without precedent. The removal framework Plaintiff challenges does not infringe on the President's executive authority.

*First*, the adjudicative functions that the Commission has assigned to the ALJ presiding over the initial stages of the pending administrative proceeding are limited in scope and do not rise to the level of the exercise of core executive authority; they involve the application of the law to a discrete set of facts in a particular case. *See generally* Neomi Rao, *Removal: Necessary and Sufficient for Presidential Control*, 65 Ala. L. Rev. 1205, 1248 (2014) ("Executive branch adjudicators are not generally thought to have discretion in th[e] sense [of one engaged in rulemaking or enforcement actions], but rather like other judges to be applying the law to particular facts."). Unlike the PCAOB in *Free Enterprise*, the ALJ will not promulgate standards applicable to an entire sector of the economy or make policy laden decisions about enforcement priorities. Rather, the ALJ will issue an initial decision (subject to review by the Commission), 17 C.F.R. §§ 201.360, 201.410, about whether Plaintiff violated the securities laws as alleged in the OIP.

*Second*, while Congress created the position of ALJ and made ALJs available for agencies' use, it is not *Congress* that has delineated the scope of SEC ALJs' duties. Rather, it is the *Commission* that has elected, in the exercise of its discretion, to hire ALJs, and it is the Commission, via its own regulations, that has empowered ALJs to carry out certain (limited) functions. 17 C.F.R. §§ 201.101 *et seq.* That Congress has permitted agencies to use—or not to use—ALJs as the agencies see fit does not effect an abrogation of executive authority. *See, e.g.*, *Morrison*, 487 U.S. at 689-90 (the Supreme Court's "removal cases [are] designed not to define rigid categories of those officials who may or may not be removed at will by the President, but to ensure that *Congress* does not interfere with the President's exercise of the 'executive power'" (emphasis added)). Furthermore, just as the Commission has empowered its ALJs, the Commission—without need of any action by Congress—can disempower them. No statute prevents the Commission from deciding as a general matter not to use ALJs, or, with regard to a specific enforcement action, deciding "in its discretion" to assign a person other than an ALJ to

serve as a hearing officer for an administrative proceeding, 17 C.F.R. § 201.101(5), or to bring the action in district court instead of in an administrative proceeding, *id.* § 202.5(b); *see, e.g.*, 15 U.S.C. §§ 78u(d), 78u-2, 78u-3.

*Third*, because the Commission retains ultimate authority over administrative proceedings, the Commission exercises sufficient control over SEC ALJs regardless of the limitations placed upon their removal. SEC ALJs do not choose the cases that they adjudicate; the Commission—over which the President exercises constitutionally adequate control, *see Humphrey's Executor v. United States*, 295 U.S. 602 (1935)—decides whether a matter will be heard in an administrative proceeding or whether it will be brought in federal district court. And, as already discussed, the SEC has plenary authority over its ALJs. Among other things, ALJs issue "initial decision[s]," which the Commission reviews under a *de novo* standard. 17 C.F.R. §§ 201.360, 201.410 , 201.411, 201.452. The SEC did not have similar control over the PCAOB's activities: Certain activities of the PCAOB were for all practical purposes outside of the SEC's control. *Free Enterprise*, 561 U.S. at 504-05.[11]

*Fourth*, not only do SEC ALJs have less power and independence than the PCAOB, but they also enjoy less robust tenure protection than the members of the PCAOB did. SEC ALJs may be removed for "good cause." 5 U.S.C. § 7521. A member of the PCAOB, by contrast, could be removed only "for willful violations of the [Sarbanes-Oxley] Act, [PCAOB] rules, or the securities laws; willful abuse of authority; or unreasonable failure to enforce compliance." *Free Enterprise*, 561 U.S. at 503. The Supreme Court recognized that the PCAOB's removal standard was higher, and thus more threatening to the President's authority, than the ordinary good cause standard (like the one applicable to SEC ALJs). *Id.* at 503. Because SEC ALJs have

---

[11] While the *Free Enterprise* Court held that the SEC's broad gauge and generalized control over the PCAOB's functions were not constitutionally sufficient because they did not provide the SEC with a means of supervising individual Board members, 561 U.S. at 504, no similar concern applies here. The SEC's supervisory authority is not so imprecise with respect to ALJs—it can overturn an individual ALJ's decision in a particular case—and its functional control over ALJs undercuts the notion that the removal framework infringes on the President's authority.

weaker tenure protection than the PCAOB, the President has more control over the ALJs' exercise of executive authority.

