UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                                :

BARBARA DUKA,                             :
                                                :

                         Plaintiff,       :

                                                  :

                         v.                     :

                                                  :

U.S. SECURITIES AND EXCHANGE         :
COMMISSION,                          :
                                                  :

                         Defendant.    :

                                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF BARBARA DUKA'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 22nd Floor
New York, New York 10017
(212) 370-0330

*Attorneys for Plaintiff Barbara Duka*

Dated:  January 26, 2015

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

FACTS .................................................................................................................3

ARGUMENT ........................................................................................................4

I.  This Court has Subject Matter Jurisdiction Over Ms. Duka's
    Constitutional Challenge ............................................................................4

II. Ms. Duka is Likely to Succeed on the Merits ............................................6

    A.  The SEC is a "Department" Under Article II ......................................7

    B.  ALJs are Inferior Officers Under Article II ........................................7

        1.  The Broad and Substantial Powers of SEC ALJs ......................8

        2.  The Finality of Decisions Issued by SEC ALJs ......................10

        3.  The Significant Authority Exercised by SEC ALJs Renders
            Them Inferior Officers ..........................................................11

    C.  The Administrative Proceeding is Unconstitutional,
        Because the ALJ, as an "Inferior Officer," Enjoys at
        Least Two Levels of Tenure-Protection .............................................15

III. Ms. Duka Will Suffer Irreparable Harm if the Motion for
     Temporary and Preliminary Relief is Denied .............................................17

IV.  The Balance of Equities and the Public Interest
     Strongly Favor Ms. Duka ............................................................................19

CONCLUSION ....................................................................................................20

## TABLE OF AUTHORITIES

**Cases:**                                                                    **Page**

*Alexandre v. New York City Taxi & Limousine Comm'n*, 07 Civ. 8175 (RMB),
2007 WL 2826952 (S.D.N.Y. Sept. 28, 2007) .......................................................17

*Altman v. U.S. S.E.C.*, 768 F. Supp. 2d 554 (S.D.N.Y. 2011) ......................................17

*Buckley v. Valeo*, 424 U.S. 1, 96 S. Ct. 612 (1976)....................................................7, 8

*Chau v. U.S. S.E.C.*, 14 Civ. 1903 (LAK), 2014 WL 6984236
    (S.D.N.Y. Dec. 11, 2014) ..............................................................................2, 5, 6

*Com. of Pa., Dep't of Pub. Welfare v. U.S. Dep't of Health & Human Servs.*,
    80 F.3d 796 (3d Cir. 1996) ...................................................................................7

*Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477,
    130 S. Ct. 3138 (2010)...............................................................................*passim*

*Freytag v. C.I.R.*, 501 U.S. 868, 111 S. Ct. 2631 (1991)....................................... 11-14

*Gupta v. S.E.C.*, 796 F. Supp. 2d 503 (S.D.N.Y. 2011) ........................................... 5-6

*Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996)..........................................................17

*Landry v. F.D.I.C.*, 204 F.3d 1125 (D.C. Cir. 2000) ................................................14

*Le v. S.E.C.*, 542 F. Supp. 2d 1318 (N.D. Ga. 2008) ................................................18

*Lipkin v. U.S. S.E.C.*, 468 F. Supp. 2d 614 (S.D.N.Y. 2006) ...................................18

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*,
    965 F.2d 1224 (2d Cir. 1992) ...............................................................................4

*MFS Sec. Corp. v. SEC*, 380 F.3d 611 (2d Cir. 2004)...............................................15

*Nat'l Treasury Employees Union v. U.S. Dep't of Treasury*,
    838 F. Supp. 631 (D.D.C. 1993)..........................................................................19

*Pope v. Cnty. of Albany*, 687 F.3d 565 (2d Cir. 2012) ..............................................4

*Rolex Watch U.S.A., Inc. v. City Styles 313, LLC*, No. 12 Civ. 4754(AJN),
2012 WL 5992102 (S.D.N.Y. Nov. 29, 2012)..........................................................18

*Touche Ross & Co. v. S.E.C.*, 609 F.2d 570 (2d Cir. 1979) ...........................................5

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365 (2008) ...............4

**Statutes:**

5 U.S.C. § 556 ..........................................................................................................13

5 U.S.C. § 557 .....................................................................................................10, 13

5 U.S.C. § 1202 ........................................................................................................16

5 U.S.C. § 3105 ......................................................................................................7, 13

5 U.S.C. § 5372 ........................................................................................................13

5 U.S.C. § 7521 ........................................................................................................16

15 U.S.C. § 77h-1 .......................................................................................................2

15 U.S.C. § 77i ..........................................................................................................18

15 U.S.C. § 78d-1 ......................................................................................................11

15 U.S.C. § 78u-2 .......................................................................................................2

**Constitutional Provisions:**

U.S. Const., Art. II, § 2, cl. 2 ..............................................................................*passim*

**Regulations:**

5 C.F.R. § 930.204.....................................................................................................13

17 C.F.R. § 200.14.............................................................................................. 8, 12-13

17 C.F.R. § 201.111 .................................................................................................8, 12

17 C.F.R. § 201.141 .......................................................................................................8

17 C.F.R. § 201.155 .......................................................................................................9

17 C.F.R. § 201.161 .......................................................................................................9

17 C.F.R. § 201.180 .......................................................................................................9

