USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: **4/15/15**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

BARBARA DUKA,

                Plaintiff,

      -against-

U.S. SECURITIES AND EXCHANGE
COMMISSION,

                Defendant.

-----------------------------------------------------------X

15 Civ. 357 (RMB)(SN)

**DECISION & ORDER**

"When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction . . . . The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." New Orleans Pub. Serv., Inc. v. New Orleans, 491 U.S. 350, 358 (1989) (quoting Willcox v. Consol. Gas Co., 212 U.S. 19, 40 (1909))

**I.  Introduction**

     This is one of a series of cases which seeks to enjoin on constitutional grounds the United

States Securities and Exchange Commission from adjudicating within that agency alleged civil

violations of the securities laws by persons **not** associated with regulated entities.  The principal

contention of Plaintiff Barbara Duka (and others) is that the administrative law judges who

adjudicate such cases pursuant to provisions of the Dodd-Frank Wall Street Reform and

Consumer Protection Act of 2010, Pub. L. No. 111–203 ("Dodd-Frank"), are insulated

unlawfully from oversight by the President who, under Article II of the Constitution, is vested

with the "executive power," including the ability to hold executive officers accountable by

removing them from office.  The SEC responds that the federal district courts are without subject

matter jurisdiction where, as here, the Commission has elected to proceed within the agency.[1]

**For the reasons set forth below, the Court finds, first, that it has subject matter**

**jurisdiction to examine Duka's plea that the SEC administrative proceedings against her be**

---

[1] At least two district courts in this Circuit have addressed the issue of subject matter jurisdiction in pre-enforcement challenges to SEC administrative proceedings.

In Gupta v. S.E.C., Judge Jed S. Rakoff held that the district court had subject matter jurisdiction to consider a plaintiff's action to enjoin an SEC administrative proceeding on the ground that the SEC had "single[d] him out for uniquely unfavorable treatment" in violation of his constitutional right to equal protection.  796 F. Supp. 2d 503, 506–07 (S.D.N.Y. 2011).  Judge Rakoff found, among other things, that "nothing that happens in the administrative proceeding will bear on this [equal protection] claim, and no administrative record bearing on this claim will be developed for any federal appellate court to review."  Id. at 514.  Judge Rakoff concluded that "the SEC does not have exclusive jurisdiction over challenges to SEC-related actions that meet certain criteria, arguably present here."  Id. at 510

In Chau v. S.E.C., Judge Lewis A. Kaplan concluded that the court lacked subject matter jurisdiction to consider a plaintiff's action to enjoin an SEC administrative proceeding on due process and equal protection grounds.  No. 14–cv–1903, 2014 WL 6984236, at *1 (S.D.N.Y. Dec. 11, 2014).  Judge Kaplan concluded, among other things, that "[t]here is an important distinction between a claim that an administrative scheme is unconstitutional in all instances—a facial challenge—and a claim that it violates a particular plaintiff's rights in light of the facts of a specific case—an as-applied challenge.  As between the two, courts are more likely to sustain pre-enforcement jurisdiction over 'broad facial and systematic challenges.'"  Id. at *6 (citation omitted).

Duka's claim presents a facial challenge to the constitutionality of SEC ALJ administrative proceedings.  See also, Sarah S. Gold and Richard L. Spinogatti, Constitutional Challenges to SEC Administrative Proceedings, N.Y.L.J., Apr. 8, 2015, at 3.  Duka does not assert as-applied equal protection or due process claims.

halted but, second, that Duka is not entitled to preliminarily enjoin the SEC proceedings because she is "unlikely to succeed on the merits" of her constitutional claim.[2] [3]

## II.    Background

On January 16, 2015, Barbara Duka ("Plaintiff" or "Duka"), formerly a co-manager of the commercial mortgage backed securities group of Standard & Poor's Rating Services ("S&P"), filed a complaint in this Court against the United States Securities and Exchange Commission ("SEC" or "Government" or "Commission") seeking declaratory and injunctive relief.  (Compl., dated Jan. 16, 2015 ("Compl."), ¶ 1.)   The Complaint seeks to prevent Duka "from being compelled to submit to an [allegedly] unconstitutional [SEC administrative] proceeding" which, in fact, was initiated against her on January 21, 2015.   (Compl. ¶¶ 2, 5.) Plaintiff contends that the SEC administrative law judges ("ALJs" or "SEC ALJs") who are responsible for adjudicating SEC administrative proceedings ("Administrative Proceeding(s)") "enjoy at least two layers of tenure protection," which insulate them from Presidential oversight. (Id. ¶ 3.)  According to Plaintiff, SEC Administrative Proceedings are, thus, unconstitutional on their face because they violate Article II of the United States Constitution.[4]  (Id.)

