IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA DUKA,<br><br>    *Plaintiff*,<br><br>v.<br><br>U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>    *Defendant*. | No. 15-cv-357-RMB |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................1

I. THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIMS ........................1

II. PLAINTIFF'S ARTICLE II CHALLENGES FAIL TO STATE A CLAIM ........................3

III. PLAINTIFF'S APA CLAIM SHOULD BE DISMISSED...................................................7

IV. PLAINTIFF WILL NOT BE IRREPARABLY HARMED ABSENT AN INJUNCTION .................................................................................................................7

V. THE BALANCE OF EQUITIES IS IN THE GOVERNMENT'S FAVOR ........................9

CONCLUSION........................................................................................................................10

## TABLE OF AUTHORITIES

**CASES**   **PAGE(S)**

*Altman v. SEC*,
  687 F.3d 44 (2d Cir. 2012) ............................................................................................. 3

*Amandola v. Town of Babylon*,
  251 F.3d 339 (2d Cir. 2001) ........................................................................................... 8

*Aref v. U.S.*,
  452 F.3d 202 (2d Cir. 2006) ........................................................................................... 9

*Burroughs v. County of Nassau*,
  No. 13-cv-6784 (JS)(WDW), 2014 WL 2587580 (E.D.N.Y. June 9, 2014) ............... 9

*CleanTech Innovs. v. NASDAQ*,
  No. 11-cv-9358(KBF), 2012 WL 345902 (S.D.N.Y. Jan. 31, 2012) ......................... 10

*Dian Min Ma, Gang Ma, and Jin Tian*,
  Securities & Exchange Act Release No. 74887, 2015 WL 2088438 (SEC May 6, 2015) ......... 6

*Duka v. SEC*,
  -- F. Supp. 3d --, 2015 WL 1943245 (S.D.N.Y. 2015) ............................................. 10

*Edmond v. United States*,
  520 U.S. 651 (1997) ....................................................................................................... 5

*Elgin v. Dep't of Treasury*,
  132 S. Ct. 2126 (2012) ............................................................................................. 2, 3

*Fort v. Am. Fed'n of State, Cnty. & Mun. Emps.*,
  375 F. App'x 109 (2d Cir. 2010) .................................................................................. 9

*Free Enterprise Fund v. PCAOB,*,
  561 U.S. 477 (2010) ....................................................................................................... 1

*Freytag v. Commissioner*,
  501 U.S. 868 (1991) ....................................................................................................... 4

*FTC v. Standard Oil Co.*,
  449 U.S. 232 (1980) .................................................................................................. 2, 9

*In re al-Nashiri*,
  -- F.3d --, 2015 WL 3851966 (D.C. Cir. 2015) .......................................................... 9

*In re Sandahl*,
  980 F.2d 1118 (7th Cir. 1992) .................................................................................... 9

*Kamerling v. Massanari*,
  295 F.3d 206 (2d Cir. 2002) ...................................................................................... 9

*Landry v. FDIC*,
  204 F.3d 1125 (D.C. Cir. 2000) ............................................................................ 4, 5

*Latino Officers Ass'n v. Safir*,
  170 F.3d 167 (2d Cir. 1999) ...................................................................................... 8

*Maryland v. King*,
  133 S. Ct. 1 (2012) .................................................................................................. 10

*Munaf v. Geren*,
  553 U.S. 674 (2008) .................................................................................................. 1

*Public Serv. Co. of New Hampshire v. Town of West Newbury*,
  835 F.2d 380 (1st Cir.1987) ...................................................................................... 8

*Ryder v. United States*,
  515 U.S. 177 (1995) .................................................................................................. 5

*Sampson v. Murray*,
  415 U.S. 61 (1974) ................................................................................................ 2, 9

*Savage v. Gorski*,
  850 F.2d 64 (2d Cir. 1988) ........................................................................................ 8

*SEC v. Management Dynamics, Inc.*,
  515 F.2d 801 (2d Cir. 1975) ...................................................................................... 1

*Spring Hill Capital Partners, LLC, et al. v. SEC*,
  1:15- cv-04542 (S.D.N.Y June 29, 2015) ............................................................. 1, 8