*Fifth*, the Executive Branch's use of tenure-protected ALJs for nearly seventy years establishes a gloss on the Constitution that supports the current removal framework. Unlike the PCAOB, which was only several years old when first challenged, SEC ALJs have operated under a removal framework similar to that which currently applies for almost 70 years. In that time, there has been no indication that the President's ability to faithfully execute the law has been hampered by the applicable removal framework. And while "the separation of powers does not depend on the views of individual Presidents," *Free Enterprise*, 561 U.S. at 497, it is also true that "a systematic, unbroken, executive practice, long pursued . . . may be treated as a gloss on Executive Power vested in the President," *Dames & Moore*, 453 U.S. at 686 (quotation omitted). The fact that eleven Administrations of both parties have used ALJs over nearly as many decades without any apparent impairment indicates that the President's constitutional authority has not been hampered.

### III. PLAINTIFF WILL NOT BE IRREPARABLY HARMED ABSENT AN INJUNCTION

Plaintiff cannot establish that she will be irreparably harmed if the Court declines her request to issue emergency injunctive relief. As noted in the introduction, declining to enjoin the SEC's on-going proceeding will result in nothing more drastic than litigation in an administrative forum. Notwithstanding the pedestrian nature of the consequences of denying this motion, Plaintiff posits that three allegedly irreparable harms are in the offing. None withstands scrutiny.

*First*, Plaintiff argues that she will be irreparably harmed by "be[ing] compelled" to participate in an administrative proceeding that she alleges is unconstitutional. Pl.'s Mem. at 17. Not so. It is true that an alleged violation of certain personal constitutional rights may trigger a presumption of irreparable harm. *E.g.*, *Statharos v. N.Y.C. Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) (holding that alleged violation of privacy rights demonstrates per se irreparable harm). But that principle is inapplicable to this case. For one thing, there is no constitutional violation, and even if there were, Plaintiff has complete redress in the court of

appeals.[12] Moreover, alleged violations of the provisions of the Constitution that establish the structure of the government do not give rise to a presumption of irreparable harm. *E.g.*, *EEOC v. Local, 638*, No. 71 Civ. 2877, 1995 WL 355589, at *5-7 (S.D.N.Y. June 7, 1995) (holding that per se irreparable harm is caused only by violations of personal constitutional rights). This distinction makes sense. While the infringement of a certain rights may have a direct, irremediable effect on a person, an allegation that the President of the United States does not have sufficient control over some of his underlings describes, at best, a highly attenuated harm that does not warrant the drastic remedy of an injunction barring the government from taking an action in the public interest.

*Second*, Plaintiff argues that she will be irreparably harmed because she will have to expend resources to litigate the administrative proceeding. Pl.'s Mem. at 17-18. Supreme Court precedent forecloses this argument: "[T]he expense and annoyance of litigation is 'part of the social burden of living under government[,]' . . . [and] [m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Standard Oil*, 449 U.S. at 244.

*Third*, Plaintiff argues that she will be irreparably harmed because if she does not prevail in the administrative proceeding then her reputation will be damaged. Pl.'s Mem. at 18. But whether or not Plaintiff will prevail in the administrative proceeding is a matter of speculation, and speculative harms cannot be the basis for a preliminary injunction. *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (noting that preliminary relief cannot be founded on "remote or speculative" harms).[13] Moreover, a reputational harm provides an inadequate basis for a finding

---

[12] *See Fort v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 375 F. App'x 109, 111 (2d Cir. 2010) (no irreparable harm where the plaintiffs sought to "enjoin an ongoing disciplinary proceeding whose outcome remained unknown": noting that "appeals were available," holding that "the claimed injury of possible discipline was both speculative and redressable," and rejecting the "plaintiffs' contention that trial itself constituted irreparable harm").