17 C.F.R. § 201.200 .......................................................................................................8

17 C.F.R. § 201.201 .......................................................................................................9

17 C.F.R. § 201.220 .......................................................................................................9

17 C.F.R. § 201.221 .......................................................................................................9

17 C.F.R. § 201.222 .......................................................................................................9

17 C.F.R. § 201.230 .......................................................................................................8

17 C.F.R. § 201.232 .......................................................................................................9

17 C.F.R. § 201.233 .......................................................................................................9

17 C.F.R. § 201.234 .......................................................................................................9

17 C.F.R. § 201.250 .......................................................................................................8

17 C.F.R. § 201.322 .......................................................................................................9

17 C.F.R. § 201.326 .......................................................................................................9

17 C.F.R. § 201.360 ...............................................................................................2, 9, 11

17 C.F.R. § 201.411 .....................................................................................................10

**Other Authorities**:

*In the Matter of China Everhealth Corp., Genovabiotherapeutics, Inc.,*
*Glacier Enterprises, Inc., Green Asia Res., Inc., Jesup & Lamont, Inc.,*
*& Panoshan Mktg. Corp.*, Release No. 661 (Sept. 2, 2014)........................................................8

Kent Barnett, Resolving the ALJ Quandary, 33 J. Nat'l Ass'n
Admin. L. Judiciary 644 (2013) ..............................................................................................16

Plaintiff Barbara Duka respectfully submits this Memorandum of Law in support of her motion to temporarily restrain and preliminarily enjoin the SEC from continuing and prosecuting the administrative proceeding it initiated against her last week in the matter captioned *In the Matter of Barbara Duka*, Admin. Proc. File No. 3–16349 (Jan. 21, 2015) (the "Administrative Proceeding") during the pendency of the instant action.

## PRELIMINARY STATEMENT

On January 21, 2015, the SEC commenced the Administrative Proceeding by issuing an Order Instituting Administrative and Cease-and-Desist Proceedings ("OIP"). *See* Goldman Decl. at Ex. 2. The Complaint in the instant action, and this motion for temporary and preliminary injunctive relief, is premised on the fact that the Administrative Proceeding, which will be overseen by a SEC Administrative Law Judge ("SEC ALJ"), is unconstitutional under the Supreme Court's decision in *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 130 S. Ct. 3138 (2010) ("*Free Enterprise*").

In *Free Enterprise*, the Supreme Court held that if inferior officers (in that case, board members of the Public Company Accounting Oversight Board ("PCAOB")) under Article II can only be removed from office for good cause, then the decision to remove the inferior officers cannot be vested in other officials (in that case, SEC Commissioners) who also enjoy good-cause tenure. *See Free Enterprise*, 561 U.S. at 484. Such an arrangement is "contrary to Article II's vesting of the executive power in the President." *Id.* Because (a) SEC ALJs are inferior officers under Article II and (b) federal statutes and regulations provide SEC ALJs with at least two

levels of "good-cause" tenure protection, the Administrative Proceeding is unconstitutional. Accordingly, Ms. Duka is likely to succeed on the merits of her claim before this Court.[1]

Absent the relief requested herein, Ms. Duka will suffer irreparable harm, because she will be compelled imminently to participate in the unconstitutional Administrative Proceeding. In the OIP, the SEC ordered Ms. Duka to file an Answer within twenty days of service, in accordance with Rule 220 of the SEC's Rules of Practice, 17 C.F.R. § 201.220. On January 22, 2015, the Chief Administrative Law Judge of the SEC ordered "that the hearing in this matter commence at 9:30 a.m., Monday, February 23, 2015," in Washington, D.C., and assigned an SEC ALJ to "preside at the hearing in these proceedings and perform other and related duties in accordance with the Commission's Rules of Practice." *See* Goldman Decl. at Ex. 4.

Thus, Ms. Duka will be compelled to attend a trial before the ALJ, which, barring any extensions, must occur at the end of April or beginning of May of 2015, *see* 17 C.F.R. § 201.360(a)(2), and may commence on February 23, 2015; prior to that time, Ms. Duka will be required to review SEC discovery, which is expected to include approximately 30 days of SEC examination testimony and millions of pages of documents. At the trial, the SEC ALJ will determine Ms. Duka's liability under the federal securities laws and whether the SEC is entitled to, *inter alia*, civil penalties, *see* 15 U.S.C. § 77h-1(g), 15 U.S.C. § 78u-2(a), and/or disgorgement, *see* 15 U.S.C. § 77h-1(e), 15 U.S.C. § 78u-2(e). Any administratively-imposed sanction resulting from the Administrative Proceeding, may, according to the SEC's Rules of

---

[1]      To our knowledge, this motion presents a case of first impression. Previous federal court decisions adjudicating challenges to SEC ALJ proceedings, including a recent decision by Judge Kaplan of this Court (*Chau v. U.S. S.E.C.*), did not decide the constitutional challenge raised herein. And, although this constitutional challenge has been asserted elsewhere, *see Peixoto v. SEC*, 14 Civ. 8364 (WHP) (S.D.N.Y. Oct. 20, 2014); *Stilwell et al. v. SEC*, 14 Civ. 7931 (KBF) (S.D.N.Y. Oct. 1, 2014), we know of no court that has rendered a decision on the issue.