### Administrative Proceedings

The Administrative Procedure Act, 5 U.S.C. § 500 et seq. ("APA"), authorizes executive agencies of the government such as the SEC to conduct Administrative Proceedings before an

---

[2] During an early case conference, the Court advised the parties as follows: "**I have [not] entered – and intentionally so – on the dockets any interim relief at this time.**"  (Hr'g Tr., dated Jan. 29, 2015, at 13:19–24 (emphasis added).)

[3] **Any issues raised by the parties not specifically addressed herein were considered by the Court on the merits and rejected.**

[4] Article II states that "[t]he executive power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1.

ALJ.  ALJs have the authority to "administer oaths and affirmations"; "issue subpoenas authorized by law"; "rule on offers of proof and receive relevant evidence"; "regulate the course of the hearing"; and "decide the case."  5 U.S.C. §§ 556, 557.  The ALJ serves as the finder of fact and of law (i.e., there are no juries).  (Compl. ¶ 21.)  Executive agencies, including the SEC, may appoint "as many administrative law judges as are necessary."  Id. § 3105.  SEC ALJs are assigned their cases by the Chief Administrative Law Judge of the SEC pursuant to authority delegated to the Chief ALJ by the Commission.  17 C.F.R. § 200.30-10.

Prior to the enactment of Dodd-Frank, the SEC was authorized to impose civil penalties in Administrative Proceedings only against "regulated person[s]" or companies.  See Gupta, 796 F. Supp. 2d at 507.  Before Dodd-Frank, in order to obtain civil penalties from non-regulated entities, the SEC was required to file a civil enforcement action in federal district court.  See id. Dodd-Frank authorized the SEC to elect to impose civil penalties in Administrative Proceedings against "a person if the Commission finds, on the record . . . that such person . . . is violating or has violated any provision of [the Exchange Act], or any rule or regulation issued under [the Exchange Act]."  15 U.S.C. § 77h-1(g).

The defendant in an SEC Administrative Proceeding (such as Duka) may appeal an ALJ's decision to the Commission, which is comprised of five Commissioners (one of whom is Chairman) appointed by the President.[5]  17 C.F.R. § 201.410.  Or, the Commission may review an ALJ's decision "on its own initiative."  Id. § 201.411(c).  The Commission "may affirm, reverse, modify, set aside or remand for further proceedings."  Id. § 201.411(a).  If a defendant

---

[5] The Commissioners are appointed "by the President by and with the advice and consent of the Senate" for five-year terms.  15 U.S.C. § 78d(a).

does not appeal and if the Commission does not initiate review on its own, the Commission will issue an order making the ALJ's decision "final."  Id. § 201.360(d)(2).

A person who is aggrieved by a final order of the Commission may seek judicial review in the United States Court of Appeals for the circuit in which he or she resides or has his or her principal place of business, **or** before the United States Court of Appeals for the District of Columbia Circuit.  15 U.S.C. § 78y(a)(1).

All ALJs, including SEC ALJs, are removable from employment by their respective agency heads (in this case, the Commission) but only for "good cause."  Good cause must be "established and determined" by the Merit Systems Protection Board ("MSPB"), an independent federal agency which handles federal employee appeals of adverse employment actions.  5 U.S.C. § 7521; 5 C.F.R. § 930.211(a).  The SEC Commissioners, in turn, "cannot themselves be removed by the President except [for] inefficiency, neglect of duty, or malfeasance in office."  Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 487 (2010) (citation omitted).

**The SEC Proceeding against Plaintiff**

The SEC alleges in its Administrative Proceeding against Duka that during the period 2009 through 2011, Duka was managing director at Standard & Poor's Ratings Services "with responsibility for new issue ratings of Commercial Mortgage Backed Securities."  (Order Instituting Administrative and Cease-and-Desist Proceedings, dated Jan. 21, 2015, attached as Ex. 3 to Decl. of Daniel Goldman, dated Jan. 26, 2015 ("Goldman Decl."), ¶ 1.)   The SEC contends that "S&P's CMBS Group, acting through and led by Duka, published eight CMBS Presale reports between February and July 2011 in which S&P failed to disclose its relaxed methodology for calculating DSCRs [Debt Service Coverage Ratios]."  (Id. ¶ 6.)  The result,

according to the SEC, is that "[m]arket participants were . . . misled into believing that the ratings at issue were more conservative than they actually were."  (Id.)   According to the SEC, "Duka willfully violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, which prohibits fraudulent conduct in the offer and sale of securities and in connection with the purchase or sale of securities."  (Id. ¶ 49.)  The SEC also contends that Duka "should be ordered to cease and desist from committing or causing or aiding and abetting violations of and any future violations of Section 17(a) of the Securities Act," and should be ordered to pay a civil penalty and "pay disgorgement."  (Id. at 11.)

On January 22, 2015, the SEC designated ALJ Cameron Elliot to preside over Plaintiff's Administrative Proceeding.[6]  Plaintiff was ordered to appear at a (scheduling) hearing on February 23, 2015.  (Order Scheduling Hearing and Designating Presiding Judge, dated Jan. 22, 2015, attached as Ex. 4 to Goldman Decl.)  ALJ Elliot issued an order scheduling the adjudicatory hearing in Plaintiff's Administrative Proceeding to begin on September 16, 2015.  (See, Order Following Prehearing Conference, dated Feb. 26, 2015, attached as exhibit to Letter from Nelson A. Boxer to Hon. Richard M. Berman, dated Feb. 27, 2015.)