*Statharos v. N.Y. City Taxi and Limousine Comm'n*,
  198 F.3d 317 (2d Cir. 1999) ...................................................................................... 8

*Sturm, Ruger & Co., Inc. v. Chao*,
  300 F.3d 867 (D.C. Cir. 2002) .................................................................................. 3

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) .................................................................................................. 3

*Tilton, et al. v. SEC*,
   No. 15-cv-2472, 2015 WL 4006165 (S.D.N.Y. June 30, 2015) .................................... 1, 2, 8, 9

*United States v. Wittig*,
   575 F.3d 1085 (10th Cir. 2009) ............................................................................................ 10

*Weiss v. United States*,
   510 U.S. 163 (1994) ................................................................................................................ 5

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .................................................................................................................... 9

**STATUTES**

5 U.S.C. App. 1 Reorg. Plan 10 1950 §§ 1-2, 64 Stat. 1265 ............................................................ 7

5 U.S.C. § 557(b) ............................................................................................................................ 6

5 U.S.C. §§ 1101 *et seq.* ................................................................................................................. 6

5 U.S.C. § 4301(2)(d) ..................................................................................................................... 6

15 U.S.C. § 78d-1(a) ....................................................................................................................... 7

15 U.S.C. § 78u(e) .......................................................................................................................... 4

Pub. L. No. 98-532, 98 Stat. 2705 (1984) ....................................................................................... 7

**REGULATIONS**

17 C.F.R. § 201.360(d)(2) ............................................................................................................... 6

17 C.F.R. § 201.411 ..................................................................................................................... 4, 6

17 C.F.R. § 201.452 ........................................................................................................................ 4

**LEGISLATIVE MATERIALS**

S. Rep. 101-337 (1990), *reprinted in* 1990 WL 263550 ................................................................ 6

**MISCELLANEOUS**

*Sec. of Ed. Review of Admin. Law Judge Decisions*, 15 U.S. Op. Off. Legal Counsel,
   1991 WL 499882 (Jan. 31, 1991) ........................................................................................... 5

# INTRODUCTION

Plaintiff's second attempt to obtain the "extraordinary and drastic" relief of halting an SEC enforcement proceeding, *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008), fares no better than her first.[1] As two judges in the Southern District of New York have already held in substantively identical cases, there is no jurisdiction in this Court over Plaintiff's claims. *Tilton v. SEC*, No. 15-cv-2472, 2015 WL 4006165 (S.D.N.Y. June 30, 2015) (Abrams, J.); Order, *Spring Hill Capital Partners, LLC v. SEC*, No. 15- cv-04542 (S.D.N.Y June 29, 2015) (Ramos, J.), ECF No. 23. Accordingly, the Complaint should be dismissed for lack of jurisdiction. And because SEC ALJs are employees, not inferior officers whose appointments and removal are governed by Article II of the Constitution, the Complaint fails to state a claim and should be dismissed on that basis as well. Furthermore, Plaintiff cannot establish that she would suffer irreparable harm simply by having her constitutional claims proceed through the statutory review scheme established by Congress, and thus, her motion for preliminary injunction should be denied.

# ARGUMENT

## I. THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIMS

The Court lacks jurisdiction over this suit in light of the exclusive remedial scheme established by the federal securities laws. Contrary to Plaintiff's arguments, the three factors discussed in *Free Enterprise* do not counsel otherwise. *See Free Enterprise Fund v. PCAOB,* 561 U.S. 477, 489 (2010).

*Meaningful Review*. Meaningful judicial review will be available to Plaintiff in the court of appeals at the conclusion of the administrative proceeding. Plaintiff disagrees (at 7-9), arguing that: (1) review would not be meaningful because she would have to first bear the burden of litigating the administrative proceeding; (2) she might win the administrative proceeding and,

---

[1] In the June 17, 2015 conference, this Court ordered that the parties proceed on an expedited schedule with a single set of motion papers—*i.e.*, Defendant's motion to dismiss—but to also address in those papers Plaintiff's arguments for a preliminary injunction. Plaintiff has styled her opposition to Defendant's motion to dismiss also as a motion for a preliminary injunction.

therefore, be unable to appeal from it; (3) the administrative proceeding could cause reputational harm; and (4) she might lose her appeal under the *de facto* officer doctrine.