[13] Plaintiff also suggests that, if she does not prevail, the agency may impose penalties that would take effect prior to judicial review. But this is also a matter of speculation. Moreover, to the extent the penalties would be monetary penalties, they do not constitute irreparable harm because they could be recoverable on appeal following the conclusion of the administrative proceedings. *SEC v. Wilde*, No. SA CV 11–0315, 2013 WL 2303761, at *7 (C.D. Cal. May 20, 2013).

of irreparable harm. *See Murray*, 415 U.S. at 91 (concluding that temporary reputational damage from an agency's alleged failure to follow procedures in discharging an employee "would be fully corrected by an administrative determination requiring the agency to conform to the applicable regulations"); *Weathers v. Univ. of N.C.*, No. 1:08CV847, 2008 WL 5110952, at *4 n.5 (M.D.N.C. Dec. 4, 2008).[14] Finally, Plaintiff offers no evidence in support of the assertion of reputational and professional harm, and naked factual assertions do not suffice. *Murray*, 415 U.S. at 88-89; 11A C. Wright & A. Miller, Fed. Practice & Proc. § 2949 (3d ed. 2014).

## IV. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST ARE IN THE GOVERNMENT'S FAVOR

The balance of equities also supports denying Plaintiff's motion. An injunction would doubly harm the public interest. First, it would delay the SEC's efforts to protect investors and ensure the integrity of the securities markets. *E.g.*, *United States v. Wittig*, 575 F.3d 1085, 1105 (10th Cir. 2009) ("[a] primary duty of the SEC is to protect investors and maintain the integrity of the securities markets"). The purpose of the administrative proceeding is to determine whether Plaintiff engaged in fraudulent conduct while a managing director at S&P; making this determination is in the public interest. Second, granting Plaintiff's motion would render meaningless the exclusive remedial scheme mandated by Congress. *CleanTech*, 2011 WL 7138696, at *6 ("Adhering to this statutory scheme . . . promote[s] the orderly regulation . . . that Congress contemplated when it enacted the Exchange Act" and is "clearly in the public interest."). Nothing counterbalances these two harms, as Plaintiff would not be irreparably harmed by a denial of her motion.

## CONCLUSION

Defendant respectfully requests that the Court deny Plaintiff's motion for a temporary restraining order or a preliminary injunction.

---

[14] The case cited by Plaintiff, *Rolex Watch v. City Styles 313*, No. 12 Civ. 4754, 2012 WL 5992102, at *5 (S.D.N.Y. Nov. 29, 2012), is inapposite because it addresses "permanent harm to [a for-profit entity's] reputation" rather than temporary reputational harm to an individual.

Dated:  January 28, 2015

Respectfully submitted

PREET BHARARA
United States Attorney

JEANNETTE A. VARGAS
Assistant United States Attorney
U.S. Attorney's Office
Southern District of New York
86 Chambers Street, 3rd Fl.
New York, NY 10007
Telephone: (212) 637-2678
Facsimile:  (212) 637-2702

JOYCE R. BRANDA
Acting Assistant Attorney General

KATHLEEN R. HARTNETT
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

SUSAN K. RUDY
Assistant Director, Federal Programs Branch

*/s/ Justin M. Sandberg*
JUSTIN M. SANDBERG
JEAN LIN
LISA ZEIDNER MARCUS
ADAM GROGG
U.S. Dept. of Justice, Civil Division,
Federal Programs Branch
20 Mass. Ave., N.W., Rm. 7302
Washington, DC 20001
Phone: (202) 514-5838
Fax: (202) 616-8202
Email: justin.sandberg@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2015, I electronically filed a copy of the foregoing. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ *Justin M. Sandberg*
JUSTIN M. SANDBERG