Practice, take effect prior to federal district court or appellate review of Ms. Duka's Article II claim. And, because of governmental immunity doctrines, this constitutional injury will not be compensable by money damages.

Finally, contrary to the harm that will befall Ms. Duka, the SEC will suffer no harm from a pause in the Administrative Proceeding, and the public interest would be served by granting the requested relief because this Court would prevent the SEC from acting outside of the limits of its constitutional authority.

## FACTS

At all times relevant to this action, Ms. Duka worked as an employee of Standard & Poor's Rating Services ("S&P"), where her work concerned the rating of commercial mortgage backed securities ("CMBS"). *See* January 26, 2015 Decl. of Daniel Goldman ("Goldman Decl.") at Ex. 1 (Complaint ¶ 8). From October 22, 2013, through October 25, 2013, in response to a subpoena, Ms. Duka provided sworn testimony to questions posed by the Staff of the Enforcement Division at the SEC (the "Staff"). *See id.* (Complaint ¶ 14). Following dialogue with the Staff beginning in approximately August 2014, *see id.* (Complaint ¶¶ 15-18), the Staff advised Ms. Duka through counsel that it would recommend that the SEC file an action against Ms. Duka before an SEC ALJ. *See id.* (Complaint ¶ 2). On January 16, 2015, Ms. Duka filed the Complaint in this action, which seeks a permanent injunction of the Administrative Proceeding and a declaratory judgment "that the statutory and regulatory provisions providing for the position and tenure protections of SEC ALJs are unconstitutional." *See id.* (Complaint ¶ 64). On January 21, 2015, the SEC commenced the Administrative Proceeding by issuing the OIP, which alleges, *inter alia*, violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5. *See* Goldman Decl. at Ex. 2. On January 22, 2015, the

-3-

SEC issued an Order Scheduling Hearing and Designating Presiding Judge, designating SEC ALJ Cameron Elliot to preside, and ordered Ms. Duka to appear at a hearing in Washington, D.C. on February 23, 2015.  *See* Goldman Decl. at Ex. 4.

## ARGUMENT

Where, as here, a party seeks a preliminary injunction against government action "pursuant to a statutory scheme, a moving party must demonstrate that (1) [she] is likely to succeed on the merits of the underlying claim, (2) [she] will suffer irreparable harm absent injunctive relief, and (3) the public interest weighs in favor of granting the injunction." *Pope v. Cnty. of Albany*, 687 F.3d 565, 570 (2d Cir. 2012).  "The Supreme Court also require[s] the plaintiff to show a fourth factor, that the balance of equities tips in [her] favor." *Id.* at 570 n. 3, (*citing Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008)). The "standards which govern consideration of an application for a temporary restraining order ... are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992).

As demonstrated below, Plaintiff has amply satisfied each of the foregoing elements and is therefore entitled to temporary and preliminary injunctive relief.

## I.

## THIS COURT HAS SUBJECT MATTER JURISDICTION OVER MS. DUKA'S CONSTITUTIONAL CHALLENGE

This Court has subject matter jurisdiction over this action because Ms. Duka's claim -- that the very existence of the Administrative Proceeding is a facial violation of Article II of the Constitution -- is wholly collateral to the Administrative Proceeding.

The Supreme Court has established three factors pertinent to permitting litigants to assert pre-enforcement challenges to SEC administrative proceedings in federal district courts: (1) the

claim is "wholly collateral to a statute's review provisions"; (2) the claim is "outside the agency's expertise"; and (3) "a finding of preclusion could foreclose all meaningful judicial review." *See Free Enterprise*, 561 U.S. at 489 (2010) (*citing Thunder Basin*, 510 U.S. at 212-213 (1994)); *see also Altman v. U.S. S.E.C.*, 768 F. Supp. 2d 554, 559 (S.D.N.Y. 2011) *aff'd*, 687 F.3d 44 (2d Cir. 2012); *Gupta v. S.E.C.*, 796 F. Supp. 2d 503, 512 (S.D.N.Y. 2011); *Chau v. U.S. S.E.C.*, 14 Civ. 1903 (LAK), 2014 WL 6984236, at *2 (S.D.N.Y. Dec. 11, 2014).

Ms. Duka's constitutional challenge to the Administrative Proceeding satisfies each of these three criteria. Like the petitioners' challenge to the PCAOB in *Free Enterprise*, Ms. Duka asserts a facial challenge to the very "existence" of the Administrative Proceeding on the grounds that it violates Article II of the Constitution. *See id.* at 490. As a result, this Court's ruling on the validity of Ms. Duka's constitutional challenge is "wholly collateral" to the Administrative Proceeding. *See id.* at 489.