---

[6] ALJ Elliot has a distinguished biography: Mr. Elliot graduated from Yale University in 1987 with a Bachelor of Science degree in physics and applied physics, and he graduated from Harvard Law School in 1996.  He served as a law clerk for U.S. District Judge Edward Reed (D. Nev.) from July 1996 to August 1998.  Mr. Elliot spent the next eight years at the U.S. Department of Justice, during which time he served as an Assistant U.S. Attorney in the Southern District of Florida and in the Eastern District of New York.  He subsequently practiced as an attorney at the law firm of Darby & Darby P.C. in New York, where he handled intellectual property litigation, until his June 2008 appointment as an ALJ for the U.S. Social Security Administration.  Mr. Elliot was appointed to the SEC in April 2011.  ("SEC Announces Arrival of New Administrative Law Judge Cameron Elliot," (Apr. 25, 2011), https://www.sec.gov/news /press/2011/2011-96.htm.)

**Plaintiff's District Court Claim**

Plaintiff contends here, as noted, that the Administrative Proceeding initiated against her is unconstitutional under Article II (The President "shall take care that the laws be faithfully executed . . . ."). According to Plaintiff, Article II requires that "executive officers, who exercise significant executive power, be unprotected from removal by their superiors at will, when those superiors are themselves protected from removal by the President at will."[7]  (Compl. ¶ 51.) [8]

Plaintiff's January 26, 2015 motion seeks to "temporarily restrain and preliminarily enjoin the SEC from continuing and prosecuting the administrative proceeding it initiated against

---

[7] There are two categories of "executive officers," namely "principal officers" and "inferior officers."  Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 510 (2010) ("Free Enterprise").  "[I]nferior officers are officers whose work is directed and supervised at some level by [principal] officers appointed by the President with the Senate's consent."  Id. (citation omitted).

[8] Plaintiff relies heavily upon Free Enterprise, the case in which the Supreme Court invalidated the statutory tenure protections of members of the Public Company Accounting Oversight Board ("PCAOB" or "Board").  The PCAOB is a regulatory body created by the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7211, and placed under the supervision of the SEC.  The petitioners' claim in Free Enterprise was that "Board members were insulated from Presidential control by two layers of tenure protection: Board members could only be removed by the Commission for good cause, and the [SEC] Commissioners could in turn only be removed by the President for good cause."  Free Enterprise, 561 U.S. at 477–78.  The Supreme Court concluded that "dual for-cause limitations on the removal of Board members" violated the President's implied power of removal contained in Article II of the Constitution because such limitations deprived the President of "the ability to oversee the Board."  Free Enterprise, 561 U.S. at 492, 496.

The majority in Free Enterprise confined its holding by stating that "[t]he only issue in this case is whether Congress may deprive the President of adequate control over the Board."  Id. at 508. It declined to consider the applicability of its holding to other federal employees because "none of the[se other] positions . . . are similarly situated to the Board."  Id. at 506.  Of significance here, the majority specifically excluded ALJs from its holding, stating: **"[O]ur holding also does not address that subset of independent agency employees who serve as administrative law judges . . . Whether administrative law judges are necessarily "Officers of the United States" is disputed . . . And unlike members of the Board, many administrative law judges of course perform adjudicative rather than enforcement or policymaking functions . . . or possess purely recommendatory powers."** Id. at 507 n.10 (emphasis added).  (See also discussion, infra, at pp. 17–20.)

her." (Mem. of Law in Supp. of Pl.'s Mot., dated Jan. 26, 2015 ("Pl. Mem."), at 1.)  It argues, among other things, that: (1) this Court has subject matter jurisdiction because "dismissing Ms. Duka's Complaint would foreclose meaningful judicial review of her constitutional claim"; "Ms. Duka's claim . . . is wholly collateral to the Administrative Proceeding"; and Duka's claim is "outside the SEC's expertise"; (2) Plaintiff is likely to succeed on the merits of her claim because "SEC ALJ s, as inferior Officers, are protected from removal by at least two levels of 'good-cause' tenure protection" and, thus, the President cannot oversee SEC ALJ s in accordance with his Article II responsibilities; (3) "Ms. Duka will suffer irreparable harm, because she will be compelled imminently to participate in the unconstitutional Administrative Proceeding"; and (4) "[t]he balance of equities and the public interest strongly favor Ms. Duka." (Pl. Mem. at 5–6, 15, 17, 19.)