These arguments are flawed. The Supreme Court long ago rejected the argument that the burden and cost of litigating an administrative proceeding justifies short-circuiting an administrative process. *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980). It likewise rejected the notion that a plaintiff could circumvent a required administrative proceeding because she might *prevail* in it, explaining that this possibility "warrants the requirement that [the plaintiff] pursue adjudication, not shortcut it." *Id.* at 244 n.11. Plaintiff's attempt (at 8) to distinguish *Standard Oil* on the basis that it "did not involve a collateral challenge to the constitutionality of the administrative proceeding" is unavailing, as the decision does not suggest that its holding depends upon the nature of the challenge. Plaintiff's reputational harm argument fails because it is speculative, lacks evidentiary support, and is legally baseless, as the correction of any procedural errors by the agency could fully remedy any supposed harm attributable to those errors. *Sampson v. Murray*, 415 U.S. 61, 88-89, 91 (1974).

Plaintiff's *de facto* officer doctrine argument (at 8-9) also misses the mark. At bottom, Plaintiff argues that meaningful judicial review would be unavailable because the court of appeals might conclude that the *de facto* officer doctrine shields the ALJ's actions. But the possibility that Plaintiff may lose her appeal does not demonstrate that she would lack meaningful judicial review. Judicial review in the court of appeals is "meaningful" as a matter of law, *e.g.*, *Elgin v. Dep't of Treasury,* 132 S. Ct. 2126, 2136-37 (2012), and, if the SEC were to invoke the *de facto* officer doctrine in the court of appeals, Plaintiff could press her objections to the application of the doctrine in that court.

*Wholly Collateral.* This suit is not wholly collateral to the statutory review scheme because (1) it is the means by which Plaintiff intends to halt the pending administrative proceeding, and (2) she has raised her claims from this suit in the administrative proceeding (as defenses). Plaintiff criticizes the second argument (at 10)—which was adopted by the court in *Tilton*, 2015 WL 4006165, at *10-12—as "absurd" because "such a rule would preclude district

2

courts from enjoining an administrative proceeding even where the claims brought by the SEC were not authorized by the securities laws or violated constitutional provisions such as the Equal Protection Clause." In other words, Plaintiff thinks that this definition of "collateral" is too broad because it would encompass lawsuits that are not focused on the securities laws issues at the heart of an administrative proceeding. Not so. When determining the relatedness of a lawsuit to an SEC administrative proceeding, it makes sense to consider whether the same claims or defenses are involved, regardless of whether those claims or defenses involve securities laws or constitutional law. As to Plaintiff's first example, there is nothing absurd about permitting the SEC to use its expertise to evaluate, subject to judicial review in the court of appeals, whether a claim in an administrative proceeding is authorized by the securities laws. *See, e.g., Sturm, Ruger & Co., Inc. v. Chao,* 300 F.3d 867, 874-75 (D.C. Cir. 2002) (requiring channeling even with allegation of *ultra vires* agency action). As to the second example, the Second Circuit required an equal protection challenge to an SEC proceeding to be channeled through the statutory review scheme in *Altman v. SEC*, 687 F.3d 44, 45-46 (2d Cir. 2012).

*Agency Expertise*. The SEC can bring its expertise to bear on the questions raised in this case. For example, whether SEC ALJs are inferior officers turns in part on antecedent questions about ALJs' authority under the securities laws and SEC regulations, which the SEC is expert at interpreting. *See, e.g., Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 214-15 (1994). Plaintiff's only response (at 11) is that the SEC lacks expertise regarding the ultimate constitutional and statutory questions presented in this case. That is irrelevant: *Elgin* recognized that there are "many threshold questions that may accompany a constitutional claim and to which [an agency] can apply its expertise." 132 S. Ct. at 2140.  But even if the SEC lacks expertise, "*Thunder Basin* and *Elgin* counsel that this is not sufficient to bypass the statutory remedial scheme where meaningful judicial review is otherwise available," *Tilton*, 2015 WL 4006165, at *13.