In addition, Ms. Duka's claim is indistinguishable from the claim asserted and adjudicated in federal courts in *Free Enterprise*, where the Article II challenge was held outside the SEC's expertise. *See id.* at 487-492. Moreover, dismissing Ms. Duka's Complaint would foreclose meaningful judicial review of her constitutional claim. *See Touche Ross & Co. v. SEC*, 609 F.2d 570, 577 (2d Cir. 1979) ("[w]hile the Commission's administrative proceeding is not plainly beyond its jurisdiction, nevertheless *to require appellants to exhaust their administrative remedies would be to require them to submit to the very procedures which they are attacking*.") (emphasis added) (internal quotation marks omitted); *Gupta v. S.E.C.*, 796 F. Supp. 2d 503, 514 (S.D.N.Y. 2011) (absent the court's assertion of subject matter jurisdiction, "Gupta would be forced to endure the very proceeding he alleges is the device by which unequal treatment is being visited upon him"). "[T]he SEC's administrative machinery does not [even] provide a

reasonable mechanism" for raising Ms. Duka's constitutional claim because the "SEC's Rules of Practice do not permit counterclaims against the SEC." *See Gupta*, 796 F. Supp. 2d at 513 (S.D.N.Y. 2011).[2]

The Complaint in the instant action does not take issue with a particular rule governing SEC administrative proceedings or with a particular unfairness occasioned from application of an SEC rule upon Ms. Duka.  To the contrary, the Complaint, following Supreme Court precedent in *Free Enterprise* (where the SEC was also the second-layer of administrative review), alleges that the SEC's "administrative scheme is unconstitutional in all instances[.]" *Chau v. U.S. S.E.C.*, at \*6.  Ms. Duka's facial constitutional challenge to the Administrative Proceeding meets the criteria set forth in *Free Enterprise* and *Thunder Basin* for establishing subject matter jurisdiction. *See Chau v. U.S. S.E.C.*, at \*6-\*9 ("[C]ourts are more likely to sustain pre-enforcement jurisdiction over 'broad facial and systematic challenges,' such as the claim at issue in *Free Enterprise Fund*.").

## II.

### MS. DUKA IS LIKELY TO SUCCEED ON THE MERITS

The Supreme Court held in *Free Enterprise*, 561 U.S. at 484, that if an inferior officer may only be removed from office for good cause, then the decision to remove that officer cannot, consistent with Article II of the Constitution, be vested in another official who also enjoys good-cause tenure.  Contrary to the Supreme Court's holding in *Free Enterprise*, SEC ALJs enjoy at least two levels of "good-cause" tenure protection.  Accordingly, the Administrative Proceeding is unconstitutional.

---

[2]       In addition, given that the SEC approved the OIP after Ms. Duka filed her Complaint, the SEC would be "inherently conflicted" in assessing the validity of Ms. Duka's constitutional challenge to the Administrative Proceeding. *See Gupta*, 796 F. Supp. 2d at 514 (S.D.N.Y. 2011).

### A.    The SEC is a "Department" Under Article II

As an initial matter, the SEC is a "Department," within the meaning of Article II, § 2, cl. 2 of the Constitution, of the Executive Branch, *Free Enterprise*, 561 U.S. at 511 ("Because the Commission is a freestanding component of the Executive Branch, not subordinate to or contained within any other such component, it constitutes a 'Departmen[t]' for the purposes of the Appointments Clause"), and the SEC Commissioners are "Heads" of that "Department." *Id.* at 512-513 (alteration in original). Among their responsibilities, SEC Commissioners appoint ALJs pursuant to the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 3105.

### B.    ALJs are Inferior Officers Under Article II

The Appointments Clause of Article II of the U.S. Constitution reads as follows:

> "[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."

U.S. Const., Art. II, § 2, cl. 2.

Article II divides all "officers" into two categories:  principal officers and inferior officers. *Com. of Pa., Dep't of Pub. Welfare v. U.S. Dep't of Health & Human Servs.*, 80 F.3d 796, 801 (3d Cir. 1996). "Principal officers are selected by the President with the advice and consent of the Senate.  [For] [i]nferior officers[,] Congress may allow [such officers] to be appointed by the President alone, by the heads of departments, or by the Judiciary." *Buckley v. Valeo*, 424 U.S. 1, 132, 96 S. Ct. 612, 688 (1976).

The Supreme Court has explained that "any appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore,

be appointed in the manner prescribed by § 2, cl. 2, of [Article II]." *Buckley v. Valeo*, 424 U.S. 1, 126, 96 S.Ct., 612, 685 (1976).  These "Officers" are distinguished from other federal employees, or "lesser functionaries subordinate to officers of the United States," as to whom appointment under Article II is not required.  *Id.* at 126, n. 162.

The nature and degree of authority vested in SEC ALJs by statute and regulation make clear that such ALJs are "Officers" under Article II.

1.     The Broad and Substantial Powers of SEC ALJs

Under the SEC Rules of Practice[3] and other SEC regulations, an SEC ALJ – referred to in the Rules of Practice as the "hearing officer" – is empowered, within his or her discretion, to perform the following functions, among other things:

a.  Regulate "the course of a proceeding and the conduct of the parties and their counsel" (Rules of Practice 111(d));

b.  Receive "relevant evidence" and rule upon "the admission of evidence and offers of proof" (Rules of Practice 111(c));

c.  Issue subpoenas and order production of evidence (Rules of Practice 111(b); 230(a)(2); 232);

d.  "Examine witnesses" (17 C.F.R. § 200.14(a)(4))

e.  Issue orders (Rules of Practice 141(b)), including orders to show-cause;[4]

f.  Rule on requests and motions, including pre-trial motions for summary disposition (*See, e.g.*, Rules of Practice 250);

g.  Amend the SEC's OIP (Rules of Practice 200(d)(2));

_____

[3]     The SEC's Rules of Practice are set forth in 17 C.F.R. §§ 201.101-201.550, and can also be found on the SEC's website, http://www.sec.gov/about/rulesprac2006.pdf.  The rules have corresponding numbers.  For example, Rule 111 under the Rules of Practice is 17 C.F.R. § 201.111.