In its opposition, the SEC asserts that: (1) federal district courts lack jurisdiction over suits, like Duka's, "that attempt to bypass an exclusive remedial [SEC] scheme established by Congress"; (2) "the [for cause] removal provisions applicable to [ALJs] do not raise separation of powers concerns" because the Supreme Court "has repeatedly held that the Constitution permits Congress to place reasonable restrictions on the removal of inferior officers"; (3) "an allegation that the President of the United States does not have sufficient control over some of his underlings describes, at best, a highly attenuated harm that does not warrant the drastic remedy of an injunction"; and (4) an injunction "would delay the SEC's efforts to protect investors and ensure the integrity of the securities markets." (Mem. of Law in Opp'n. to Pl.'s Mot. ("Gov't. Opp'n.") at 7, 20, 24–25.)

On February 9, 2015, Plaintiff filed a Reply to the Memorandum in Opposition.  (See Reply Mem. of Law in Supp. of Pl.'s Mot., dated Feb. 9, 2015.)  On February 11, 2015, the Court heard (helpful) oral argument.  (See Hr'g Tr., dated Feb. 11, 2015.)

## II.    Legal Standard

"[I]t is established practice . . . to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution."  Free Enterprise, 561 U.S. at 491 n.2 (quoting Bell v. Hood, 327 U.S. 678, 684 (1946)).  "[I]njunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally."  Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001).

"Where, as here, a party seeks a preliminary injunction against government action taken in the public interest pursuant to a statutory scheme, a moving party must demonstrate that (1) he is likely to succeed on the merits of the underlying claim, (2) he will suffer irreparable harm absent injunctive relief, and (3) the public interest weighs in favor of granting the injunction."  Pope v. Cnty. of Albany, 687 F.3d 565, 570 (2d Cir. 2012); see Local 1814, Int'l Longshoremen's Ass'n v. N.Y Shipping Ass'n, Inc., 965 F.2d 1224, 1228 (2d Cir. 1992) (The "standards which govern consideration of an application for a temporary restraining order . . . are the same standards as those which govern a preliminary injunction.").

Where Plaintiff fails to establish a likelihood of success on the merits, the Court "need not reach" the remaining elements.  Greenlight Capital, L.P. v. Apple, Inc., No. 13 Civ. 900, 2013 WL 646547, at *13 (S.D.N.Y. Feb. 22, 2013).

III.     **Analysis**

(1)     **The Court has Subject Matter Jurisdiction**

A federal district court has jurisdiction over pre-enforcement challenges to agency action

if three criteria are met: (1) the absence of jurisdiction in the district court "could foreclose all

meaningful judicial review [of the plaintiff's claim]'"; (2) the plaintiff's claim is "wholly

collateral" to "any Commission orders or rules from which review might be sought"; **and** (3) the

plaintiff's claim is "outside the agency's expertise." Free Enterprise, 561 U.S. at 489–90

(quoting Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 212–13 (1994))).

The Court concludes that all three of these criteria are met in this case.  The Court notes

(again) that the issue being reviewed here is whether the Court has subject matter jurisdiction

over Plaintiff's constitutional claim for injunctive and declaratory relief.  That issue is separate

and apart from a federal court's jurisdiction to review any orders which may be issued by the

SEC in the Administrative Proceeding.

**Meaningful Judicial Review**

Plaintiff argues that the "[t]he availability of an appeal after an administrative proceeding

to a federal circuit court of appeals does not address th[e] [alleged] harm because the . . . damage

[would] already substantially and harmfully [be] done."  (Compl. ¶ 58.)  The Government

counters that "should Plaintiff be found liable before the Commission, a court of appeals will

adjudicate her constitutional claim."  (Gov't Opp'n. at 8.)

The Court concludes that the absence of subject matter jurisdiction "could foreclose all

meaningful judicial review" of Plaintiff's claim.  Free Enterprise, 561 U.S. at 489 (quoting

Thunder Basin, 510 U.S. at 212–13).  The Court of Appeals obviously would not be able, upon

appellate review of any final SEC order, to enjoin the SEC from conducting the Administrative

Proceeding, as Duka asks this Court to do.  And, while the Court of Appeals could, presumably, vacate an adverse decision (order) by the SEC on constitutional grounds, it would be unable to remedy the harm alleged by Plaintiff in this Court, i.e., the "substantial litigation and resource burdens incurred during [the] administrative proceeding," and the "reputational harm" associated with her defending the Administrative Proceeding.[9]  (Compl. ¶¶ 57–59.)