## II. PLAINTIFF'S ARTICLE II CHALLENGES FAIL TO STATE A CLAIM

In its opening brief (at 15-23), Defendant demonstrated that Plaintiff's Article II challenges to SEC ALJs' appointment and removal fail to state a claim because SEC ALJs are

3

not officers under Article II of the Constitution. Defendant relied in part on the D.C. Circuit's decision in *Landry v. FDIC*, 204 F.3d 1125, 1132-34 (D.C. Cir. 2000), which held that FDIC ALJs are not constitutional officers because they do not have final decision-making authority. Plaintiff now argues (at 15-16) that the Supreme Court in *Freytag v. Commissioner*, 501 U.S. 868 (1991), "explicitly rejected this argument." That is not so. *Freytag* specifically considered the final decision-making authority of the special trial judges of the Tax Court—authority that *Landry* found "was critical to the [*Freytag*] Court's decision" that special trial judges are inferior officers. *Landry*, 204 F.3d at 1134; *see Freytag*, 501 U.S. at 882.

Moreover, contrary to Plaintiff's suggestion (at 16), Defendant did not take the position that final decision-making authority is dispositive, nor does it do so now. Indeed, Defendant pointed to other indicia of SEC ALJs' lack of "significant authority," including, for example, that special trial judges have significant discretion even in cases over which they do not have final decision-making authority, whereas SEC ALJs lack similar discretion. *See* Def.'s Mem. at 18 & n.10. Specifically, the Commission does not defer to SEC ALJs' factual findings, nor does it accept ALJs' credibility determinations blindly; and it can also choose to hear the witnesses' testimony itself, or remand for further fact finding and credibility determinations. 17 C.F.R. §§ 201.411(a), 201.452. Defendant further showed (at 19-20) that the substantive authority SEC ALJs exercise is significantly less weighty than that exercised by special trial judges. Whereas special trial judges are part of an Article I tribunal that "exercises a portion of the judicial power of the United States" and functions "in much the same way as the federal district courts exercise theirs," *Freytag*, 501 U.S. at 891, an ALJ's function is merely to aid the employing agency's exercise of executive power, and an ALJ is subject to the agency's plenary control. It is therefore not surprising that, without further action by the Commission, SEC ALJs have no power to issue injunctions or impose sanctions. They also cannot enforce subpoenas or punish contemptuous conduct by fines or imprisonment, 15 U.S.C. § 78u(e), as can judges who possess judicial power.

Despite these fundamental distinctions, Plaintiff argues that special trial judges' exercise of judicial power is irrelevant because *Freytag*'s reference to the Tax Court's judicial power is in

4

a different part of the opinion. But in considering the duties and functions of special trial judges, the Supreme Court clearly was aware that special trial judges operate within an Article I tribunal that exercises the judicial power of the United States. Special trial judges' duties therefore cannot be viewed in a vacuum but must be assessed in light of the judicial power associated with them, just as SEC ALJs' performance of their duties must be viewed in context of the Commission's plenary authority over the entire administrative proceeding.[2]

Plaintiff argues that Defendant's interpretation of *Landry* is inconsistent with an opinion by the Office of Legal Counsel ("OLC") involving Department of Education ALJs. Pl.'s Opp'n at 16 (citing *Sec. of Ed. Review of Admin. Law Judge Decisions*, 15 U.S. Op. Off. Legal Counsel, 1991 WL 499882 (Jan. 31, 1991)). Aside from the fact that the OLC opinion did not assess whether those ALJs were inferior officers or employees, the constitutional status of ALJs must be analyzed based on the ALJs' duties and functions within the employing agency decision-making scheme. The Education ALJs are distinguishable from SEC ALJs because (1) by statute, certain of their decisions were "considered to be . . . final agency action[s]," *id.* at *9; and (2) by statute, those ALJs were appointed by the Head of the Department, the Secretary, *id.* at *13.