[4]     *See In the Matter of China Everhealth Corp., Genovabiotherapeutics, Inc., Glacier Enters., Inc., Green Asia Res., Inc., Jesup & Lamont, Inc., & Panoshan Mktg. Corp.*, Release No. 661 (Sept. 2, 2014).

h.  Impose sanctions on parties for contemptuous conduct (Rules of Practice 180(a));

i.  Reject filings that do not comply with the Rules of Practice (Rules of Practice 180(b));

j.  Grant extensions of time and stays (Rules of Practice 161);

k.  Enter orders of default, and rule on motions to set aside defaults (Rules of Practice 155);

l.  Consolidate proceedings (Rules of Practice 201(a));

m.  Require the SEC to file a more definite statement of specified matters of fact or law to be considered or determined (Rules of Practice 220(d));

n.  Direct the parties to meet for prehearing conferences and preside over such conferences as the SEC ALJ "deems appropriate" (Rules of Practice 221(b);

o.  Order any party to furnish prehearing submissions (Rules of Practice 222(a);

p.  Order depositions and act as the "deposition officer" (Rules of Practice 233, 234);

q.  Regulate the production of documents in the proceeding (Rules of Practice 230(g));

r.  Issue protective orders governing confidentiality of documents (Rules of Practice 322); and

s.  Regulate the scope of cross-examination (Rules of Procedure 326).

And, at the close of an administrative proceeding, the SEC ALJ issues a decision, referred to in the Rules of Practice as the "initial decision." Rules of Practice 360(a)(1). The initial decision states the time period within which a petition for Commission review of the initial decision may be filed. Rules of Practice 360(b).

2.     The Finality of Decisions Issued by SEC ALJs

With certain narrow exceptions that do not apply to this matter,[5] the Commission is *not* required to review an SEC ALJ's "initial decision."  In fact, a SEC ALJ may render a final decision of the SEC:

> [T]he presiding employee or, in cases not subject to section 554(d) of this title, an employee qualified to preside at hearings pursuant to section 556 of this title, shall initially decide the case unless the agency requires, either in specific cases or by general rule, the entire record to be certified to it for decision. When the presiding employee makes an initial decision, that decision then becomes the decision of the agency without further proceedings unless there is an appeal to, or review on motion of, the agency within time provided by rule. On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule. When the agency makes the decision without having presided at the reception of the evidence, the presiding employee or an employee qualified to preside at hearings pursuant to section 556 of this title shall first recommend a decision

5 U.S.C. § 557(b) (emphasis added); *see also* Rules of Practice 411(b)(2) ("The Commission may decline to review any other decision" aside from those listed in Rules of Practice 411(b)(1)).

"In determining whether to grant [discretionary] review," pursuant to Rules of Practice 411(b)(2), the Commission considers "whether the petition for review makes a reasonable showing that:  (i) a prejudicial error was committed in the conduct of the proceeding; or (ii) the decision embodies: (A) a finding or conclusion of material fact that is clearly erroneous; or (B) a conclusion of law that is erroneous; or (C) an exercise of discretion or decision of law or policy

---

[5]     Rules of Practice 411(b)(1) ("Mandatory Review.  After a petition for review has been filed, the Commission shall review any initial decision that: (i) denies any request for action pursuant to Section 8(a) or Section 8(c) of the Securities Act of 1933, 15 U.S.C. 77h(a), (c), or the first sentence of Section 12(d) of the Exchange Act, 15 U.S.C. 78l(d); (ii) suspends trading in a security pursuant to Section 12(k) of the Exchange Act, 15 U.S.C. 78l(k); or (iii) is in a case of adjudication (as defined in 5 U.S.C. 551) not required to be determined on the record after notice and opportunity for hearing (except to the extent there is involved a matter described in 5 U.S.C. 554(a)(1) through (6)).")

that is important and that the Commission should review."  If a respondent does not file a

petition for review, "and if the Commission does not order review of a decision on its own

initiative, the Commission will issue an order that the [initial] decision [of the SEC ALJ] has

become final."  Rules of Practice 360(d)(2) ("The order of finality [also] [states] the date on

which sanctions, if any, take effect.").  Upon issuance of the order that the SEC ALJ's initial

decision has become final, referred to as an "order of finality," *see* Rules of Practice 360(d)(2),

"the action of [the] administrative law judge ... shall, for all purposes, including appeal or review

thereof, be deemed the action of the Commission."  15 U.S.C. § 78d-1(c).

As a practical matter, in a substantial number of proceedings, the SEC ALJ's initial

decision is the final word.  For example, in 2014 alone there were 167 cases available on

Westlaw where the SEC ALJ's decision was the final decision of the SEC.  *See* Goldman Decl.

at Ex. 5.

       3.    The Significant Authority Exercised by SEC ALJs
             Renders Them Inferior Officers

That SEC ALJs exercise "significant authority pursuant to the laws of the United States,"

and are thus "inferior Officers" for purposes of Article II, are conclusions required by the

Supreme Court's holding in *Freytag v. C.I.R.*, 501 U.S. 868, 111 S. Ct. 2631 (1991) ("*Freytag*").