Plaintiff is not here challenging the outcome of her Administrative Proceeding or any order(s) issued by the SEC.  Rather, Plaintiff seeks to enjoin the proceeding itself, and the (injunctive and declaratory) relief she seeks is to prevent the Administrative Proceeding from occurring in the first place.  See Bond v. United States, 131 S.Ct. 2355, 2365 (2011) (recognizing "an injured person's standing to object to a violation of a constitutional principle that allocates power within government" where "individuals sustain discrete, justiciable injury from actions that transgress separation-of-powers limitations"); see also Free Enterprise, 561 U.S. at 513 ("[Petitioners] are entitled to declaratory relief sufficient to ensure that the reporting requirements and auditing standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive.").  If Plaintiff were required, as the Government urges, to await the completion of the Administrative Proceeding to seek (any) judicial intervention, important remedies could be foreclosed.[10]  That is, her claim for injunctive

_____

[9] The Government argues that reputational harm and litigation expense do not constitute irreparable injury.  (Gov't Opp'n. at 24.)  Second Circuit precedent makes clear, however, that such alleged harms **are** sufficient for purposes of Article III standing.  See Mental Disability Law Clinic, Touro Law Center v. Hogan, 519 F. App'x. 714, 717 (2d Cir. 2013) ("This Court has explicitly rejected the argument that litigation expenses are insufficient to demonstrate an injury in fact for the purposes of Article III standing." (citing Nnebe v. Daus, 644 F.3d 147, 157 (2d Cir. 2011)); Gully v. Nat'l Credit Union Admin. Bd., 341 F.3d 155, 161 (2d Cir. 2003) ("The Supreme Court has long recognized that an injury to reputation will satisfy the injury element of standing.").

[10] The American Heritage New Dictionary of Cultural Literacy, 3d. Ed. (2005), defines the colloquial expression "you can't unscramble an egg" to mean "some processes are irreversible."

and declaratory relief would likely be moot at that stage because the allegedly unconstitutional

Administrative Proceeding would have already taken place.  Simply put, there would be no

proceeding to enjoin.  See Ortiz v. Meissner, 179 F.3d 718, 722 (9th Cir. 1999) ("The legal issue

would be moot.  District court jurisdiction is therefore available . . . ."); Church of Scientology of

Cal. v. United States, 506 U.S. 9, 12 (1992) ("[I]f an event occurs while a case is pending on

appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing

party, the appeal must be dismissed." (internal quotation marks omitted)); Fox v. Bd. of Trs. of

State Univ. of N.Y., 42 F.3d 135, 140 (2d Cir. 1994) (where "[t]he relief sought in the Complaint

could provide no legally cognizable benefits to Plaintiffs once they had left the SUNY system");

Martin–Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or

controversy is that the relief sought can no longer be given or is no longer needed.").[11]

**Wholly Collateral**

Plaintiff argues that her claim is "wholly collateral" to the Administrative Proceeding

because she "asserts a facial challenge to the very 'existence' of the Administrative Proceeding

. . . ."  (Pl. Mem. at 4–5.)  The Government responds that Plaintiff's claim is not collateral

because "Plaintiff's object is to halt that proceeding."  (Gov't Opp'n. at 10.)

The Court concludes that Plaintiff's claim for injunctive and declaratory relief is "wholly

collateral" to "any Commission orders or rules from which review might be sought" in the Court

of Appeals.  Free Enterprise, 561 U.S. at 490 (internal quotation marks omitted)).  In Free

---

[11] The Government also fails to consider that ALJ Elliot may ultimately find in favor of Plaintiff
or, alternatively, that the parties may settle prior to an appealable order being issued by the
Commission.  In either event, Plaintiff likely would not be "aggrieved by an order of the
Commission" and would, therefore, be unable to obtain any judicial review of her Article II
claim.  See 15 U.S.C. §§ 77i(a) ("Any person aggrieved by an order of the Commission may
obtain a review of such order in the court of appeals of the United States . . . .").

Enterprise, the Supreme Court found that the petitioners' Article II claim was collateral because "petitioners object[ed] to the Board's existence, not to any of its auditing standards." Id. at 490. Similarly, Duka contends that her Administrative Proceeding may not constitutionally take place, and she does not attack any order that may be issued in her Administrative Proceeding relating to "the outcome of the SEC action." Chau, 2014 WL 6984236, at *13; see Gupta, 796 F. Supp. 2d at 513 (where plaintiff "would state a claim even if [he] were entirely guilty of the charges made against him . . . .").

Unlike the plaintiffs in Chau, Duka does not assert an "as-applied" challenge to agency action "in light of the facts of a specific case." Chau, 2014 WL 6984236, at *6. Rather, she contends that Administrative Proceedings are "unconstitutional in all instances—a facial challenge." Id. As Judge Kaplan noted in Chau, "courts are more likely to sustain pre-enforcement jurisdiction over broad facial and systematic challenges." Id. (internal quotation marks omitted).

The Supreme Court's holding in Elgin v. Dep't. of the Treasury, 132 S.Ct. 2126 (2012), cited by the Government in its opposition, is distinguishable. The petitioners in Elgin had been terminated from their (civil service) jobs for failing to register for selective service as required under the Military Selective Service Act, 50 App. U.S.C. § 453. Rather than appealing their terminations to the MSPB or to the Court of Appeals for the Federal Circuit, as required under the Civil Service Reform Act ("CSRA"), the petitioners initiated a case in federal district court in Massachusetts, arguing that the statutory basis for their termination was unconstitutional. The Supreme Court concluded that the petitioners' constitutional claim was not "collateral to the CSRA scheme" because the petitioners had "request[ed] relief that the CSRA routinely affords," i.e., the review and reversal of their terminations. Id., at 2139–40; see also Merritt v. Shuttle,

Inc., 245 F.3d 182, 189 (2d Cir. 2001) ("[T]he mere overlap of evidence and testimony adduced in the two proceedings . . . are insufficient to preclude the district court from hearing a given claim.  Such overlap is relevant only if the claim attacks the matters decided by the administrative order.").