Plaintiff further argues that *Landry* is distinguishable because SEC ALJs allegedly have final decision-making authority. Despite agreeing with this Court's observation during the June 17 hearing that only the Commission can issue the final decisions of the agency, *see* 6/17 Tr. at 18, Plaintiff claims (at 16) that "SEC ALJ decisions can become final without further Commission review" and (at 19 and n.14) that SEC ALJs frequently render decisions that "the SEC regularly rubber stamps as final orders without Commission review." Plaintiff's assertions

---

[2] For similar reasons, Plaintiff's reliance on cases involving Article I military trial and appellate judges is misplaced. *See* Pl.'s Opp'n at 15 n.10 (citing *Weiss v. United States*, 510 U.S. 163 (1994); *Edmond v. United States*, 520 U.S. 651 (1997); *Ryder v. United States*, 515 U.S. 177 (1995)). Not all judges at any level within any constitutional, statutory, or regulatory scheme possess the same stature or exercise the same powers. The military judges in *Edmond* and *Weiss* exercised greater power than SEC ALJs, as they could, for example, decide "those court-martial proceedings that result in the most serious sentences," *Edmond*, 520 U.S. at 662, and render final and unreviewable decisions in a significant category of cases, *Weiss*, 510 U.S. at 168.

5

are wrong. While the APA states that a presiding employee's initial decision can become final if there is no "appeal to, or review on motion of, the agency," 5 U.S.C. § 557(b), the Commission has decided to take further action in all cases prior to the issuance of a final decision. The Commission has promulgated regulations under which, when there is no petition for review, the Commission determines whether to order review on its own initiative, 17 C.F.R. § 201.411(c), and if it decides not to, then the Commission "issue[s] an order that the decision has become final." *Id*. § 201.360(d)(2). The Commission in fact has from time to time ordered review of an ALJ's initial decision *sua sponte*.[3]

Plaintiff also cites 17 C.F.R. § 201.411(b)(2), and the number of initial decisions in 2014 from which there was no appeal, in arguing that a SEC ALJ's decision is allegedly often the final word. Section § 201.411(b)(2) lists criteria for determining whether to grant a petition for review. The list of criteria is not exhaustive, nor is the Commission precluded from granting review when none of the criteria is met. In any event, in FY 2014, the Commission granted all 16 timely filed petitions for review.[4] And for each initial decision that was not appealed, the Commission went through the above-described review process before issuing a finality order.

Finally, citing 5 U.S.C. § 4301(2)(d), which defines the term "employee" for certain purposes to exclude ALJs (as well as other employees such as those in the Foreign Service or in a certain component of the Department of Veterans Affairs), Plaintiff argues that Congress does not uniformly treat ALJs as employees, and thus, there is no need to defer to Congress's judgment. Section § 4301 governs performance appraisals of federal employees. The reason ALJs are excluded is not that they are not employees but rather that Congress intended to exempt them from performance appraisals by the employing agency so as to enhance their decisional

---

[3] *See, e.g.*, *In the Matter of Dian Min Ma, Gang Ma, and Jin Tian*, Securities & Exchange Act Release No. 74887, 2015 WL 2088438 (SEC May 6, 2015) (reviewing *sua sponte* ALJ's initial decision, vacating the initial decision and remanding for further proceedings).

[4] *See* https://www.sec.gov/litigation/apdocuments/ap-open-fileno-asc.xml; https://www.sec.gov/litigation/apdocuments/ap-closed-fileno-asc.xml; https://www.sec.gov/litigation/opinions/opinionarchive/opinarch2014.shtml.

6

independence. As Defendant explained in its opening brief (at 19), ALJs were originally dependent on their agency's ratings for compensation and promotion, which gave rise to complaints about their partiality toward their employing agency. To address those complaints, Congress, in enacting the APA, separated ALJs from the agency's investigative and prosecutorial personnel. In so doing, however, there was no indication that Congress intended to elevate ALJs' status above that of other agency personnel. And, as Defendant explained in detail in its opening brief (at 4-5), the Civil Service Reform Act of 1978, 5 U.S.C. §§ 1101 *et seq.*, regulates SEC ALJs' employment as it does that of other federal employees.