The petitioners in *Freytag* challenged an adverse decision by a Special Trial Judge ("STJ"),

contending that the assignment of the STJ by the Chief Judge of the Tax Court violated Article

II.  *Id.* at 872.  The Chief Judge of the Tax Court assigned the STJ to petitioners' case pursuant to

26 U.S.C. § 7443A(b)(4), which provided that the STJ prepare "proposed findings and an

opinion," and a judge of the Tax Court render the "actual decision."  *Id.* at 873.

In *Freytag*, the Supreme Court ruled that, by issuing the "proposed" decision pursuant to Section 7443A(b)(4), the STJ was an "inferior Officer" whose appointment was required to comply with Article II.  The Court reasoned as follows:

> The Commissioner reasons that special trial judges may be deemed employees in subsection (b)(4) cases because they lack authority to enter a final decision.  But this argument ignores the significance of the duties and discretion that special trial judges possess.  The office of special trial judge is "established by Law," Art. II, § 2, cl. 2, and the duties, salary, and means of appointment for that office are specified by statute.  *See Burnap v. United States*, 252 U.S. 512, 516–517, 40 S.Ct. 374, 376–377, 64 L.Ed. 692 (1920); *United States v. Germaine*, 99 U.S. 508, 511–512, 25 L.Ed. 482 (1879).  These characteristics distinguish special trial judges from special masters, who are hired by Article III courts on a temporary, episodic basis, whose positions are not established by law, and whose duties and functions are not delineated in a statute.  Furthermore, special trial judges perform more than ministerial tasks.  They take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders.  In the course of carrying out these important functions, the special trial judges exercise significant discretion.

*Id.* at 881-882.

The factors cited by *Freytag* to hold that Tax Court STJs are Officers apply with equal force to SEC ALJs.  The SEC ALJ position is "established by Law."  The SEC appoints SEC ALJs pursuant to 5 U.S.C. § 3105, which provides that "[e]ach agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in accordance with sections 556 and 557 of this title."  SEC regulation establishes the "Office of Administrative Law Judges," and outlines their authority. *See, e.g.*, 17 C.F.R. § 200.14; 17 C.F.R. § 200.30-9; 17 C.F.R. § 201.111.  Those regulations provide that SEC ALJs' authority with respect to adjudications is to be as broad as the APA allows.  *See* 17 C.F.R. § 201.111 ("No provision of these Rules of Practice shall be construed to limit the powers of the hearing officer provided by the Administrative Procedure Act, 5 U.S.C. 556, 557.").

As with the STJ in *Freytag*, "the duties, salary, and means of appointment" of SEC ALJs are also specified by statute.  The Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq*., establishes ALJs' powers with respect to adjudication, 5 U.S.C. §§ 556, 557, and the securities laws empower the SEC to delegate certain functions to SEC ALJs, including those listed above. *See* 15 U.S.C. §78d-l.  Pursuant to the authority granted by these statutes, SEC ALJs "perform more than ministerial tasks."  They, like the STJ in *Freytag*, "take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders."  *See Freytag*, 501 U.S. at 881-82; infra at 8-9; 17 C.F.R. § 200.14(a) ("The Administrative Law Judges are responsible for the fair and orderly conduct of the proceedings and have the authority to: (1) Administer oaths and affirmations; (2) Issue subpoenas; (3) Rule on offers of proof; (4) Examine witnesses; (5) Regulate the course of a hearing; (6) Hold pre-hearing conferences; (7) Rule upon motions; and (8) Unless waived by the parties, prepare an initial decision containing the conclusions as to the factual and legal issues presented, and issue an appropriate order.").  Moreover, the salaries of SEC ALJs are specified by 5 U.S.C. § 5372.

Finally, as with STJs, the manner of appointment of SEC ALJs is specified by statute and regulations.  By regulation, SEC ALJs may be appointed only from a list of eligible candidates provided by the Office of Personnel Management ("OPM") or with prior approval of OPM. 5 C.F.R. § 930.204.  OPM selects eligible candidates based on a competitive exam, which OPM develops and administers.  The SEC, like other agencies, selects ALJs from OPM's list of eligible candidates, based on the SEC's need. 5 U.S.C. § 3105; 5 C.F.R. § 930.204.[6]

---

[6]      ALJs receive career appointments and are exempt from probationary periods that apply to certain other government employees. *See* 5 C.F.R. § 930.204(a).

Notably, in his concurring opinion in *Freytag* in which he disagreed with the majority on a ground not relevant here, Justice Scalia stated as follows:

> Today, the Federal Government has a corps of administrative law judges numbering more than 1,000, whose principal statutory function is the conduct of adjudication under the Administrative Procedure Act (APA), *see* 5 U.S.C. §§ 554, 3105. They are all *executive* officers.

*Freytag*, 501 U.S. at 910 (Scalia, J., concurring in part and concurring in judgment) (emphasis in original).