**Outside the Agency's Expertise**

Plaintiff argues that her claim is "indistinguishable from the claim asserted and adjudicated in federal courts in Free Enterprise, where the Article II challenge was held outside the SEC's expertise."  (Pl. Mem. at 5.)  The Government responds that "Plaintiff's claim raises questions of statutory and regulatory interpretation relating to the Commission's Rules of Practice."  (Gov't Opp'n. at 11.)

Without in any way diminishing ALJ Elliot's exceptional legal background, the Court concludes that the constitutional claim posed in this injunctive/declaratory judgment case is outside the SEC's expertise.  This aspect of executive agency practice is governed by clear Supreme Court precedent.  See Thunder Basin, 510 U.S. at 215 ("[A]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies."); see also Free Enterprise, 561 U.S. at 491 ("Petitioners' constitutional claims are also outside the Commission's competence and expertise . . . . [T]he statutory questions involved do not require 'technical considerations of [agency] policy' . . . . They are instead standard questions of administrative law, which the courts are at no disadvantage in answering.").[12]

---

[12] The Government argues unconvincingly that a party in Ms. Duka's shoes "must patiently await the denouement of proceedings within the [administrative agency]."  (Gov't Opp'n. at 10 (quoting Chau, 2014 WL 6984236, at *12).)  Second Circuit precedent appears to refute such a rule.  Touche Ross & Co. v. S.E.C., 609 F.2d 570, 577 (2d Cir. 1979) ("[T]o require appellants to

Thus, the Court concludes that it has subject matter jurisdiction to evaluate Plaintiff's application for declaratory and injunctive relief.

**(2)    Plaintiff's Motion for Preliminary Injunctive Relief is Denied**

The issue remaining is whether Plaintiff is entitled to preliminary injunctive relief.  That is, whether Plaintiff (1) is likely to succeed on the merits of her claim, (2) will suffer irreparable harm absent injunctive relief, and (3) the public interest weighs in favor of granting the injunction.  Pope, 687 F.3d at 570.  The Court concludes that Plaintiff has not demonstrated a likelihood of success on the merits and, accordingly, Plaintiff's motion for preliminary injunctive relief must be denied.  See Greenlight Capital, L.P., 2013 WL 646547, at *13. [13]

**Likelihood of Success on the Merits**

Plaintiff argues that "SEC ALJs, as inferior Officers, are protected from removal by at least two levels of 'good-cause' tenure protection" and, therefore, "the President cannot oversee SEC ALJ s in accordance with Article II."  (Pl. Mem. at 15, 17.)  The Government responds that "[t]he Supreme Court has repeatedly held that the Constitution permits Congress to place reasonable restrictions on the removal of inferior officers without unduly infringing upon the President's exercise of the Executive power."  (Gov't Opp'n. at 20.)

The Court finds that Duka is unlikely to succeed on the merits of her claim.  Plaintiff's claim appears to be based upon her interpretation of the Supreme Court's decision in Free

---

exhaust their administrative remedies would be to require them to submit to the very procedures which they are attacking.").

[13] Even assuming, arguendo, that Plaintiff had demonstrated a likelihood of success, the Court would likely find that she has failed to demonstrate that the public interest weighs in favor of granting a preliminary injunction.  See United States v. Wittig, 575 F.3d 1085, 1105 (10th Cir. 2009) ("A primary duty of the SEC is to protect investors and maintain the integrity of the securities markets.").

Enterprise.  (See discussion, supra, at n.8.)  According to Plaintiff, "[i]n Free Enterprise, the

Supreme Court held that if inferior officers . . . under Article II can only be removed from office

for good cause, then the decision to remove the inferior officers cannot be vested in other

officials (in that case, SEC Commissioners) who also enjoy good-cause tenure."  (Pl. Mem. at 1.)

Plaintiff contends both that SEC ALJs are inferior officers within the meaning of Article II of the

Constitution and that SEC ALJs enjoy at least two levels of ("good cause") tenure protection.

### Inferior Officers

"Whether administrative law judges are necessarily 'Officers of the United States' is

disputed."  Free Enterprise, 561 U.S. at 507 n.10.  Duka argues that SEC ALJs exercise

"significant authority pursuant to the laws of the United States."  (Pl. Mem. at 15.)  The

Government contends that "whether and how to use ALJs, the ALJs' role within the SEC's

decision-making scheme, and the history of the ALJ system . . . all reflect that SEC ALJs are

'mere aids' to the SEC and not officers exercising 'significant authority.'"  (Gov't Opp'n. at 12.)