### III. PLAINTIFF'S APA CLAIM SHOULD BE DISMISSED

Plaintiff's APA argument rests on the flawed premise that the appointment of SEC ALJs is a function that by statute rests exclusively with the Commission, and that the Commission therefore must delegate such authority by published rule or order in accordance with 15 U.S.C. § 78d-1(a) if it does not exercise that authority itself. This is not correct. Congress transferred the authority to appoint SEC personnel from the Commission to the Chairman, and then authorized the Chairman to further delegate this hiring authority to appropriate personnel within the agency. 5 U.S.C. App. 1 Reorg. Plan 10 1950 §§ 1-2, 64 Stat. 1265; *see also* Pub. L. No. 98-532, 98 Stat. 2705 (1984). Plaintiff's suggestion (at 22)—that the Reorganization Plan of 1950 is "irrelevant" because it is "not a published order of the SEC"—is a non sequitur. It was promulgated pursuant to the Reorganization Act of 1949 and adopted by Congress as federal law. Pub. L. No. 98-532, 98 Stat. 2705 (1984). It is not a delegation of authority pursuant to section 78d-1(a); rather, it sets forth those functions properly belonging to the Commission and those belonging to the Chairman. Section 78d-1(a) is inapplicable to the appointment of ALJs, even if Plaintiff can overcome the jurisdictional hurdles identified in Defendant's opening brief (at 24-25).

### IV. PLAINTIFF WILL NOT BE IRREPARABLY HARMED ABSENT AN INJUNCTION

As discussed above, because Plaintiff has styled her opposition brief also as a motion for a preliminary injunction and proceeded to discuss the factors for such emergency relief,

Defendant will address the factors as well. The above discussion already demonstrated that Plaintiff has no likelihood of success on the merits. Plaintiff also cannot establish that she will be irreparably harmed if the Court declines her request to issue emergency injunctive relief. As set forth in Defendant's opposition to Plaintiff's first motion for emergency injunctive relief, ECF No. 13 at 23-25, declining to enjoin the SEC's ongoing proceeding will simply result in litigation in an administrative forum. Judge Ramos and Judge Abrams both concluded in substantively identical cases that such allegations are insufficient to establish irreparable harm.

First, as Judge Ramos held in *Spring Hill*, mere participation in a purportedly unconstitutional administrative proceeding is not sufficient to establish irreparable harm. *Spring Hill* 6/26 Tr. at 76-77. While an alleged violation of certain personal constitutional rights may trigger a presumption of irreparable harm, *e.g.*, *Statharos v. N.Y.C. Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) (holding that alleged violation of privacy rights demonstrates per se irreparable harm),[5] that principle does not extend to alleged violations of provisions of the Constitution that establish the structure of the Government, *Public Serv. Co. of New Hampshire v. Town of West Newbury*, 835 F.2d 380, 382 (1st Cir. 1987) (cases holding that a constitutional deprivation amounts to irreparable harm "are almost entirely restricted to cases involving alleged infringements of free speech, association, privacy, or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by any subsequent relief"). Indeed, courts have routinely reasoned that the constitutional violations the same as or analogous to those alleged here do not cause irreparable harm. *See, e.g.*, *Tilton*, 2015 WL 4006165, at *8; *In re al-Nashiri*, -- F.3d --, 2015 WL 3851966, at *7 (D.C. Cir. 2015) (separation-of-powers challenge); *In re Sandahl*, 980 F.2d 1118, 1120 (7th Cir. 1992) (Seventh Amendment challenge). A party seeking injunctive relief with respect to an alleged structural

---

[5] Even in the context of personal constitutional rights, the Second Circuit has declined to adopt a *per se* rule that irreparable harm can simply be presumed, rather than proven. *Amandola v. Town of Babylon*, 251 F.3d 339 (2d Cir. 2001); *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 171 (2d Cir. 1999); *Savage v. Gorski*, 850 F.2d 64, 67 (2d Cir. 1988).

8

constitutional violation must establish proof of an irreparable harm separate from the constitutional violation, *e.g.*, *Burroughs v. County of Nassau*, No. 13-cv-6784 (JS)(WDW), 2014 WL 2587580, at *9 (E.D.N.Y. June 9, 2014), which Plaintiff cannot do. Her alleged harm is the mere participation in an administrative proceeding, the outcome of which will be subject to judicial review. *See Fort v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 375 F. App'x 109, 111 (2d Cir. 2010); *Aref v. United States*, 452 F.3d 202 (2d Cir. 2006).

Second, Plaintiff's argument (at 23)—that she will be irreparably harmed because she will have to expend resources to litigate the administrative proceeding—is foreclosed by Supreme Court precedent. *See Standard Oil*, 449 U.S. at 244 ("the expense and annoyance of litigation is 'part of the social burden of living under government[,]' . . . [and] [m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury").