The concurring opinion in *Landry v. F.D.I.C.*, 204 F.3d 1125 (D.C. Cir. 2000) likewise concluded that ALJs appointed under FIRREA are authorized to execute functions that render them "Officers":

> That the [FDIC] ALJ in this case is an inferior officer thus follows from *Freytag*. It follows also from the Supreme Court's recognition that the role of the modern administrative law judge is functionally comparable to that of a judge.... He may issue subpoenas, rule on proffers of evidence, regulate the course of the hearing, and make or recommend decisions.  Furthermore, the ALJ, in proposing findings of fact and a recommended decision, which the FDIC reviewed *de novo*, performed functions essentially like those of a federal magistrate assigned to conduct a hearing and to submit proposed findings and recommendations to a district judge.  When there is an objection to a magistrate's findings and recommendations, the district judge-like the FDIC-must conduct *de novo* review. Nonetheless, it has long been settled that federal magistrates are inferior Officers under Article II, which is why they are appointed by Courts of Law under 28 U.S.C. § 631.[7]

*See* Landry v. F.D.I.C., 204 F.3d 1125, 1143 (D.C. Cir. 2000) (Randolph, J. concurring in part and concurring in judgment) (citations and quotation marks omitted).

---

[7]        In that case, the majority interpreted *Freytag* as resting on the STJ's ability to issue a final decision of the Tax Court, and held that FDIC ALJs were not "Officers" because they could "never render" the final decision of the FDIC.  *See Landry*, 204 F.3d 1125, 1133-1134 (D.C. Cir. 2000).  Even under the majority decision in *Landry*, therefore, SEC ALJs are "Officers" because they can issue final decisions of the SEC under certain circumstances.  *See infra* at 10-11.

In sum, because SEC ALJs exercise "significant authority pursuant to the laws of the United States," they are inferior "Officers" under Article II of the Constitution.

### C.   The Administrative Proceeding is Unconstitutional Because the ALJ, as an "Inferior Officer," Enjoys at Least Two Levels of Tenure-Protection

The Administrative Proceeding is unconstitutional because SEC ALJs, as inferior Officers, are protected from removal by at least two levels of "good-cause" tenure protection: namely, the SEC ALJ can only be removed by SEC Commissioners for good cause; and SEC Commissioners can only be removed by the President for neglect of duty or malfeasance. *See MFS Sec. Corp. v. SEC*, 380 F.3d 611, 619-20 (2d Cir. 2004).

In *Free Enterprise*, the Supreme Court reviewed the structure of the PCAOB, which was established by the Sarbanes-Oxley Act of 2002. *Free Enterprise*, 561 U.S. at 484. The members of the PCAOB under the Act are appointed and removable by the Commissioners of the SEC only "for good cause shown" and "in accordance with" 15 U.S.C. 7211(e)(6). *Id.* at 486. The Commissioners of the SEC are removable by the President only for "inefficiency, neglect of duty, or malfeasance in office." *See, e.g., Id.* at 487; *MFS Sec. Corp. v. SEC*, 380 F.3d 611, 619-20 (2d Cir. 2004). The Supreme Court held this removal regime unconstitutional:

> We hold that such multilevel protection from removal is contrary to Article II's vesting of the executive power in the President. The President cannot "take Care that the Laws be faithfully executed" if he cannot oversee the faithfulness of the officers who execute them. Here the President cannot remove an officer who enjoys more than one level of good-cause protection, even if the President determines that the officer is neglecting his duties or discharging them improperly. That judgment is instead committed to another officer, who may or may not agree with the President's determination, and whom the President cannot remove simply because that officer disagrees with him. This contravenes the President's "constitutional obligation to ensure the faithful execution of the laws." *Id.*, at 693, 108 S.Ct. 2597.

*Free Enterprise*, 561 U.S. at 484 (quoting *Morrison v. Olson*, 487 U.S. 654, 693 (1988)).

*Free Enterprise* is controlling here.  Because SEC ALJs enjoy at least two levels of "good-cause" tenure protection, the regime governing their removal suffers from the same infirmity found unconstitutional in *Free Enterprise*.  First, SEC ALJs are removable from their position by the SEC "only" for "good cause," which must be "established and determined" by the Merit Systems Protection Board ("MSPB").  5 U.S.C. § 7521(a).  Second, SEC Commissioners are themselves protected by "good cause" tenure, in that they cannot be removed except for "inefficiency, neglect of duty, or malfeasance in office."  *See, e.g.*, *Free Enterprise*, 561 U.S. at 487; *MFS Sec. Corp. v. SEC*, 380 F.3d 611, 619-20 (2d Cir. 2004).  Third, members of the MSPB, who determine whether sufficient "good cause" exists to remove an SEC ALJ, are also protected by tenure, as they can be removed "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

Although the Supreme Court did not expressly decide whether *Free Enterprise* rendered SEC administrative proceedings unconstitutional, *see Free Enterprise*, 561 U.S. at 507 n. 10, as recognized by Justice Breyer in dissent, its ruling logically implies just that.  *See Free Enterprise*, 561 U.S. at 542-543 (Breyer, J. dissenting) ("The potential list of those whom today's decision affects is yet larger.  As Justice SCALIA has observed, administrative law judges (ALJs) 'are all executive officers.' *Freytag*, 501 U.S., at 878, 111 S.Ct. 2631 ... And ALJs are each removable 'only for good cause established and determined by the Merit Systems Protection Board,' 5 U.S.C. §§ 7521(a)-(b).  But the members of the Merit Systems Protection Board are themselves protected from removal by the President absent good cause. § 1202(d)."); *see also* Kent Barnett, Resolving the ALJ Quandary, 33 J. Nat'l Ass'n Admin. L. Judiciary 644, 648 (2013) ("If, as five current Supreme Court Justices have now suggested, ALJs are 'inferior

-16-

Officers' (not mere employees), the manner in which some are currently selected is likely unconstitutional.").