The Supreme Court's decision in Freytag v. Commissioner, 501 U.S. 868 (1991), which

held that a Special Trial Judge of the Tax Court was an "inferior officer" under Article II, would

appear to support the conclusion that SEC ALJs are also inferior officers.  See Freytag, 501 U.S.

at 881–82 ("[S]pecial trial judges perform more than ministerial tasks. They take testimony,

conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance

with discovery orders. In the course of carrying out these important functions, the special trial

judges exercise significant discretion.").

The Court concludes that it need not resolve the issue of whether ALJs are inferior

officers because, as discussed below, the statutory restrictions on ALJs' removal from office are

both appropriate and constitutional.

**Levels of Tenure Protections**

The Court finds that <u>Free Enterprise</u> clearly did not establish, as Duka suggests, a categorical rule forbidding "two levels of 'good-cause' tenure protection."  <u>See</u> <u>Free Enterprise</u>, 561 U.S. at 536 (Breyer, J., dissenting) ("The Court fails to create a bright-line rule because of considerable uncertainty about the scope of its holding").  Rather, as stated by the majority, "[t]he only issue in this case is whether Congress may deprive the President of adequate control over the Board. . . ." <u>Id.</u> at 508.  The Court refused to consider the applicability of its holding to other federal employees because "none of the[se] positions . . . are similarly situated to the Board." <u>Id.</u> at 506 ("The dissent itself, however, stresses the very size and variety of the Federal Government . . . and those features discourage general pronouncements on matters neither briefed nor argued here.").

And, as noted, the majority specifically excluded ALJs from the reach of its holding.  <u>Id.</u> at 507 n.10 ("**For similar reasons, our holding also does not address that subset of independent agency employees who serve as administrative law judges.**" (emphasis added)).

Supreme Court precedent supports a functional test to determine whether and when statutory limitations on the President's power to remove executive officers violate Article II—and the conclusion that there is no such violation here.  "The analysis contained in our removal cases is designed not to define rigid categories of those officials who may or may not be removed at will by the President, but to ensure that Congress does not interfere with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article II.'" <u>Morrison v. Olson</u>, 487 U.S. 654, 689–90 (1988).  In <u>Free Enterprise</u>, the Supreme Court likewise focused upon whether the statutory restrictions on removal of PCAOB members were so structured as to infringe the President's

constitutional authority by "depriv[ing] the President of adequate control over the Board."  <u>Free Enterprise</u>, 561 U.S. at 508.  Courts must determine "whether the removal restrictions are of such a nature that they impede the President's ability to perform his constitutional duty . . . ."  <u>Morrison</u>, 487 U.S. at 691.

In cases involving (only) one layer of tenure protection, the Supreme Court has focused upon "the nature of the function that Congress vested in the [executive officer]," <u>Wiener v. United States</u>, 357 U.S. 349, 353 (1958), and has distinguished between officials whose functions are "purely executive" and those whose work is "quasi-judicial" or "adjudicatory."  <u>Humphrey's Executor v. United States</u>, 295 U.S. 602, 628–29, 631–32 (1935).  For reasons having to do with judicial independence, restrictions upon the removal of quasi-judicial officials have rarely resulted in finding an Article II violation.

In <u>Humphrey's Executor</u>, the Court upheld the constitutionality of a statute forbidding the President from removing commissioners of the Federal Trade Commission ("FTC") except for "good cause."  The Court's analysis turned upon the fact that the FTC is an independent agency vested with "quasi judicial" and "quasi legislative" power.  It "cannot in any proper sense be characterized as an arm or an eye of the executive."  <u>Id.</u> at 628.  The Court concluded that "[w]ere the President to have the power to remove FTC Commissioners at will, the 'coercive influence' of the removal power would 'threate[n] the independence of [the] commission.'"  <u>Morrison</u>, 487 U.S. at 687–88 (quoting <u>Humphrey's Executor</u>, 295 U.S. at 630)).

Similarly, in <u>Wiener</u>, the Court upheld restrictions upon the President's power to remove members of the War Claims Commission.  The Commission was tasked with adjudicating claims for compensation by individuals who had suffered personal injury or property damage during World War II.  The Court found dispositive the facts that the Commission was established as an

"adjudicating body" and was meant to be "entirely free from the control or coercive influence, direct or indirect, of either the Executive or the Congress." Wiener, 357 U.S. at 354–56 (internal quotations and citations omitted)).

The upshot is that congressional restrictions upon the President's ability to remove "quasi judicial" agency adjudicators are unlikely to interfere with the President's ability to perform his executive duties. See Morrison, 487 U.S. at 691–92 ("Although the counsel exercises no small amount of discretion and judgment in deciding how to carry out his or her duties under the Act, we simply do not see how the President's need to control the exercise of that discretion is so central to the functioning of the Executive Branch as to require as a matter of constitutional law that the counsel be terminable at will by the President.").