Third, Plaintiff claims (at 24) that her business reputation and, consequently, her business, will be damaged by an adverse ruling in the administrative proceeding. But as Judge Abrams recognized in rejecting a similar argument in *Tilton*, this argument is fundamentally flawed because "the assumption that there will be an adverse decision to cause such harm is speculative at this point." 2015 WL 4006165, at *8; *accord Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002). Moreover, as discussed above, Plaintiff provides no evidentiary support for her claim of reputational harm, and in any event, reputational harm is, as a matter of law, an inadequate basis for a finding of irreparable harm when the alleged agency errors can be fully corrected by the administrative review process. *See Murray*, 415 U.S. at 88-89, 91.

## V. THE BALANCE OF EQUITIES IS IN THE GOVERNMENT'S FAVOR

The balance of equities also supports denying Plaintiff's motion. An injunction would doubly harm the public's interest. First, it would allow the collateral proceeding in this Court to interfere with the Commission's significant enforcement efforts and results in the type of delay that Congress has sought to avoid by empowering the SEC to use administrative proceedings in a wider variety of cases. *See* S. Rep. 101-337 (1990), *reprinted in* 1990 WL 263550 (Leg. Hist.)

9

(recognizing the importance of "enabl[ing] the SEC to move quickly in administrative proceedings"). The injunction therefore would thwart the SEC in its efforts to act as "a statutory guardian charged with safeguarding the public interest in enforcing the securities laws." *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975). Indeed, this Court observed in denying Plaintiff's first motion for emergency injunctive relief that, even had the Court not found that Plaintiff was unlikely to prevail on the merits, the Court nonetheless "would likely [have found] that [Plaintiff] failed to demonstrate that the public interest weighs in favor of granting a preliminary injunction," *Duka v. SEC*, -- F. Supp. 3d --, 2015 WL 1943245, at *7 n.13 (S.D.N.Y. 2015), in light of vital role the SEC plays in "protect[ing] investors and maintain[ing] the integrity of the securities markets," *United States v. Wittig*, 575 F.3d 1085, 1105 (10th Cir. 2009). Second, a preliminary injunction would render meaningless the exclusive remedial scheme mandated by Congress. *CleanTech Innovs. v. NASDAQ*, No. 11-cv-9358(KBF), 2012 WL 345902, at *6 (S.D.N.Y. Jan. 31, 2012). Nothing counterbalances these two harms.

Plaintiff also maintains (at 24-25) that the SEC could bring an enforcement action in federal court, and that it is in the public interest to resolve the constitutional arguments raised by Plaintiff. But forcing the Commission to sue in federal court would strip the agency of the enforcement discretion afforded to it by Congress. *See Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quotation marks omitted)). Contrary to Plaintiff's contention, there is no need to freeze things in place because there is no constitutional violation, and in any case, no reason to resolve such issues separately from the statutory review scheme.

## CONCLUSION

For the foregoing reasons and those stated in its opening brief, Defendant respectfully requests that the Court dismiss this case for lack of subject matter jurisdiction or, alternatively, for failure to state a claim, and deny Plaintiff's request for a preliminary injunction.

Dated: July 22, 2015                                        Respectfully submitted,

| | |
|---|---|
| PREET BHARARA | BENJAMIN MIZER |
| United States Attorney | Principal Deputy Assistant Attorney General |
| | |
| JEANNETTE A. VARGAS | KATHLEEN R. HARTNETT |
| Assistant United States Attorney | Deputy Assistant Attorney General |
| U.S. Attorney's Office | |
| Southern District of New York | JENNIFER D. RICKETTS |
| 86 Chambers Street, 3rd Fl. | Director, Federal Programs Branch |
| New York, NY  10007 | |
| Phone: (212) 637-2678 | SUSAN K. RUDY |
| Fax: (212) 637-2702 | Assistant Director, Federal Programs Branch |

/s/ *Jean Lin*                     .
JEAN LIN
JUSTIN M. SANDBERG
ADAM GROGG
STEVEN A. MYERS
MATTHEW J. BERNS
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
Phone: (202) 514-3716
Fax: (202) 616-8202
Email: jean.lin@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2015, I electronically filed a copy of the foregoing. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jean Lin*
JEAN LIN