Because the President cannot oversee SEC ALJs in accordance with Article II, the Administrative Proceeding at issue here, as a matter of law, violates the Constitution.

### III.

### MS. DUKA WILL SUFFER IRREPARABLE HARM IF THE MOTION FOR TEMPORARY AND PRELIMINARY RELIEF IS DENIED

Absent temporary and preliminary injunctive relief, Ms. Duka will suffer irreparable harm, because she will be compelled imminently to participate in the unconstitutional Administrative Proceeding.  This Court has held that "[w]here there is a deprivation of a constitutional right, no separate showing of irreparable harm is necessary."  *See Alexandre v. New York City Taxi & Limousine Comm'n*, 07 Civ. 8175 (RMB), 2007 WL 2826952, at *5 (S.D.N.Y. Sept. 28, 2007) (*citing Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999)) (internal quotation marks omitted); *see also Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (there is a "presumption of irreparable injury that flows from a violation of constitutional rights").

In addition, the SEC Chief Administrative Law Judge has ordered that the Administrative Proceeding commence on February 23, 2015.  *See* Goldman Decl. at Ex. 4.  Pursuant to SEC rules, Ms. Duka will be compelled to attend the trial before the ALJ, which may commence in one month but must occur at the end of April or beginning of May of 2015;[8] prior to that time,

---

[8]     The OIP states that the SEC ALJ "shall issue an initial decision no later than 300 days from the date of service of this Order, pursuant to Rule 360(a)(2) of the Commission's Rules of Practice."  According to the same rule, Rules of Practice 360(a)(2), "under a 300-day timeline, the hearing officer shall issue an order providing that there shall be approximately 4 months from the order instituting the proceeding to the hearing."

Ms. Duka will be required to review SEC discovery, which is expected to include approximately 30 days of SEC examination testimony and millions of pages of documents.

This Court should not allow the Administrative Proceeding to proceed as currently scheduled. The substantial litigation and resource burdens incurred by Ms. Duka during the Administrative Proceeding would eventually be for naught, given the unconstitutionality of that proceeding. Were her claim upheld in this Court or in the Court of Appeals, Ms. Duka, absent the requested relief, would have already incurred the cost, lost time, and potential for reputational damage associated with the participating in the Administrative Proceeding. Then, the SEC likely would attempt to bring a new case in federal court. What is more, absent the requested relief, an administratively-imposed sanction may take effect prior to Ms. Duka receiving any judicial review of her constitutional claim. *See* Rule of Practice 360(d)(2); 15 U.S.C. § 77i(a).

Finally, were Ms. Duka forced to submit to the unconstitutional Administrative Proceeding, the resulting harm could not be remedied by money damages. Governmental immunity doctrines would preclude any recovery from the SEC,[9] and, any reputational harm would be difficult, if not impossible, to monetize.[10]

---

[9] *See Lipkin v. U.S. S.E.C.*, 468 F. Supp. 2d 614, 625 (S.D.N.Y. 2006); *Le v. S.E.C.*, 542 F. Supp. 2d 1318, 1324 (N.D. Ga. 2008) ("A plaintiff cannot bring a *Bivens* action against the federal agency that employs the agent.").

[10] *Rolex Watch U.S.A., Inc. v. City Styles 313, LLC*, No. 12 Civ. 4754(AJN), 2012 WL 5992102, at *5 (S.D.N.Y. Nov. 29, 2012) ("[T]here are no adequate remedies at law because the permanent harm to Plaintiff's reputation cannot be adequately monetized.").

## IV.

## THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST
## STRONGLY FAVOR MS. DUKA

The remaining two factors for consideration in connection with a temporary restraining order and preliminary injunction – (1) whether the "balance of equities" tips in Ms. Duka's favor, and (2) whether "the public interest weighs in favor of granting the injunction" – also strongly counsel in favor of the requested relief.

The SEC has been investigating the conduct alleged in the OIP for at least two years.  In stark contrast to the harm that would befall Ms. Duka should the requested relief be denied, the SEC will suffer no harm from a pause in the Administrative Proceeding pending resolution of the constitutional issue presented here.  Indeed, any such claim of harm would be illusory, given that the SEC may, at its option, proceed against Ms. Duka in federal court.

On the other hand, the public interest is served by ensuring that the SEC acts within the limits of the Constitution.  *Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury*, 838 F. Supp. 631, 640 (D.D.C. 1993) ("the public may be deemed to have an overriding interest in assuring that the government remains within the limit of its constitutional authority").

**CONCLUSION**

For all of the reasons set forth above, Ms. Duka respectfully requests that this Court grant

a temporary restraining order and a preliminary injunction restraining and enjoining the SEC

from continuing the Administrative Proceeding during the pendency of the instant action.


Dated: January 26, 2015
       New York, New York

                                        Respectfully submitted,

                                        PETRILLO KLEIN & BOXER LLP

                                        By: _____
                                        Nelson A. Boxer
                                        (nboxer@pkbllp.com)

                                        Guy Petrillo
                                        (gpetrillo@pkbllp.com)

                                        Daniel Goldman
                                        (dgoldman@pkbllp.com)

                                        655 Third Avenue, 22nd Floor
                                        New York, New York 10017
                                        Telephone: (212) 370-0330
                                        Facsimile: (212) 370-0391