The Supreme Court's decision in Free Enterprise also supports the conclusion that restrictions upon the removal of agency adjudicators, as opposed to agency officials with "purely executive" functions, generally do **not** violate Article II. The majority emphasized the PCAOB's "expansive powers to govern an entire industry" and its "substantial executive authority," including the authority to "promulgate[] auditing and ethics standards, perform[] routine inspections of all accounting firms, demand[] documents and testimony, and initiate[] formal investigations and disciplinary proceedings." Free Enterprise, 561 U.S. at 485, 505. The Court described these functions as "executive activities typically carried out by officials within the Executive Branch." Id. at 504. It described the PCAOB itself as "the regulator of first resort and the primary law enforcement authority for a vital sector of our economy." Id. at 508. The Court's analysis was limited to whether "the President [may] be restricted in his ability to remove a principal officer [i.e., an SEC commissioner], who is in turn restricted in his ability to remove an inferior officer [i.e., a Board member], even though that inferior officer **determines**

**the policy and enforces the laws** of the United States." Id. at 484 (emphasis added). The Court concluded that the particular tenure protection scheme applicable to PCAOB members was "contrary to Article II's vesting of the executive power in the President." Id. at 496. But it expressly excluded ALJs from its holding because "**many administrative law judges of course perform adjudicative rather than enforcement or policymaking functions.**" Id. at 507, n.10 (emphasis added).

This Court finds no basis for concluding, as Duka urges, that the statutory restrictions upon the removal of SEC ALJs are "so structured as to infringe the President's constitutional authority." SEC ALJs perform solely adjudicatory functions, and are not engaged in policymaking or enforcement. "There can be little doubt that the role of the modern federal hearing examiner or administrative law judge . . . is 'functionally comparable' to that of a judge. His powers are often, if not generally, comparable to those of a trial judge: He may issue subpoenas, rule on proffers of evidence, regulate the course of the hearing, and make or recommend decisions." Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 756 (2002) (quoting Butz v. Economou, 438 U.S. 478, 513 (1978)); see also Neomi Rao, Removal: Necessary and Sufficient for Presidential Control, 65 Ala. L. Rev. 1205, 1248 (2014) ("Executive branch **adjudicators** are not generally thought to have discretion in th[e] sense [of one engaged in rulemaking or enforcement actions], but rather like other judges to be applying the law to particular facts." (emphasis added)). The challenged (good cause) limitations upon the removal of an SEC ALJ will in no way "impede the President's ability to perform his constitutional duty." Morrison, 487 U.S. at 691.

Indeed, invalidating the "good cause" restriction upon the removal of SEC ALJs—the so-called "second layer" of tenure protection—would undermine the ALJs' clear adjudicatory role

and their ability to "exercise[] . . . independent judgment on the evidence before [them], free from pressures by the parties or other officials within the agency." <u>Butz</u>, 438 U.S. at 513–14. That same layer of good cause protection is provided for in the APA and applies to ALJs across numerous federal agencies.  (<u>See</u> Gov't Opp'n. at 5.)  It exists "to guarantee the independence of hearing examiners."[14]  As Supreme Court Associate Justice Elena Kagan has written, "[i]n this context [of agency adjudication], presidential participation in administration, of whatever form, would contravene procedural norms and inject an inappropriate influence into the resolution of controversies . . . The consequence here is to disallow the President from disrupting or displacing the procedural, participatory requirements associated with agency adjudication, thus preserving their ability to serve their intended, special objectives."  Elena Kagan, <u>Presidential Administration</u>, 114 Harv. L. Rev. 2245, 2363 (2001).

Because Plaintiff has failed to demonstrate a likelihood of success on the merits of her claim, the Court need not decide whether there would be irreparable harm absent injunctive relief, and whether the public interest weighs in favor of granting an injunction.  <u>Greenlight Capital, L.P.</u>, 2013 WL 646547, at *13.  (<u>See</u>, <u>supra</u>, n.13.)

---

[14] <u>Butz</u>, 438 U.S. at 513–14 ("Prior to the Administrative Procedure Act, there was considerable concern that persons hearing administrative cases at the trial level could not exercise independent judgment because they were required to perform prosecutorial and investigative functions as well as their judicial work, and because they were often subordinate to executive officials within the agency" (internal citations omitted)); <u>see also</u> <u>Portland Audubon Society v. Endangered Species Comm.</u>, 984 F.2d 1534, 1546 (9th Cir. 1993) ("It is a fundamental precept of administrative law that when an agency performs a quasi-judicial (or a quasi-legislative) function its independence must be protected. There is no presidential prerogative to influence quasi-judicial administrative agency proceedings through behind-the-scenes lobbying.").

## IV.    Conclusion & Order

For the reasons stated herein, Plaintiff's motion for a preliminary injunction and

temporary restraining order [#9] is denied.

Dated: New York, New York
       April 15, 2015

_____

**RICHARD M. BERMAN, U.S.D.J.**