```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  9/17/15
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------x

BARBARA DUKA,                          :
                                       :
                    Plaintiff,         :
                                       :     15 Civ. 357 (RMB) (SN)
       - against -                     :
                                       :     **DECISION & ORDER**
                                       :
U.S. SECURITIES AND EXCHANGE           :
COMMISSION,                            :
                                       :
                    Defendant.         :
---------------------------------------------------------x

## I.     Background

Having reviewed the record herein, including **(i)** the Court's Decision & Order, dated

April 15, 2015 ("April 15 Decision," attached hereto as Exhibit A), which, among other

things, found that the Court has subject matter jurisdiction to examine Plaintiff Barbara

Duka's contention that the U.S. Securities and Exchange Commission's ("SEC" or

"Commission" or "Defendant") administrative proceedings filed against her should be halted

because they are constitutionally defective, see April 15 Decision at 2[1]; **(ii)** the Court's

Decision & Order, dated August 3, 2015 ("August 3 Decision," attached hereto as Exhibit

B), which denied the SEC's motion, dated July 1, 2015, to dismiss Duka's complaint and

found that SEC Administrative Law Judges ("ALJs") are "inferior officers" because, among

other things, they exercise "significant authority pursuant to the laws of the United States,"

---
[1] Specifically, the Court determined that Duka had met the three criteria for subject matter jurisdiction: (i) "the absence of jurisdiction in the district court 'could foreclose all meaningful judicial review [of the plaintiff's claim],'" (ii) "the plaintiff's claim is 'wholly collateral' to 'any Commission orders or rules from which review might be sought,'" and (iii) "the plaintiff's claim is 'outside the agency's expertise.'"  April 15 Decision at 10 (citing Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 489-90 (2010)).

and that the SEC ALJs had not been appointed by the President or the SEC Commissioners as required by Article II of the United States Constitution, see August 3 Decision at 3, 5; **(iii)** the Court's Decision & Order, dated August 12, 2015 ("August 12 Decision," attached hereto as Exhibit C), which held that Plaintiff had made a sufficient showing that she faces irreparable harm if she is compelled to engage in a full-blown SEC administrative agency proceeding without first being able to air her constitutional challenge(s) in federal court, and that she is likely to succeed on the merits of her claim that SEC ALJs are "inferior officers" and, therefore, their appointment to office was improper. See August 12 Decision at 1. The August 12 Decision also preliminarily enjoined the SEC from "in any way further pursuing the pending administrative proceeding against Plaintiff, captioned In the Matter of Barbara Duka, Admin. Proc. File No. 3-16349 (Jan. 21, 2015)," see Id. at 5; **(iv)** the SEC's notice of interlocutory appeal, dated August 26, 2015 ("SEC's Appeal"), which notified the Court that the SEC has appealed to the United States Court of Appeals for the Second Circuit "from the Court's Decision and Order of August 12, 2015 granting preliminary injunction in this matter," see SEC's Appeal at 1; **(v)** the SEC's letter, dated August 26, 2015 ("SEC's August 26 Letter"), which requested a pre-motion conference "with respect to the SEC's contemplated motion to stay pending appeal the [Court's] preliminary injunction," see SEC's August 26 Letter at 1; **(vi)** Duka's response, dated September 1, 2015 ("Duka's September 1 Letter"), arguing that "the SEC, which seeks a stay pending appeal under Rule 62(c) . . . does not begin to meet the demanding standard under that Rule," see Duka's September Letter at 1; **(vii)** the SEC's letter, dated September 10, 2015 ("SEC's September 10 Letter), which requested that "the Court also address at that same conference the SEC's planned motion to stay all proceedings (**except the SEC's motion to stay the PI**) pending appeal," see SEC's

September 10 Letter at 1 (emphasis added); **(viii)** the Court's Order, dated September 11,

2015 ("September 11 Order"), perceiving and appreciating the "irony" of the SEC's

argument that "permitting the Second Circuit to address whether Plaintiff is likely to prevail

on the merits (including whether this Court has jurisdiction) before the parties litigate this

case to final judgment would serve the interests of judicial economy," see September 11

Order at 1[2]; and **(x)** applicable legal authorities; and **(xi)** the Court having heard helpful oral

argument on September 16, 2015 (see Transcript, dated September 16, 2015), **the Court**

**hereby denies the SEC's application to stay the preliminary injunction of the SEC's**

**administrative proceedings against Duka issued on August 12, 2015. The SEC's**

---

[2] The Court's reference to "irony" refers to the fact that conservation of Duka's resources
was a core argument that she raised in objecting to participating in the SEC's administrative
proceedings prior to resolution of her constitutional challenge in federal court. The SEC
flatly opposed that argument, which it now appears firmly to embrace. As recognized at the
September 16, 2015 hearing:

> [Court]:  So Ms. Duka says that she shouldn't be forced to spend money and
> potential harm to her reputation by going through the administrative
> proceeding in the SEC only to find out later, perhaps, at the back end -
> when I say "the back end" I mean when the case ultimately, if it does,
> winds up in the Court of Appeals. So, she's asking to have these issues
> cleared away in advance. I find that somewhat persuasive.
>
> But you [SEC] make the same argument here. You reject her argument
> in the SEC proceeding but in this Court you say it's more efficient if I
> stay everything, not only the preliminary injunction but also all of the
> other proceedings so that we don't waste a lot of resources, I guess,
> time, and effort. It seems to me that you can't have it both ways . . .
> what's good for the goose is good for the gander.
>
> So I don't understand why you reject that argument when Ms. Duka
> makes it but then at the same time in this Court you make the very
> same argument.

Tr. 22:3-19.

**application to stay all proceedings pending appeal (other than the SEC's motion to stay the preliminary injunction) will be decided separately.**

**II.     Legal Standard**

"The proponent of a stay bears the burden of establishing its need." Clinton v. Jones, 520 U.S. 681, 708 (1997). "[A] stay 'is not a matter of right." Whitehaven S.F., LLC v. Spangler, No. 13 CIV. 8476 ER, 2014 WL 5510860, at *1 (S.D.N.Y. Oct. 31, 2014) (quoting Virginian Ry. Co., 272 U.S. 658, 672 (1926)). "[A]n applicant for a stay pending appeal must establish more than a mere possibility *both* of irreparable injury absent a stay and of success on the merits of the appeal. Thus, a showing of likely irreparable harm absent a stay pending appeal is indispensable." Chevron Corp. v. Donziger, 37 F. Supp. 3d 653, 657 (S.D.N.Y. 2014) (emphasis in original).

**III.    Analysis**

**Subject Matter Jurisdiction**

This Court has jurisdiction to entertain Duka's application to enjoin on constitutional grounds the SEC proceedings against her for the reasons set forth in its earlier decisions in this matter (Exhibits A–C). All three of the subject matter jurisdiction criteria are met in this case, including (i) "the absence of subject matter jurisdiction 'could foreclose all meaningful judicial review," (ii) "Plaintiff's claim for injunctive and declaratory relief is 'wholly collateral' to 'any Commission orders or rules from which review might be sought' in the Court of Appeals," and (iii) "the constitutional claim posed in this injunctive/declaratory judgement case is outside the SEC's expertise." April 15 Decision at 10, 12, 14 (citing Free Enterprise, 561 U.S. at 489-91); see also supra n. 1.

4

The importance, indeed necessity, of exercising federal jurisdiction is thoroughly borne out by the record in this matter; the spate of similar litigations throughout the Country (and also within the SDNY); and even the SEC's filings which demonstrate (no doubt unintentionally) the judicial and administrative efficiency of early resolution of constitutional challenges by the federal courts. See, e.g., SEC's September 10 Letter at 2 ("Permitting the Second Circuit to address whether Plaintiff is likely to prevail on the merits (including whether this Court has jurisdiction) before the parties litigate this case to final judgment would serve the interests of judicial economy. If the Second Circuit finds that district courts lack jurisdiction over challenges to SEC administrative proceedings like Plaintiff's, that ruling will obviate further proceedings in this case. If, on the other hand, the Second Circuit finds district court jurisdiction in this case, then it will address whether the SEC administrative law judges are inferior officers under Article II of the Constitution, which will bear significantly on this Court's consideration of Plaintiff's Article II claims. Because the Second Circuit's decision is likely to have a significant if not dispositive impact on this case, a stay would conserve the resources of both the parties and the Court."); see also supra n. 2.

"That right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." New Orleans Pub. Serv. Inc. v. New Orleans, 491 U.S. 350, 358 (1989); see also Marshall v. Marshall, 547 U.S. 293, 298-99 (2006) ("[Federal courts] have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."); Quakenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996) ("[F]ederal courts have a virtually unflagging obligation to exercise the jurisdiction given them.").

The Court is, respectfully, convinced that it made the correct finding of subject matter jurisdiction in its April 15, 2015 Decision & Order.[3] The Court's ruling was followed in both Hill v. S.E.C., No. 1:15-cv-1801 (LMM), 2015 WL 4307088 (N.D. Ga. June 8, 2015) and Gray Financial Group et al. v. SEC, No. 1:15-cv-492 (LMM), Dkt. No. 56 (N.D. Ga. Aug. 4, 2015), which upheld, in circumstances similar to those presented here, federal district court jurisdiction to hear plaintiffs' constitutional claims. In Hill and Gray, District Judge Leigh Martin May concluded that "preclusion could foreclose all meaningful judicial review . . . the suit is wholly collateral to a statute's review provisions . . . [and] the claims are outside the agency's expertise." Hill, 2015 WL 4307088, at *6 (quoting Free Enterprise, 561 U.S. at 489); see also Gray, 15 Civ. 492 (LMM), Dkt. No. 56, slip op at *12 (same). Judge May also recognized that "because Congress created a statutory scheme which expressly included the district court as a permissible forum for the SEC's claims, Congress did not

---

[3] As noted during the September 16, 2015 hearing:

[Court]:    So as a practical matter, where we find ourselves is that -- which I think
            is a very positive place, which is that we are, in fact, in the process, in
            these several jurisdictions, including the Second Circuit, in the middle
            of having the federal courts determine in the first instance subject-
            matter jurisdiction and, as you point out, the merits . . . as to whether
            the plaintiff might succeed with her case in federal court.

            And don't you think that that's a positive place to be because it's clear
            that there are all of these legal issues that are going to be resolved by
            the circuit courts, and don't you think it's helpful that that happen
            before you get mired into these full-blown agency administrative
            proceedings and then those same issues presumably, unless they were
            moot, would then have to be taken up in the Courts of Appeals down
            the road, who knows when.

Tr. 13:8-24.

intend to limit § 1331 and prevent Plaintiff from raising his collateral constitutional claims in the district court. Congress could not have intended the statutory review process to be exclusive because it expressly provided for district courts to adjudicate not only constitutional issues but Exchange Act violations, at the SEC's option." Hill, 2015 WL 4307088, at *6.[4] Following Judge May's denial of the SEC's Motion to Stay Preliminary Injunction Pending Appeal in Hill, the Eleventh Circuit Court of Appeals (unanimously) refused to lift the injunction against the administrative proceedings. See Hill v. SEC, No. 15-12831-CC (11th Cir. Aug. 10, 2015) (SEC's "'Motion to Stay Preliminary Injunction Pending Appeal' is DENIED").

In Timbervest, LLC et al. v. SEC, 1:15-cv-2106 (LMM) (N.D. Ga. Aug. 4, 2015), Judge May again found that the district court had subject matter jurisdiction. "The SEC's position

---

[4] During the September 16, 2015 hearing, the following colloquy occurred:

> [Court]: But Congress certainly has not said that the federal district court, this – my court, Judge Abrams' court, Judge Ramos' court, does not ever have jurisdiction to hear these kinds of cases.

> [SEC Lin]: Right. Congress did not say that. But the statutory scheme does say that. If the commission chooses the administrative process, then exclusive judicial review is in the Court of Appeals.

> [Court]: I think Judge May was rather convinced that – or that was one of the arguments she made where she denied stay of her preliminary injunction was that Congress never intended to exclude the federal courts from this kind of litigation.

Tr. 16:4-16.

This Court is certainly also aware that Tilton v. SEC, No. 1:15-cv-02472, 2015 WL 4006165 (S.D.N.Y. June 30, 2015), appeal pending, No. 15-2103 (2d Cir.) and Spring Hill Capital Partners, LLC v. SEC, No. 1:15-cv-04542, ECF. No. 23 (S.D.N.Y. June 29, 2015) take a contrary position than this Court regarding subject matter jurisdiction. See August 3 Decision at 2.

is in tension with 28 U.S.C. § 1331, which provides that federal district courts 'have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Timbervest, 15-cv-2106, slip op. at 12. However, Judge May refused to grant the plaintiffs' preliminary injunction motion in that case, finding that "unlike the procedural posture in the Court's prior decisions in Gray and Hill, Plaintiffs waited until the [SEC] ALJ had issued his initial decision and this case was before the SEC itself before filing this motion. Plaintiffs have already gone through the entirety of the administrative procedure before the ALJ – thus, no injunction will cure or prevent Plaintiffs' prior obligation to defend itself before the ALJ. And any harm which Plaintiffs have already suffered by virtue of their initial decision being published has already been experienced." Id. at 27-28.

The Court is also familiar with the Seventh Circuit's decision in Bebo v. SEC, 2015 WL 4998489 (7th Cir. Aug. 24, 2015). In affirming the district court's dismissal for lack of subject matter jurisdiction, the Bebo court relied upon Elgin v. Dep't of Treasury, 132 S. Ct. 2126 (2012), see Bebo, 2015 WL 4998489, at *5-7, a case which this Court distinguished in its earlier ruling on April 15, 2015 (Exhibit A), as follows:

> The Supreme Court's holding in Elgin v. Dep't. of the Treasury, 132 S. Ct. 2126 (2012), cited by the Government in its opposition, is distinguishable. The petitioners in Elgin had been terminated from their (civil service) jobs for failing to register for selective service as required under the Military Selective Service Act, 50 App. U.S.C. § 453. Rather than appealing their terminations to the MSPB or to the Court of Appeals for the Federal Circuit, as required under the Civil Service Reform Act ("CSRA"), the petitioners initiated a case in federal district court in Massachusetts, arguing that the statutory basis for their termination was unconstitutional. The Supreme Court concluded that the petitioners' constitutional claim was not "collateral to the CSRA scheme" because the petitioners had "**request[ed] relief that the CSRA routinely affords**."

April 15 Decision at 13 (emphasis added).

8

Also, as set forth in the Court's earlier decision, "Plaintiff is not here challenging the outcome of her Administrative Proceeding or any order(s) issued by the SEC. Rather, Plaintiff seeks to enjoin the proceeding itself, and the (injunctive and declaratory) relief she seeks is to prevent the Administrative Proceeding from occurring in the first place." April 15 Decision at 11 (citing Bond v. United States, 131 S. Ct. 2355, 2365 (2011)). A finding of "the absence of subject matter jurisdiction 'could foreclose all meaningful judicial review' of the Plaintiff's claim." Id. at 10 (citing Free Enterprise, 561 U.S. at 489).

**Duka's Likely Success on the Merits**

The Court's earlier decision (Exhibit A) also concluded that "[t]he Supreme Court's decision in Freytag v. Commissioner, 501 U.S. 868 (1991), which held that a Special Trial Judge of the Tax Court was an 'inferior officer' under Article II, would appear to support the conclusion that SEC ALJs are also inferior officers." April 15 Decision at 16. Based upon the standards set out in Freytag, the Court's August 3, 2015 Decision & Order (Exhibit B) took the issue one step further and "conclude[d] that SEC ALJs **are** 'inferior officers' because they exercise 'significant authority pursuant to the laws of the United States.'" Id. at 3 (quoting Freytag, 501 U.S. at 881) (emphasis added). ALJs "take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders . . . [and] in the course of carrying out these important functions, the [ALJs] exercise significant discretion." Id. at 3 (quoting Freytag, 501 U.S. at 881). ALJ "positions are 'established by law' . . . and 'the duties, salary, and means of appointment for that office are specified by statute.'" Id.

9

There appears to be no dispute between Duka and the SEC that the ALJs in this matter are **not** appointed by the President or the SEC Commissioners. The September 16, 2015 hearing included the following colloquy:

> [Court]:    And in this case . . . it strikes me that the SEC itself concedes – now we're talking about the Appointments Clause of the United States Constitution . . . . And I think the SEC concedes that these ALJs were not appointed in accordance with the Appointments Clause; that is to say, they were not appointed by the President, and they were not appointed by the heads of departments or whatever, which everybody interprets to mean the SEC. So, then the only slim reed, as it were, is this very narrow issue of whether or not ALJs are inferior officers. Because if they are proven to – or if they are found to be, as I found them to be, inferior officers, game over. Right. You would then –
>
> [SEC Lin]:    Yes, your Honor. On the merits.

Tr. 24:1-16.

Additionally, in an SEC Affidavit, dated June 4, 2015, in In the Matter of Timbervest, LLC et al., Jayne L. Seidman, Deputy Chief Operating Officer of the SEC, stated that "[b]ased on [her] knowledge of the Commission's ALJ hiring process, [SEC] ALJ [Cameron] Elliot was not hired through a process involving the approval of the individual members of the Commission."[5] August 3 Decision at 5 (citing In the Matter Timbervest, LLC et al., File No. 3-15519 (attached as Ex. 1 to Am. Compl., dated June 10, 2015)). Similarly, "[t]he SEC concedes that Plaintiff's ALJ, James E. Grimes [who replaced ALJ Elliot in Duka's case], was not appointed by an SEC Commissioner." Hill, 2015 WL 4307088, at *19. For these reasons, Duka's constitutional (Appointments Clause) challenge is (very) likely to succeed.

---

[5] As noted, infra p. 12, ALJ Elliot is no longer assigned to Duka's case.

**The SEC Fails to Meet the Criteria for a Stay**

Courts weighing motions to stay consider four factors:

(1) Whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) Whether the applicant will be irreparably injured absent a stay;

(3) Whether issuance of the stay will substantially injure the parties interested in the proceeding; and

(4) Where the public interest lies.

Whitehaven, 2014 WL 5510860, at *1 (citing Nken v. Holder, 556 U.S. 418, 434 (2009)).

Courts "have treated these criteria somewhat like a sliding scale . . . [s]imply stated, more of

one excuses less of the other." Thapa v. Gonzales, 460 F.3d 323, 334 (2d Cir. 2006). **The**

**SEC falls short on each of the above four criteria.**

**The SEC Has Not Demonstrated Likely Success on the Merits**

The SEC has not shown that it will be able to succeed on the merits. Quite the opposite.

For one thing, the SEC concedes that ALJs Elliot and Grimes were not appointed by the

President or by the Commission. See supra p. 7. For another, respectfully, the SEC will not,

in the Court's view, be able to persuade the appellate courts that ALJs are not "inferior

officers." That SEC ALJs **are** inferior officers is demonstrated by the facts that they

"exercise 'significant authority pursuant to the laws of the United States,'" their positions are

"established by law" (U.S.C. §§ 556, 557 and 15 U.S.C. § 78d-l(a)), their "duties, salary, and

means of appointment for that office are specified by statute" (5 U.S.C. § 5372), and, in the

course of carrying out their "important functions," including adjudications, ALJs "take

testimony, conduct trials, rule on the admissibility of evidence, and have the power to

enforce compliance with discovery orders." August 3 Decision at 3 (citing Freytag, 501 U.S.

11

at 881); see 17 C.F.R. § 200.14(a). "Freytag mandates finding that the SEC ALJs exercise

'significant authority' and are thus inferior officers" and, because ALJs are "not

appropriately appointed pursuant to Article II, [their] appointment is likely unconstitutional

in violation of the Appointments Clause." See Hill, 2015 WL 4307088, at *18-19.

## Nor Has the SEC Demonstrated Irreparable Harm

The SEC has not shown irreparable harm which is "perhaps the single most important

prerequisite before a stay of a permanent injunction pending appeal can be issued." Church

& Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH, No. 14-CV-585 AJN, 2015 WL

5051769, at *2 (S.D.N.Y. Aug. 26, 2015) (citing Bell & Howell: Mamiya Co. v. Masel

Supply Co. Corp., 719 F.2d 42, 45 (2d Cir.1983). "Irreparable harm justifying a stay of an

injunction must be actual and imminent as opposed to speculative harm that cannot be

remedied without a stay." Church, 2015 WL 5051769, at *2 (citing Dexter 345 Inc. v.

Cuomo, 663 F.3d 59, 63 (2d Cir.2011); Grand River Enter. Six Nations, Ltd. v. Pryor, 481

F.3d 60, 66 (2d Cir.2007)).

The SEC's contention that the Court's preliminary injunction "interferes with the SEC's

ability to enforce the securities laws and to deter future violations," SEC's August 26 Letter

at 3, is not compelling because the SEC has at its disposal several options to "prosecute"

securities claims. The SEC may elect to bring their claims in district court, Hill v. SEC,

1:15-cv-01801 (LMM) slip op. at 4 (Aug. 4, 2015).[6]  Or, "[t]he ALJ's appointment could be

---

[6] Consider this exchange at the September 16, 2015 hearing:

> [Court]:    Well do you also feel that you as a Commission could, for example,
>             decline to do the Duka case and could have the case filed in federal
>             district court? If you wanted to? Wouldn't you have that authority?

easily cured by having the SEC Commissioners issue an appointment **or** preside over the matter themselves." August 3 Decision at 5 (quoting Hill, 2015 WL 4307088, at *20) (emphasis added).[7] And, the Court believes the SEC benefits from the injunction (along with Duka) for the simple (and obvious) reason that resolution of jurisdictional and constitutional claims logically should precede – and not follow – full-blown SEC administrative proceedings.

On the other hand, by permitting administrative proceedings against Plaintiff to go forward, "Ms. Duka will be required to [] participate in an unconstitutional and unlawful proceeding. The constitutional violation, standing alone, would constitute irreparable injury [to her]. The absence of traditional procedural safeguards in SEC administrative proceedings further exacerbates that irreparable harm." Pl.'s Amend. Compl. ¶ 67.

---

| [SEC Lin]: | If the Commission were to go to federal district court to begin an enforcement proceeding, this Article II question would never even arise. |
|---|---|
| [Court]: | Of course, I get that. But you do have that option available to you, don't you? |
| [SEC Lin]: | Yes. It is available to the Commission. |

Tr. 15:3-12.

[7] In the Court's August 3, 2015 Decision & Order, the Court "reserve[d] judgment on Plaintiff's application for a preliminary injunction and/or imposition of such an injunction for 7 days from the date hereof to allow the SEC the opportunity to notify the Court of its intention to cure any violation of the Appointments Clause." August 3 Decision at 6. The SEC advised the Court on August 10, 2015 that "[a]lthough the Commission in its adjudicatory capacity may decide in due course whether the SEC ALJs' appointments violate the Constitution and, if so, the appropriate remedy for such a violation, as of the filing of this letter, the Commission has not issued a decision or otherwise taken any public action on these questions." SEC's August 10 Letter at 1.

The Court is aware of recent **allegations** of undue pressure said to have been applied to an SEC ALJ to cause her to make SEC-favorable rulings. "Lillian McEwen, who was an SEC judge from 1995 to 2007, said she came under fire from [Chief Administrative Law Judge Brenda] Murray for finding too often in favor of defendants." See Jean Eaglesham, SEC Wins with In-House Judges, THE WALL STREET JOURNAL, May 6, 2015, http://www.wsj.com/articles/sec-wins-with-in-house-judges-1430965803. And, in In the Matter of Timbervest, respondents allegedly sought to depose presiding ALJ Cameron Elliot, who was then allegedly invited by the SEC "to file by July 1, 2015 an affidavit addressing whether he has had any communications or experienced any pressure similar to that alleged in the May 6, 2015 *The Wall Street Journal* article." Id. at 2. On June 9, 2015, ALJ Elliot emailed the following response: "I respectfully decline to submit the affidavit requested." See Jean Eagelsham, SEC Judge Declines to Submit Affidavit of No Bias, THE WALL STREET JOURNAL, June 11, 2015, http://blogs.wsj.com/moneybeat/2015/06/11/sec-judge-declines-to-submit-affidavit-of-no-bias/. On July 24, 2015, Chief Administrative Law Judge Murray issued an Order Redesignating Presiding Judge, designating Administrative Law Judge James E. Grimes "in place and stead of the Administrative Law Judge [ALJ Cameron Elliot] heretofore designated, to preside at the hearing in these proceedings and to perform other and related duties in accordance with the Commissioner's Rules of Practice." See In the Matter of Barbara Duka, File No. 3-16349 (SEC).

During the September 16, 2015 hearing, the Court noted that it was "aware that there is some sort of flap at the SEC with respect to some of the ALJs," that it "want[ed] to get further clarification about that matter," and that "in this very case, [ALJ] Cameron Elliot . . . has been reassigned because he was not able or would not submit an affidavit." Tr. 3:12-25.

14

While acknowledging that ALJ Elliot was removed from the Duka matter, Ms. Lin contended that "Judge Elliot has a very busy docket . . . and there is no suggestion, no connection whatsoever about [The Wall Street Journal article], about that particular former ALJ's accusations to Judge Elliot's reassignment in this case . . . . And it's not true that there would be any kind of connection." Tr. 28:1-14. The Court assumes that the SEC will want fully to investigate these matters.

## **Irreparable Harm to Duka & The Public Interest**

As "the first two factors – the movant's likelihood of success on appeal and prospect of suffering irreparable harm – are the most critical [and] movants have failed to make the required showing on these two prongs, little more needs to be said as to the second two, which ask whether a stay is likely irreparably to harm [Plaintiff] and whether a stay is in the public interest." Chevron Corp., 37 F. Supp. at 671.

As noted at supra p. 11, if the preliminary injunction were not in place, Duka would suffer irreparable harm. Duka "would not only be forced into an unconstitutional proceeding, but would be unable to recover monetary damages from this harm as the SEC possesses sovereign immunity . . . Plaintiff's requested relief would [also] be rendered moot as the Court of Appeals would be unable to enjoin a proceeding which has already occurred." August 12 Decision at 2.

The SEC argues unconvincingly that a party in Ms. Duka's shoes "must patiently await the denouement of proceedings within the [administrative agency]," SEC's Mem. of Law in Opp. at 10. But Second Circuit precedent appears to refute such a notion. See Touche Ross & Co. v. S.E.C., 609 F.2d 570, 577 (2d Cir. 1979) ("[T]o require appellants to exhaust their

15

administrative remedies would be to require them to submit to the very procedures which they are attacking.").

In addition, during the September 16, 2015 hearing, the SEC argued that administrative proceedings would serve the public interest because "it is a much faster process and it expedites the consideration and the determination of whether the underlying security violations had actually occurred and, more importantly, to impose the kind of remedy that would then help to prevent future harm." Tr. 18:14-18. The Court responded that "faster is [not] necessarily better because faster means no juries, no discovery, no declaratory relief. In federal court you can get that . . . there's a whole lot of protections, Ms. Duka argues, that are available in federal courts that are not available before the Commission." Tr. 19:15-19.

With respect to the public interest, the Court submits that it is of the utmost importance to the public that complex constitutional questions be resolved at the outset, with finality, and by application of the expertise of the federal courts.  See, e.g., Massaro v. United States, 538 U.S. 500, 504 (2003); see also Pappas v. Giuliani, 118 F. Supp. 2d 433, 442 (S.D.N.Y. 2000) aff'd, 290 F.3d 143 (2d Cir. 2002) ("Although often highly competent in their designated area of law, administrative decision-makers generally have neither the training nor the experience to adjudicate complex federal constitutional issues."); Austin v. Ford, 181 F.R.D. 283, 286 (S.D.N.Y. 1998) ("Public interest in finality of judgment encompasses the development of decisional law, the importance of the opinion to nonparties, and the deterrence of frivolous litigation.").[8]

---

[8] "The public is also interested in some finality, a resolution of these legal issues which sooner or later must be resolved in federal courts.  My own feeling is sooner better than later and I think that is in the public interest."  Tr. 32:12-16.

16

## IV.    Conclusion & Order

**For the foregoing reasons, the Court denies the SEC's motion to stay the August 12, 2015 preliminary injunction pending appeal.** The SEC remains enjoined from further pursuing administrative proceedings against Duka, captioned <u>In the Matter of Barbara Duka</u>, Admin. Proc. File No. 3-16349 (Jan. 21, 2015).

The SEC's September 10, 2015 application to stay **all** proceedings (other than the SEC's motion to stay the PI) pending appeal will be considered separately by the Court.[9]

Dated: New York, New York
September 17, 2015

$\mathcal{RMB}$

**RICHARD M. BERMAN, U.S.D.J.**

---

[9] The September 16, 2015 hearing also included this exchange:

| [Court]: | So even if – let's say hypothetically I decide not to stay the preliminary injunction, you still want this – the rest of the proceeding stayed while the issues are being sorted out in the Court of Appeals, for example? |
| [SEC Lin]: | Yes, your Honor. That's our position.  And we have a lot of briefing in this case already. |
| [Court]: | Yes |
| [SEC Lin]: | And if we can efficiently allow the Second Circuit to make the threshold questions or other questions, I think that will certainly save your Honor and the parties a lot of time. |

Tr. 26:16-27:1.

# EXHIBIT A

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/15/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BARBARA DUKA,                                 :
                                              :
                        Plaintiff,            :
                                              :          15 Civ. 357 (RMB)(SN)
                                              :
            -against-                         :
                                              :
                                              :          **DECISION & ORDER**
U.S. SECURITIES AND EXCHANGE                  :
COMMISSION,                                   :
                                              :
                        Defendant.            :
----------------------------------------------------------X

"When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction .... The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." New Orleans Pub. Serv., Inc. v. New Orleans, 491 U.S. 350, 358 (1989) (quoting Willcox v. Consol. Gas Co., 212 U.S. 19, 40 (1909))

I.   **Introduction**

This is one of a series of cases which seeks to enjoin on constitutional grounds the United States Securities and Exchange Commission from adjudicating within that agency alleged civil violations of the securities laws by persons not associated with regulated entities. The principal contention of Plaintiff Barbara Duka (and others) is that the administrative law judges who adjudicate such cases pursuant to provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111–203 ("Dodd-Frank"), are insulated unlawfully from oversight by the President who, under Article II of the Constitution, is vested with the "executive power," including the ability to hold executive officers accountable by

1

removing them from office. The SEC responds that the federal district courts are without subject

matter jurisdiction where, as here, the Commission has elected to proceed within the agency.[1]

**For the reasons set forth below, the Court finds, first, that it has subject matter**

**jurisdiction to examine Duka's plea that the SEC administrative proceedings against her be**

---

[1] At least two district courts in this Circuit have addressed the issue of subject matter jurisdiction in pre-enforcement challenges to SEC administrative proceedings.

In Gupta v. S.E.C., Judge Jed S. Rakoff held that the district court had subject matter jurisdiction to consider a plaintiff's action to enjoin an SEC administrative proceeding on the ground that the SEC had "single[d] him out for uniquely unfavorable treatment" in violation of his constitutional right to equal protection. 796 F. Supp. 2d 503, 506–07 (S.D.N.Y. 2011). Judge Rakoff found, among other things, that "nothing that happens in the administrative proceeding will bear on this [equal protection] claim, and no administrative record bearing on this claim will be developed for any federal appellate court to review." Id. at 514. Judge Rakoff concluded that "the SEC does not have exclusive jurisdiction over challenges to SEC-related actions that meet certain criteria, arguably present here." Id. at 510

In Chau v. S.E.C., Judge Lewis A. Kaplan concluded that the court lacked subject matter jurisdiction to consider a plaintiff's action to enjoin an SEC administrative proceeding on due process and equal protection grounds. No. 14–cv–1903, 2014 WL 6984236, at *1 (S.D.N.Y. Dec. 11, 2014). Judge Kaplan concluded, among other things, that "[t]here is an important distinction between a claim that an administrative scheme is unconstitutional in all instances—a facial challenge—and a claim that it violates a particular plaintiff's rights in light of the facts of a specific case—an as-applied challenge. As between the two, courts are more likely to sustain pre-enforcement jurisdiction over 'broad facial and systematic challenges.'" Id. at *6 (citation omitted).

Duka's claim presents a facial challenge to the constitutionality of SEC ALJ administrative proceedings. See also, Sarah S. Gold and Richard L. Spinogatti, Constitutional Challenges to SEC Administrative Proceedings, N.Y.L.J., Apr. 8, 2015, at 3. Duka does not assert as-applied equal protection or due process claims.

halted but, second, that Duka is not entitled to preliminarily enjoin the SEC proceedings because she is "unlikely to succeed on the merits" of her constitutional claim.[2] [3]

## II.    Background

On January 16, 2015, Barbara Duka ("Plaintiff" or "Duka"), formerly a co-manager of the commercial mortgage backed securities group of Standard & Poor's Rating Services ("S&P"), filed a complaint in this Court against the United States Securities and Exchange Commission ("SEC" or "Government" or "Commission") seeking declaratory and injunctive relief.  (Compl., dated Jan. 16, 2015 ("Compl."), ¶ 1.)   The Complaint seeks to prevent Duka "from being compelled to submit to an [allegedly] unconstitutional [SEC administrative] proceeding" which, in fact, was initiated against her on January 21, 2015.   (Compl. ¶¶ 2, 5.) Plaintiff contends that the SEC administrative law judges ("ALJs" or "SEC ALJs") who are responsible for adjudicating SEC administrative proceedings ("Administrative Proceeding(s)") "enjoy at least two layers of tenure protection," which insulate them from Presidential oversight. (Id. ¶ 3.)  According to Plaintiff, SEC Administrative Proceedings are, thus, unconstitutional on their face because they violate Article II of the United States Constitution.[4] (Id.)

### Administrative Proceedings

The Administrative Procedure Act, 5 U.S.C. § 500 et seq. ("APA"), authorizes executive agencies of the government such as the SEC to conduct Administrative Proceedings before an

---

[2] During an early case conference, the Court advised the parties as follows: "**I have [not] entered – and intentionally so – on the dockets any interim relief at this time.**"  (Hr'g Tr., dated Jan. 29, 2015, at 13:19–24 (emphasis added).)

[3] **Any issues raised by the parties not specifically addressed herein were considered by the Court on the merits and rejected.**

[4] Article II states that "[t]he executive power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1.

3

ALJ. ALJs have the authority to "administer oaths and affirmations"; "issue subpoenas authorized by law"; "rule on offers of proof and receive relevant evidence"; "regulate the course of the hearing"; and "decide the case." 5 U.S.C. §§ 556, 557. The ALJ serves as the finder of fact and of law (i.e., there are no juries). (Compl. ¶ 21.) Executive agencies, including the SEC, may appoint "as many administrative law judges as are necessary." Id. § 3105. SEC ALJs are assigned their cases by the Chief Administrative Law Judge of the SEC pursuant to authority delegated to the Chief ALJ by the Commission. 17 C.F.R. § 200.30-10.

Prior to the enactment of Dodd-Frank, the SEC was authorized to impose civil penalties in Administrative Proceedings only against "regulated person[s]" or companies. See Gupta, 796 F. Supp. 2d at 507. Before Dodd-Frank, in order to obtain civil penalties from non-regulated entities, the SEC was required to file a civil enforcement action in federal district court. See id. Dodd-Frank authorized the SEC to elect to impose civil penalties in Administrative Proceedings against "a person if the Commission finds, on the record . . . that such person . . . is violating or has violated any provision of [the Exchange Act], or any rule or regulation issued under [the Exchange Act]." 15 U.S.C. § 77h-1(g).

The defendant in an SEC Administrative Proceeding (such as Duka) may appeal an ALJ's decision to the Commission, which is comprised of five Commissioners (one of whom is Chairman) appointed by the President.[5] 17 C.F.R. § 201.410. Or, the Commission may review an ALJ's decision "on its own initiative." Id. § 201.411(c). The Commission "may affirm, reverse, modify, set aside or remand for further proceedings." Id. § 201.411(a). If a defendant

---

[5] The Commissioners are appointed "by the President by and with the advice and consent of the Senate" for five-year terms. 15 U.S.C. § 78d(a).

4

does not appeal and if the Commission does not initiate review on its own, the Commission will issue an order making the ALJ's decision "final." Id. § 201.360(d)(2).

A person who is aggrieved by a final order of the Commission may seek judicial review in the United States Court of Appeals for the circuit in which he or she resides or has his or her principal place of business, **or** before the United States Court of Appeals for the District of Columbia Circuit. 15 U.S.C. § 78y(a)(1).

All ALJs, including SEC ALJs, are removable from employment by their respective agency heads (in this case, the Commission) but only for "good cause." Good cause must be "established and determined" by the Merit Systems Protection Board ("MSPB"), an independent federal agency which handles federal employee appeals of adverse employment actions. 5 U.S.C. § 7521; 5 C.F.R. § 930.211(a). The SEC Commissioners, in turn, "cannot themselves be removed by the President except [for] inefficiency, neglect of duty, or malfeasance in office." Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 487 (2010) (citation omitted).

### The SEC Proceeding against Plaintiff

The SEC alleges in its Administrative Proceeding against Duka that during the period 2009 through 2011, Duka was managing director at Standard & Poor's Ratings Services "with responsibility for new issue ratings of Commercial Mortgage Backed Securities." (Order Instituting Administrative and Cease-and-Desist Proceedings, dated Jan. 21, 2015, attached as Ex. 3 to Decl. of Daniel Goldman, dated Jan. 26, 2015 ("Goldman Decl."), ¶ 1.) The SEC contends that "S&P's CMBS Group, acting through and led by Duka, published eight CMBS Presale reports between February and July 2011 in which S&P failed to disclose its relaxed methodology for calculating DSCRs [Debt Service Coverage Ratios]." (Id. ¶ 6.) The result,

5

according to the SEC, is that "[m]arket participants were . . . misled into believing that the ratings at issue were more conservative than they actually were." (Id.)  According to the SEC, "Duka willfully violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, which prohibits fraudulent conduct in the offer and sale of securities and in connection with the purchase or sale of securities." (Id. ¶ 49.)  The SEC also contends that Duka "should be ordered to cease and desist from committing or causing or aiding and abetting violations of and any future violations of Section 17(a) of the Securities Act," and should be ordered to pay a civil penalty and "pay disgorgement." (Id. at 11.)

On January 22, 2015, the SEC designated ALJ Cameron Elliot to preside over Plaintiff's Administrative Proceeding.[6]  Plaintiff was ordered to appear at a (scheduling) hearing on February 23, 2015. (Order Scheduling Hearing and Designating Presiding Judge, dated Jan. 22, 2015, attached as Ex. 4 to Goldman Decl.)  ALJ Elliot issued an order scheduling the adjudicatory hearing in Plaintiff's Administrative Proceeding to begin on September 16, 2015. (See, Order Following Prehearing Conference, dated Feb. 26, 2015, attached as exhibit to Letter from Nelson A. Boxer to Hon. Richard M. Berman, dated Feb. 27, 2015.)

---

[6] ALJ Elliot has a distinguished biography: Mr. Elliot graduated from Yale University in 1987 with a Bachelor of Science degree in physics and applied physics, and he graduated from Harvard Law School in 1996. He served as a law clerk for U.S. District Judge Edward Reed (D. Nev.) from July 1996 to August 1998. Mr. Elliot spent the next eight years at the U.S. Department of Justice, during which time he served as an Assistant U.S. Attorney in the Southern District of Florida and in the Eastern District of New York. He subsequently practiced as an attorney at the law firm of Darby & Darby P.C. in New York, where he handled intellectual property litigation, until his June 2008 appointment as an ALJ for the U.S. Social Security Administration. Mr. Elliot was appointed to the SEC in April 2011. ("SEC Announces Arrival of New Administrative Law Judge Cameron Elliot," (Apr. 25, 2011), https://www.sec.gov/news /press/2011/2011-96.htm.)

6

### Plaintiff's District Court Claim

Plaintiff contends here, as noted, that the Administrative Proceeding initiated against her

is unconstitutional under Article II (The President "shall take care that the laws be faithfully

executed . . . ."). According to Plaintiff, Article II requires that "executive officers, who exercise

significant executive power, be unprotected from removal by their superiors at will, when those

superiors are themselves protected from removal by the President at will."[7]  (Compl. ¶ 51.) [8]

Plaintiff's January 26, 2015 motion seeks to "temporarily restrain and preliminarily

enjoin the SEC from continuing and prosecuting the administrative proceeding it initiated against

---

[7] There are two categories of "executive officers," namely "principal officers" and "inferior officers." Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 510 (2010) ("Free Enterprise"). "[I]nferior officers are officers whose work is directed and supervised at some level by [principal] officers appointed by the President with the Senate's consent." Id. (citation omitted).

[8] Plaintiff relies heavily upon Free Enterprise, the case in which the Supreme Court invalidated the statutory tenure protections of members of the Public Company Accounting Oversight Board ("PCAOB" or "Board"). The PCAOB is a regulatory body created by the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7211, and placed under the supervision of the SEC. The petitioners' claim in Free Enterprise was that "Board members were insulated from Presidential control by two layers of tenure protection: Board members could only be removed by the Commission for good cause, and the [SEC] Commissioners could in turn only be removed by the President for good cause." Free Enterprise, 561 U.S. at 477–78. The Supreme Court concluded that "dual for-cause limitations on the removal of Board members" violated the President's implied power of removal contained in Article II of the Constitution because such limitations deprived the President of "the ability to oversee the Board." Free Enterprise, 561 U.S. at 492, 496.

The majority in Free Enterprise confined its holding by stating that "[t]he only issue in this case is whether Congress may deprive the President of adequate control over the Board." Id. at 508. It declined to consider the applicability of its holding to other federal employees because "none of the[se other] positions . . . are similarly situated to the Board." Id. at 506. Of significance here, the majority specifically excluded ALJs from its holding, stating: "**[O]ur holding also does not address that subset of independent agency employees who serve as administrative law judges . . . Whether administrative law judges are necessarily "Officers of the United States" is disputed . . . And unlike members of the Board, many administrative law judges of course perform adjudicative rather than enforcement or policymaking functions . . . or possess purely recommendatory powers.**" Id. at 507 n.10 (emphasis added). (See also discussion, infra, at pp. 17–20.)

her." (Mem. of Law in Supp. of Pl.'s Mot., dated Jan. 26, 2015 ("Pl. Mem."), at 1.)  It argues,

among other things, that: (1) this Court has subject matter jurisdiction because "dismissing Ms.

Duka's Complaint would foreclose meaningful judicial review of her constitutional claim"; "Ms.

Duka's claim . . . is wholly collateral to the Administrative Proceeding"; and Duka's claim is

"outside the SEC's expertise"; (2) Plaintiff is likely to succeed on the merits of her claim because

"SEC ALJ s, as inferior Officers, are protected from removal by at least two levels of 'good-

cause' tenure protection" and, thus, the President cannot oversee SEC ALJ s in accordance with

his Article II responsibilities; (3) "Ms. Duka will suffer irreparable harm, because she will be

compelled imminently to participate in the unconstitutional Administrative Proceeding"; and (4)

"[t]he balance of equities and the public interest strongly favor Ms. Duka." (Pl. Mem. at 5–6, 15,

17, 19.)

     In its opposition, the SEC asserts that: (1) federal district courts lack jurisdiction over

suits, like Duka's, "that attempt to bypass an exclusive remedial [SEC] scheme established by

Congress"; (2) "the [for cause] removal provisions applicable to [ALJs] do not raise separation

of powers concerns" because the Supreme Court "has repeatedly held that the Constitution

permits Congress to place reasonable restrictions on the removal of inferior officers"; (3) "an

allegation that the President of the United States does not have sufficient control over some of

his underlings describes, at best, a highly attenuated harm that does not warrant the drastic

remedy of an injunction"; and (4) an injunction "would delay the SEC's efforts to protect

investors and ensure the integrity of the securities markets." (Mem. of Law in Opp'n. to Pl.'s

Mot. ("Gov't. Opp'n.") at 7, 20, 24–25.)

On February 9, 2015, Plaintiff filed a Reply to the Memorandum in Opposition. (See Reply Mem. of Law in Supp. of Pl.'s Mot., dated Feb. 9, 2015.) On February 11, 2015, the Court heard (helpful) oral argument. (See Hr'g Tr., dated Feb. 11, 2015.)

## II.    Legal Standard

"[I]t is established practice . . . to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution." Free Enterprise, 561 U.S. at 491 n.2 (quoting Bell v. Hood, 327 U.S. 678, 684 (1946)). "[I]njunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001).

"Where, as here, a party seeks a preliminary injunction against government action taken in the public interest pursuant to a statutory scheme, a moving party must demonstrate that (1) he is likely to succeed on the merits of the underlying claim, (2) he will suffer irreparable harm absent injunctive relief, and (3) the public interest weighs in favor of granting the injunction." Pope v. Cnty. of Albany, 687 F.3d 565, 570 (2d Cir. 2012); see Local 1814, Int'l Longshoremen's Ass'n v. N.Y Shipping Ass'n, Inc., 965 F.2d 1224, 1228 (2d Cir. 1992) (The "standards which govern consideration of an application for a temporary restraining order . . . are the same standards as those which govern a preliminary injunction.").

Where Plaintiff fails to establish a likelihood of success on the merits, the Court "need not reach" the remaining elements. Greenlight Capital, L.P. v. Apple, Inc., No. 13 Civ. 900, 2013 WL 646547, at *13 (S.D.N.Y. Feb. 22, 2013).

9

### III.  Analysis

#### (1)  The Court has Subject Matter Jurisdiction

A federal district court has jurisdiction over pre-enforcement challenges to agency action
if three criteria are met: (1) the absence of jurisdiction in the district court "could foreclose all
meaningful judicial review [of the plaintiff's claim]'"; (2) the plaintiff's claim is "wholly
collateral" to "any Commission orders or rules from which review might be sought"; **and** (3) the
plaintiff's claim is "outside the agency's expertise." Free Enterprise, 561 U.S. at 489–90
(quoting Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 212–13 (1994))).

The Court concludes that all three of these criteria are met in this case. The Court notes
(again) that the issue being reviewed here is whether the Court has subject matter jurisdiction
over Plaintiff's constitutional claim for injunctive and declaratory relief. That issue is separate
and apart from a federal court's jurisdiction to review any orders which may be issued by the
SEC in the Administrative Proceeding.

#### Meaningful Judicial Review

Plaintiff argues that the "[t]he availability of an appeal after an administrative proceeding
to a federal circuit court of appeals does not address th[e] [alleged] harm because the . . . damage
[would] already substantially and harmfully [be] done." (Compl. ¶ 58.) The Government
counters that "should Plaintiff be found liable before the Commission, a court of appeals will
adjudicate her constitutional claim." (Gov't Opp'n. at 8.)

The Court concludes that the absence of subject matter jurisdiction "could foreclose all
meaningful judicial review" of Plaintiff's claim. Free Enterprise, 561 U.S. at 489 (quoting
Thunder Basin, 510 U.S. at 212–13). The Court of Appeals obviously would not be able, upon
appellate review of any final SEC order, to enjoin the SEC from conducting the Administrative

Proceeding, as Duka asks this Court to do. And, while the Court of Appeals could, presumably, vacate an adverse decision (order) by the SEC on constitutional grounds, it would be unable to remedy the harm alleged by Plaintiff in this Court, i.e., the "substantial litigation and resource burdens incurred during [the] administrative proceeding," and the "reputational harm" associated with her defending the Administrative Proceeding.[9] (Compl. ¶¶ 57–59.)

Plaintiff is not here challenging the outcome of her Administrative Proceeding or any order(s) issued by the SEC. Rather, Plaintiff seeks to enjoin the proceeding itself, and the (injunctive and declaratory) relief she seeks is to prevent the Administrative Proceeding from occurring in the first place. See Bond v. United States, 131 S.Ct. 2355, 2365 (2011) (recognizing "an injured person's standing to object to a violation of a constitutional principle that allocates power within government" where "individuals sustain discrete, justiciable injury from actions that transgress separation-of-powers limitations"); see also Free Enterprise, 561 U.S. at 513 ("[Petitioners] are entitled to declaratory relief sufficient to ensure that the reporting requirements and auditing standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive."). If Plaintiff were required, as the Government urges, to await the completion of the Administrative Proceeding to seek (any) judicial intervention, important remedies could be foreclosed.[10] That is, her claim for injunctive

---

[9] The Government argues that reputational harm and litigation expense do not constitute irreparable injury. (Gov't Opp'n. at 24.) Second Circuit precedent makes clear, however, that such alleged harms **are** sufficient for purposes of Article III standing. See Mental Disability Law Clinic, Touro Law Center v. Hogan, 519 F. App'x. 714, 717 (2d Cir. 2013) ("This Court has explicitly rejected the argument that litigation expenses are insufficient to demonstrate an injury in fact for the purposes of Article III standing." (citing Nnebe v. Daus, 644 F.3d 147, 157 (2d Cir. 2011)); Gully v. Nat'l Credit Union Admin. Bd., 341 F.3d 155, 161 (2d Cir. 2003) ("The Supreme Court has long recognized that an injury to reputation will satisfy the injury element of standing.").

[10] The American Heritage New Dictionary of Cultural Literacy, 3d. Ed. (2005), defines the colloquial expression "you can't unscramble an egg" to mean "some processes are irreversible."

and declaratory relief would likely be moot at that stage because the allegedly unconstitutional Administrative Proceeding would have already taken place. Simply put, there would be no proceeding to enjoin. See Ortiz v. Meissner, 179 F.3d 718, 722 (9th Cir. 1999) ("The legal issue would be moot. District court jurisdiction is therefore available . . . ."); Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed." (internal quotation marks omitted)); Fox v. Bd. of Trs. of State Univ. of N.Y., 42 F.3d 135, 140 (2d Cir. 1994) (where "[t]he relief sought in the Complaint could provide no legally cognizable benefits to Plaintiffs once they had left the SUNY system"); Martin–Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").[11]

**Wholly Collateral**

Plaintiff argues that her claim is "wholly collateral" to the Administrative Proceeding because she "asserts a facial challenge to the very 'existence' of the Administrative Proceeding . . . ." (Pl. Mem. at 4–5.) The Government responds that Plaintiff's claim is not collateral because "Plaintiff's object is to halt that proceeding." (Gov't Opp'n. at 10.)

The Court concludes that Plaintiff's claim for injunctive and declaratory relief is "wholly collateral" to "any Commission orders or rules from which review might be sought" in the Court of Appeals. Free Enterprise, 561 U.S. at 490 (internal quotation marks omitted)). In Free

---

[11] The Government also fails to consider that ALJ Elliot may ultimately find in favor of Plaintiff or, alternatively, that the parties may settle prior to an appealable order being issued by the Commission. In either event, Plaintiff likely would not be "aggrieved by an order of the Commission" and would, therefore, be unable to obtain any judicial review of her Article II claim. See 15 U.S.C. §§ 77i(a) ("Any person aggrieved by an order of the Commission may obtain a review of such order in the court of appeals of the United States . . . .").

Enterprise, the Supreme Court found that the petitioners' Article II claim was collateral because "petitioners object[ed] to the Board's existence, not to any of its auditing standards." Id. at 490. Similarly, Duka contends that her Administrative Proceeding may not constitutionally take place, and she does not attack any order that may be issued in her Administrative Proceeding relating to "the outcome of the SEC action." Chau, 2014 WL 6984236, at *13; see Gupta, 796 F. Supp. 2d at 513 (where plaintiff "would state a claim even if [he] were entirely guilty of the charges made against him . . . .").

Unlike the plaintiffs in Chau, Duka does not assert an "as-applied" challenge to agency action "in light of the facts of a specific case." Chau, 2014 WL 6984236, at *6. Rather, she contends that Administrative Proceedings are "unconstitutional in all instances—a facial challenge." Id. As Judge Kaplan noted in Chau, "courts are more likely to sustain pre-enforcement jurisdiction over broad facial and systematic challenges." Id. (internal quotation marks omitted).

The Supreme Court's holding in Elgin v. Dep't. of the Treasury, 132 S.Ct. 2126 (2012), cited by the Government in its opposition, is distinguishable. The petitioners in Elgin had been terminated from their (civil service) jobs for failing to register for selective service as required under the Military Selective Service Act, 50 App. U.S.C. § 453. Rather than appealing their terminations to the MSPB or to the Court of Appeals for the Federal Circuit, as required under the Civil Service Reform Act ("CSRA"), the petitioners initiated a case in federal district court in Massachusetts, arguing that the statutory basis for their termination was unconstitutional. The Supreme Court concluded that the petitioners' constitutional claim was not "collateral to the CSRA scheme" because the petitioners had "request[ed] relief that the CSRA routinely affords," i.e., the review and reversal of their terminations. Id., at 2139–40; see also Merritt v. Shuttle,

Inc., 245 F.3d 182, 189 (2d Cir. 2001) ("[T]he mere overlap of evidence and testimony adduced in the two proceedings . . . are insufficient to preclude the district court from hearing a given claim. Such overlap is relevant only if the claim attacks the matters decided by the administrative order.").

### Outside the Agency's Expertise

Plaintiff argues that her claim is "indistinguishable from the claim asserted and adjudicated in federal courts in Free Enterprise, where the Article II challenge was held outside the SEC's expertise." (Pl. Mem. at 5.) The Government responds that "Plaintiff's claim raises questions of statutory and regulatory interpretation relating to the Commission's Rules of Practice." (Gov't Opp'n. at 11.)

Without in any way diminishing ALJ Elliot's exceptional legal background, the Court concludes that the constitutional claim posed in this injunctive/declaratory judgment case is outside the SEC's expertise. This aspect of executive agency practice is governed by clear Supreme Court precedent. See Thunder Basin, 510 U.S. at 215 ("[A]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies."); see also Free Enterprise, 561 U.S. at 491 ("Petitioners' constitutional claims are also outside the Commission's competence and expertise . . . . [T]he statutory questions involved do not require 'technical considerations of [agency] policy' . . . . They are instead standard questions of administrative law, which the courts are at no disadvantage in answering.").[12]

---

[12] The Government argues unconvincingly that a party in Ms. Duka's shoes "must patiently await the denouement of proceedings within the [administrative agency].'" (Gov't Opp'n. at 10 (quoting Chau, 2014 WL 6984236, at *12).) Second Circuit precedent appears to refute such a rule. Touche Ross & Co. v. S.E.C., 609 F.2d 570, 577 (2d Cir. 1979) ("[T]o require appellants to

14

Thus, the Court concludes that it has subject matter jurisdiction to evaluate Plaintiff's application for declaratory and injunctive relief.

## (2) Plaintiff's Motion for Preliminary Injunctive Relief is Denied

The issue remaining is whether Plaintiff is entitled to preliminary injunctive relief. That is, whether Plaintiff (1) is likely to succeed on the merits of her claim, (2) will suffer irreparable harm absent injunctive relief, and (3) the public interest weighs in favor of granting the injunction. Pope, 687 F.3d at 570. The Court concludes that Plaintiff has not demonstrated a likelihood of success on the merits and, accordingly, Plaintiff's motion for preliminary injunctive relief must be denied. See Greenlight Capital, L.P., 2013 WL 646547, at *13. [13]

### Likelihood of Success on the Merits

Plaintiff argues that "SEC ALJs, as inferior Officers, are protected from removal by at least two levels of 'good-cause' tenure protection" and, therefore, "the President cannot oversee SEC ALJ s in accordance with Article II." (Pl. Mem. at 15, 17.) The Government responds that "[t]he Supreme Court has repeatedly held that the Constitution permits Congress to place reasonable restrictions on the removal of inferior officers without unduly infringing upon the President's exercise of the Executive power." (Gov't Opp'n. at 20.)

The Court finds that Duka is unlikely to succeed on the merits of her claim. Plaintiff's claim appears to be based upon her interpretation of the Supreme Court's decision in Free

---

exhaust their administrative remedies would be to require them to submit to the very procedures which they are attacking.").

[13] Even assuming, arguendo, that Plaintiff had demonstrated a likelihood of success, the Court would likely find that she has failed to demonstrate that the public interest weighs in favor of granting a preliminary injunction. See United States v. Wittig, 575 F.3d 1085, 1105 (10th Cir. 2009) ("A primary duty of the SEC is to protect investors and maintain the integrity of the securities markets.").

15

Enterprise. (See discussion, supra, at n.8.) According to Plaintiff, "[i]n Free Enterprise, the
Supreme Court held that if inferior officers . . . under Article II can only be removed from office
for good cause, then the decision to remove the inferior officers cannot be vested in other
officials (in that case, SEC Commissioners) who also enjoy good-cause tenure." (Pl. Mem. at 1.)
Plaintiff contends both that SEC ALJs are inferior officers within the meaning of Article II of the
Constitution and that SEC ALJs enjoy at least two levels of ("good cause") tenure protection.

### Inferior Officers

"Whether administrative law judges are necessarily 'Officers of the United States' is
disputed." Free Enterprise, 561 U.S. at 507 n.10. Duka argues that SEC ALJs exercise
"significant authority pursuant to the laws of the United States." (Pl. Mem. at 15.) The
Government contends that "whether and how to use ALJs, the ALJs' role within the SEC's
decision-making scheme, and the history of the ALJ system . . . all reflect that SEC ALJs are
'mere aids' to the SEC and not officers exercising 'significant authority.'" (Gov't Opp'n. at 12.)

The Supreme Court's decision in Freytag v. Commissioner, 501 U.S. 868 (1991), which
held that a Special Trial Judge of the Tax Court was an "inferior officer" under Article II, would
appear to support the conclusion that SEC ALJs are also inferior officers. See Freytag, 501 U.S.
at 881–82 ("[S]pecial trial judges perform more than ministerial tasks. They take testimony,
conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance
with discovery orders. In the course of carrying out these important functions, the special trial
judges exercise significant discretion.").

The Court concludes that it need not resolve the issue of whether ALJs are inferior
officers because, as discussed below, the statutory restrictions on ALJs' removal from office are
both appropriate and constitutional.

16

**Levels of Tenure Protections**

The Court finds that <u>Free Enterprise</u> clearly did not establish, as Duka suggests, a

categorical rule forbidding "two levels of 'good-cause' tenure protection." <u>See</u> <u>Free Enterprise</u>,

561 U.S. at 536 (Breyer, J., dissenting) ("The Court fails to create a bright-line rule because of

considerable uncertainty about the scope of its holding"). Rather, as stated by the majority,

"[t]he only issue in this case is whether Congress may deprive the President of adequate control

over the Board. . . ." <u>Id.</u> at 508. The Court refused to consider the applicability of its holding to

other federal employees because "none of the[se] positions . . . are similarly situated to the

Board." <u>Id.</u> at 506 ("The dissent itself, however, stresses the very size and variety of the Federal

Government . . . and those features discourage general pronouncements on matters neither

briefed nor argued here.").

And, as noted, the majority specifically excluded ALJs from the reach of its holding. <u>Id.</u>

at 507 n.10 ("**For similar reasons, our holding also does not address that subset of**

**independent agency employees who serve as administrative law judges.**" (emphasis added)).

Supreme Court precedent supports a functional test to determine whether and when

statutory limitations on the President's power to remove executive officers violate Article II—

and the conclusion that there is no such violation here. "The analysis contained in our removal

cases is designed not to define rigid categories of those officials who may or may not be

removed at will by the President, but to ensure that Congress does not interfere with the

President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care

that the laws be faithfully executed' under Article II.'" <u>Morrison v. Olson</u>, 487 U.S. 654, 689–90

(1988). In <u>Free Enterprise</u>, the Supreme Court likewise focused upon whether the statutory

restrictions on removal of PCAOB members were so structured as to infringe the President's

17

constitutional authority by "depriv[ing] the President of adequate control over the Board." Free Enterprise, 561 U.S. at 508. Courts must determine "whether the removal restrictions are of such a nature that they impede the President's ability to perform his constitutional duty . . . ." Morrison, 487 U.S. at 691.

In cases involving (only) one layer of tenure protection, the Supreme Court has focused upon "the nature of the function that Congress vested in the [executive officer]," Wiener v. United States, 357 U.S. 349, 353 (1958), and has distinguished between officials whose functions are "purely executive" and those whose work is "quasi-judicial" or "adjudicatory." Humphrey's Executor v. United States, 295 U.S. 602, 628–29, 631–32 (1935). For reasons having to do with judicial independence, restrictions upon the removal of quasi-judicial officials have rarely resulted in finding an Article II violation.

In Humphrey's Executor, the Court upheld the constitutionality of a statute forbidding the President from removing commissioners of the Federal Trade Commission ("FTC") except for "good cause." The Court's analysis turned upon the fact that the FTC is an independent agency vested with "quasi judicial" and "quasi legislative" power. It "cannot in any proper sense be characterized as an arm or an eye of the executive." Id. at 628. The Court concluded that "[w]ere the President to have the power to remove FTC Commissioners at will, the 'coercive influence' of the removal power would 'threate[n] the independence of [the] commission.'" Morrison, 487 U.S. at 687–88 (quoting Humphrey's Executor, 295 U.S. at 630)).

Similarly, in Wiener, the Court upheld restrictions upon the President's power to remove members of the War Claims Commission. The Commission was tasked with adjudicating claims for compensation by individuals who had suffered personal injury or property damage during World War II. The Court found dispositive the facts that the Commission was established as an

18

"adjudicating body" and was meant to be "entirely free from the control or coercive influence, direct or indirect, of either the Executive or the Congress." Wiener, 357 U.S. at 354–

56 (internal quotations and citations omitted)).

The upshot is that congressional restrictions upon the President's ability to remove "quasi judicial" agency adjudicators are unlikely to interfere with the President's ability to perform his executive duties. See Morrison, 487 U.S. at 691–92 ("Although the counsel exercises no small amount of discretion and judgment in deciding how to carry out his or her duties under the Act, we simply do not see how the President's need to control the exercise of that discretion is so central to the functioning of the Executive Branch as to require as a matter of constitutional law that the counsel be terminable at will by the President.").

The Supreme Court's decision in Free Enterprise also supports the conclusion that restrictions upon the removal of agency adjudicators, as opposed to agency officials with "purely executive" functions, generally do **not** violate Article II. The majority emphasized the PCAOB's "expansive powers to govern an entire industry" and its "substantial executive authority," including the authority to "promulgate[] auditing and ethics standards, perform[] routine inspections of all accounting firms, demand[] documents and testimony, and initiate[] formal investigations and disciplinary proceedings." Free Enterprise, 561 U.S. at 485, 505. The Court described these functions as "executive activities typically carried out by officials within the Executive Branch." Id. at 504. It described the PCAOB itself as "the regulator of first resort and the primary law enforcement authority for a vital sector of our economy." Id. at 508. The Court's analysis was limited to whether "the President [may] be restricted in his ability to remove a principal officer [i.e., an SEC commissioner], who is in turn restricted in his ability to remove an inferior officer [i.e., a Board member], even though that inferior officer **determines**

19

**the policy and enforces the laws** of the United States." Id. at 484 (emphasis added). The Court concluded that the particular tenure protection scheme applicable to PCAOB members was "contrary to Article II's vesting of the executive power in the President." Id. at 496. But it expressly excluded ALJs from its holding because "**many administrative law judges of course perform adjudicative rather than enforcement or policymaking functions.**" Id. at 507, n.10 (emphasis added).

This Court finds no basis for concluding, as Duka urges, that the statutory restrictions upon the removal of SEC ALJs are "so structured as to infringe the President's constitutional authority." SEC ALJs perform solely adjudicatory functions, and are not engaged in policymaking or enforcement. "There can be little doubt that the role of the modern federal hearing examiner or administrative law judge . . . is 'functionally comparable' to that of a judge. His powers are often, if not generally, comparable to those of a trial judge: He may issue subpoenas, rule on proffers of evidence, regulate the course of the hearing, and make or recommend decisions." Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 756 (2002) (quoting Butz v. Economou, 438 U.S. 478, 513 (1978)); see also Neomi Rao, Removal: Necessary and Sufficient for Presidential Control, 65 Ala. L. Rev. 1205, 1248 (2014) ("Executive branch **adjudicators** are not generally thought to have discretion in th[e] sense [of one engaged in rulemaking or enforcement actions], but rather like other judges to be applying the law to particular facts." (emphasis added)). The challenged (good cause) limitations upon the removal of an SEC ALJ will in no way "impede the President's ability to perform his constitutional duty." Morrison, 487 U.S. at 691.

Indeed, invalidating the "good cause" restriction upon the removal of SEC ALJs—the so-called "second layer" of tenure protection—would undermine the ALJs' clear adjudicatory role

20

and their ability to "exercise[] . . . independent judgment on the evidence before [them], free

from pressures by the parties or other officials within the agency."  <u>Butz</u>, 438 U.S. at 513–14.

That same layer of good cause protection is provided for in the APA and applies to ALJs across

numerous federal agencies.  (<u>See</u> Gov't Opp'n. at 5.)  It exists "to guarantee the independence of

hearing examiners."[14]  As Supreme Court Associate Justice Elena Kagan has written, "[i]n this

context [of agency adjudication], presidential participation in administration, of whatever form,

would contravene procedural norms and inject an inappropriate influence into the resolution of

controversies . . . The consequence here is to disallow the President from disrupting or displacing

the procedural, participatory requirements associated with agency adjudication, thus preserving

their ability to serve their intended, special objectives."  Elena Kagan, <u>Presidential</u>

<u>Administration</u>, 114 Harv. L. Rev. 2245, 2363 (2001).

     Because Plaintiff has failed to demonstrate a likelihood of success on the merits of her

claim, the Court need not decide whether there would be irreparable harm absent injunctive

relief, and whether the public interest weighs in favor of granting an injunction.  <u>Greenlight</u>

<u>Capital, L.P.</u>, 2013 WL 646547, at *13.  (<u>See</u>, <u>supra</u>, n.13.)

---

[14] <u>Butz</u>, 438 U.S. at 513–14 ("Prior to the Administrative Procedure Act, there was considerable concern that persons hearing administrative cases at the trial level could not exercise independent judgment because they were required to perform prosecutorial and investigative functions as well as their judicial work, and because they were often subordinate to executive officials within the agency" (internal citations omitted)); <u>see also</u> <u>Portland Audubon Society v. Endangered Species Comm.</u>, 984 F.2d 1534, 1546 (9th Cir. 1993) ("It is a fundamental precept of administrative law that when an agency performs a quasi-judicial (or a quasi-legislative) function its independence must be protected. There is no presidential prerogative to influence quasi-judicial administrative agency proceedings through behind-the-scenes lobbying.").

## IV. Conclusion & Order

For the reasons stated herein, Plaintiff's motion for a preliminary injunction and

temporary restraining order [#9] is denied.

Dated: New York, New York
      April 15, 2015

*RMB*

**RICHARD M. BERMAN, U.S.D.J.**

22

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BARBARA DUKA,                   :
                            :
                Plaintiff,     :
                            :     15 Civ. 357 (RMB)(SN)
        -against-            :
                            :
                            :     **DECISION & ORDER**
U.S. SECURITIES AND EXCHANGE     :
COMMISSION,                  :
                            :
               Defendant.    :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: **9/3/2015**

       Having reviewed the record herein, including **(i)** Plaintiff Barbara Duka's ("Plaintiff" or

"Duka") complaint, dated January 16, 2015, which alleged that administrative proceedings

conducted by the Securities and Exchange Commission ("SEC" or "Government" or

"Defendant") violate Article II of the Constitution because the SEC administrative law judges

("ALJs" or "SEC ALJs") who are responsible for adjudicating those proceedings "enjoy at least

two layers of tenure protection," (Compl., dated Jan. 16, 2015 ("Compl."), ¶ 3); **(ii)** the Court's

Decision & Order, dated April 15, 2015 ("Decision & Order"), which found that the Court has

subject matter jurisdiction "to examine Duka's plea that the SEC administrative proceedings

against her be halted but [also] . . . that Duka is not entitled to preliminarily enjoin the SEC

proceedings because she is 'unlikely to succeed on the merits' of her constitutional claim,"

(Decision & Order at 2–3); **(iii)** Plaintiff's Amended Complaint, filed June 10, 2015, which

included a (newly-asserted) claim that "[i]n contravention of the Appointments Clause [of

Article II of the Constitution], SEC ALJ s have not been appointed by the SEC Commissioners,"

(Am. Compl., dated June 10, 2015, ¶ 5)[1]; **(iv)** the SEC's motion to dismiss (including its

opposition to Plaintiff's application for preliminary injunctive relief), dated July 1, 2015, (Br. in

Support of Mot. to Dismiss, dated July 1, 2015); **(v)** Plaintiff's opposition to the SEC's motion to

dismiss (including its application for preliminary injunctive relief), dated July 15, 2015, (Br. in

Opposition of Mot. to Dismiss, dated July 15, 2015); **(vi)** the Government's reply, dated July 22,

2015 (Government's Reply Br., dated July 22, 2015); **(vii)** Plaintiff's letter to the Court, dated

July 27, 2015, which stated that "Chief ALJ Murray . . . was appointed as Chief Administrative

Law Judge by the Commission on March 20, 1994" (Letter to the Court, dated July 27, 2015, at

2); and **(vii)** applicable legal authorities, **the Court hereby denies the SEC's motion to**

**dismiss.**[2]

**I. Subject Matter Jurisdiction**

     This Court confirms the reasoning and conclusions set forth in its Decision & Order.  The

Court perceives no new facts or legal authorities that would warrant reconsideration, including,

most respectfully, two recent decisions in the Southern District of New York in Tilton v. S.E.C.,

No. 15-CV-2472 RA, 2015 WL 4006165 (S.D.N.Y. June 30, 2015) and Spring Hill Capital

Partners, LLC, et al. v. SEC, 1:15-cv-04542, ECF No. 24 (S.D.N.Y June 29, 2015).  The Court

finds persuasive the reasoning in Hill v. S.E.C., No. 1:15-CV-1801-LMM, 2015 WL 4307088, at

*6 (N.D. Ga. June 8, 2015) ("Congress did not intend to . . . prevent Plaintiff from raising his

collateral constitutional claims in the district court.").

---

[1] Some SEC ALJs appear to have been appointed by the SEC. (See Letter to the Court, dated July 27, 2015, quoted in this Decision & Order at **(vii)**.).  Others, including those involved in Duka's case, i.e. ALJs Cameron Elliot and James E. Grimes, arguably were not appointed by the SEC.  (Letter to the Court, dated July 28, 2015, at 1.)

[2] The parties have agreed that the motion to dismiss will be decided on submission. (See Tr. of Proceedings, dated June 17, 2015, at 25.)

The Court has subject matter jurisdiction to evaluate Plaintiff's application for (declaratory and injunctive) relief. Among other reasons, Plaintiff has no opportunity for meaningful judicial review. See Decision & Order at 10; see also Hill, 2015 WL 4307088, at *8 ("[w]aiting until the harm Plaintiff alleges cannot be remedied is not meaningful judicial review.").[3] Duka's claim is that these "administrative proceedings are unconstitutional in all instances." (Decision & Order at 13.) Seeking to halt ALJ proceedings based upon alleged constitutional violations cannot reasonably be characterized as the "regular" or "routine" business of SEC administrative proceedings and is, in any case, unrelated to the securities violations underlying Duka's administrative proceeding.

## II. Appointments Clause Violation

The Court stated in its Decision & Order that "[t]he Supreme Court's decision in Freytag v. Commissioner, 501 U.S. 868 (1991), which held that a Special Trial Judge of the Tax Court was an 'inferior officer' under Article II, would appear to support the conclusion that SEC ALJs are also inferior officers." (Decision & Order, at 16.) The Court here concludes that SEC ALJs are "inferior officers" because they exercise "significant authority pursuant to the laws of the United States." Freytag, 501 U.S. at 881. (See Decision & Order, at 16.) The SEC ALJs'

---

[3] In addition, SEC determinations which have been reviewed on appeal to the D.C. Circuit and the Second Circuit are (anecdotally, to be sure) often upheld. See, e.g, Pierce v. S.E.C., 786 F.3d 1027 (D.C. Cir. 2015) ("[p]ursuant to the Administrative Procedure Act, the Commission's legal conclusions are set aside if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [and] [t]he findings of the Commission as to the facts, if supported by substantial evidence, are conclusive.") (internal quotations omitted); Siris v. S.E.C., 773 F.3d 89 (D.C. Cir. 2014); Amundsen v. S.E.C., 575 F. App'x 1 (D.C. Cir. 2014); Altman v. S.E.C., 666 F.3d 1322, 1325 (D.C. Cir. 2011); Ricupero v. S.E.C., 436 F. App'x 31 (2d Cir. 2011); VanCook v. S.E.C., 653 F.3d 130 (2d Cir. 2011); Katz v. S.E.C., 647 F.3d 1156 (D.C. Cir. 2011); Glodek v. U.S. S.E.C., 416 F. App'x 95 (2d Cir. 2011); Robles v. S.E.C., 411 F. App'x 337 (D.C. Cir. 2010); Riordan v. S.E.C., 627 F.3d 1230 (D.C. Cir. 2010); Gonchar v. S.E.C., 409 F. App'x 396 (2d Cir. 2010).

positions are "established by [l]aw," including 5 U.S.C. §§ 556, 557 and 15 U.S.C. § 78d-1(a),

and "the duties, salary, and means of appointment for that office are specified by statute." Id.;

see also 5 U.S.C. § 5372. And, ALJs "take testimony, conduct trials, rule on the admissibility of

evidence, and have the power to enforce compliance with discovery orders." Freytag, 501 U.S.

at 881. "In the course of carrying out these important functions, the [ALJs] exercise significant

discretion." Id.; see also Hill, 2015 WL 4307088, at *17 ("like the STJs in Freytag, SEC ALJs

exercise 'significant authority.'"). The Court is aware that Landry v. FDIC, 204 F.3d 1125 (D.C.

Cir. 2000) is to the contrary.

The Appointments Clause in Article II provides: "[T]he Congress may by Law vest the

Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts

of Law, or in the Heads of Departments." Constitution, Art. II, § 2, cl. 2. It is well-settled that

the Appointments Clause provides the exclusive means by which inferior officers may be

appointed. See Buckley v. Valeo, 424 U.S. 1, 138–9 (1976) ("Congress may undoubtedly . . .

provide such method of appointment to those 'offices' as it chooses. But Congress' power under

that Clause is inevitably bounded by the express language of Art. II, s 2, cl. 2, and unless the

method it provides comports with the latter, the holders of those offices will not be 'Officers of

the United States.' They may, therefore, properly perform duties only . . . in an area sufficiently

removed from the administration and enforcement of the public law as to permit their being

performed by persons not 'Officers of the United States.'"). For purposes of the Appointments

Clause, the SEC is a "Department" of the Executive Branch, and the Commissioners function as

the "Head" of that Department. See Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.,

561 U.S. 477, 512–513 (2010).

4

There appears to be no dispute that the ALJs at issue in this case are **not** appointed by the

the SEC Commissioners. Indeed, in an Affidavit, dated June 4, 2015 that was taken in In the

Matter of Timbervest, LLC et al, Jayne L. Seidman, Deputy Chief Operating Officer of the SEC,

stated that, "[b]ased on [her] knowledge of the Commission's ALJ hiring process, [SEC] ALJ

[Cameron] Elliot was not hired through a process involving the approval of the individual

members of the Commission." In the Matter of Timbervest, LLC et al., Admin. Proc. File No. 3-

15519 (attached as Ex. 1 to Am. Compl., dated June 10, 2015).[4]

As noted above, after thoroughly reviewing facts quite similar to those presented here,

United States District Judge Leigh Martin May concluded that "Freytag mandates a finding that

the SEC ALJs exercise 'significant authority' and are thus inferior officers" and that, because

SEC ALJs are "not appropriately appointed pursuant to Article II, [their] appointment is likely

unconstitutional in violation of the Appointments Clause." Hill, 2015 WL 4307088, at *18–19.

Judge May granted the plaintiff's motion to enjoin the plaintiff's SEC administrative proceeding.

(Id. at 43.)

Judge May also determined that "the ALJ's appointment could be easily cured by having

the SEC Commissioners issue an appointment or preside over the matter themselves." (Id. at 44.)

Plaintiff's counsel in the instant case reached the same conclusion at a conference held on June

17, 2015, stating that "I think that [having the Commissioners appoint the ALJs] is one of [the

easy cures]." (See Tr. of Proceedings, dated June 17, 2015, at 4.) And, it appears that the

Commission is reviewing its options regarding potential "cures" of any Appointments Clause

violation(s). (See Tr. of Proceedings, dated June 17, 2015, at 10.)

---

[4] The same appears to be true with regard to ALJ Grimes (See Letter, dated July 28, 2015.)

### III. Conclusion & Order

**For the foregoing reasons, the Court denies the SEC's motion to dismiss [#47].** The

Court reserves judgment on Plaintiff's application for a preliminary injunction and/or imposition

of such an injunction for 7 days from the date hereof to allow the SEC the opportunity to notify

the Court of its intention to cure any violation of the Appointments Clause. The parties are

directed not to proceed with Duka's SEC proceeding in the interim.


Dated: New York, New York
August 3, 2015

*RMB*

**RICHARD M. BERMAN, U.S.D.J.**

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------- -----------------------------------x

BARBARA DUKA,                        :
                                     :
                    Plaintiff,       :
                                     :
         - against -                 :
                                     :
                                     :
U.S. SECURITIES AND EXCHANGE         :
COMMISSION,                          :
                                     :
                    Defendant.       :
-------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/12/15

15 Civ. 357 (RMB) (SN)

**DECISION & ORDER GRANTING
PRELIMINARY INJUNCTION**

        For the reasons set forth in (i) the Court's Decision & Order, dated April 15, 2015 ("April

Decision & Order"), which found that the Court has subject matter jurisdiction "to examine

Duka's plea that the SEC administrative proceedings against her be halted," (April Decision &

Order at 2-3) and (ii) the Court's Decision & Order, dated August 3, 2015 ("August Decision &

Order"), which (1) found that "[the] SEC ALJs are 'not appropriately appointed pursuant to

Article II, [and their] appointment is likely unconstitutional in violation of the Appointments

Clause,'" (August Decision & Order at 5), and (2) "reserve[d] judgment on Plaintiff's

application for a preliminary injunction . . . for 7 days from the date [t]hereof to allow the SEC

the opportunity to notify the Court of its intention to cure any violation of the Appointments

Clause," (August Decision & Order at 6), and the full record herein, and in light of the letter

dated August 10, 2015 from the SEC to the Court, **the Court hereby enters a preliminary

injunction against Defendants** for the following reasons, among others:

        A preliminary injunction is appropriate because Plaintiff has made a sufficient showing

that she faces irreparable harm and is likely to succeed on the merits. See Ger-Nis Int'l, LLC v.

1

FJB, Inc., No. 07 Civ. 898, 2007 WL 656851, at *1 (S.D.N.Y. Mar. 1, 2007); JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1999).

## I. Irreparable Harm

Without an injunction, Plaintiff would not only be forced into an unconstitutional proceeding, but would be unable to recover monetary damages from this harm as the SEC possesses sovereign immunity. See Lipkin v. U.S. S.E.C., 468 F. Supp. 2d 614, 625 (S.D.N.Y. 2006); John E. Andrus Mem'l, Inc. v. Daines, 600 F. Supp. 2d 563, 572 fn. 6 (S.D.N.Y. 2009) ("Plaintiff is unable to collect a judgment for monetary damages in this action because Defendant is . . . entitled to sovereign immunity . . . Thus, in addition to the actual and imminent harms established by the record, irreparable harm may be presumed here because the only relief available to the [Plaintiff] is injunctive."). Moreover, if the administrative proceeding is not enjoined, Plaintiff's requested relief would be rendered moot as the Court of Appeals would be unable to enjoin a proceeding which has already occurred. April Decision & Order at 12 (citing Martin–Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.")).

## II. Likelihood of Success on the Merits

Plaintiff asserts two claims under Article II of the Constitution: (1) that the ALJs' appointments violate the Appointments Clause because the ALJs, as "inferior officers" under Article II, may only so preside on due and proper appointment by a constitutional Officer, here, the Commission, and (2) that the ALJs' two levels of tenure protection violate the Constitution's separation of powers, specifically the President's power to appoint and remove Executive branch officers.

2

Plaintiff's arguments turn on this Court's finding that an ALJ is an "inferior officer." See U.S. Const. art. II § 2, cl. 2; Freytag v. Comm'r of Internal Revenue, 501 U.S. 868, 880 (991). As recognized in the Court's August Decision & Order, "the SEC ALJs are 'inferior officers' because they exercise 'significant authority pursuant to the laws of the United States.'" August Decision & Order at 3 (citing Freytag, 501 U.S. at 881). This Court's findings were supported by determinations that (1) the SEC ALJs' positions are "established by law," including 5 U.S.C. §§ 556, 557 and 15 U.S.C. § 78d-1(a), (2) "the duties, salary, and means of appointment for that office are specified by statute," specifically 5 U.S.C. § 5372, and (3) in the course of carrying out their "important functions," ALJs "take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders." Freytag, 501 U.S. at 881; see 17 C.F.R. § 200.14(a). In so holding, the Court found persuasive the opinion of United States District Judge Leigh Martin May, who, in Hill v. S.E.C., No. 1:15-CV-1801-LMM, 2015 WL 4307088 (N.D. Ga. June 8, 2015), after reviewing facts strikingly similar to those presented here, concluded that "Freytag mandates finding that the SEC ALJs exercise 'significant authority' and are thus inferior officers" and, because ALJs are "not appropriately appointed pursuant to Article II, [their] appointment is likely unconstitutional in violation of the Appointments Clause. Hill, 2015 WL 4307088, at *18-19.[1]

Under the Appointments Clause in Article II: "[T]he Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." Constitution, Art. II, § 2, cl. 2. It is well-settled that

---

[1] The Court further notes that more recently, in Gray Financial Group, et al. v. S.E.C., 15-CV-492-LMM, Dkt. No. 56 (N.D. Ga. Aug. 4, 2015), Judge May reiterated that "Freytag mandates a finding that the SEC ALJs exercise 'significant authority' and are thus inferior officers," and therefore held that "[b]ecause SEC ALJs are inferior officers, the Court finds Plaintiffs have established a likelihood of success on the merits of their Appointments Clause claim." Gray Financial, 15-CV-492 at 33, 35.

3

the Appointments Clause provides the exclusive means by which inferior officers may be appointed. See Buckley v. Valeo, 424 U.S. 1, 138-9 (1976) ("Congress may undoubtedly . . . provide such method of appointment to those 'offices' as it chooses. But Congress' power under that Clause is inevitably bounded by the express language of Art. II, s. 2, cl. 2, and unless the method it provides comports with the latter, the holders of those offices will not be 'Officers of the United States.' They may, therefore, properly perform duties only . . . in an area sufficiently removed from the administration and enforcement of the public law as to permit their being performed by persons not 'Officers of the United States.'"). Therefore, as SEC ALJs are inferior officers, their appointments must be made by the President, courts of law, or department heads.

Here, the Court has determined that the ALJs at issue were not appointed by the SEC Commissioners. See August Decision & Order at 5. As they were not appropriately appointed pursuant to Article II, their appointment is likely unconstitutional in violation of the Appointments Clause.

As to Plaintiff's second claim, that the ALJs' two level tenure protections violate Article II's Executive appointment and removal powers, the Court finds no basis to reconsider the holding of its April Decision & Order, which found "no basis for concluding, as [Plaintiff] urges, that the statutory restrictions upon removal of SEC ALJs are 'so structured as to infringe the President's constitutional authority.'" April Decision & Order at 20.

### III. Conclusion & Order

Because the Court finds Plaintiff has demonstrated irreparable harm along with a substantial likelihood of success on the merits of her claim that the SEC has violated the Appointments Clause, the Court finds a preliminary injunction is appropriate to enjoin the SEC administrative proceeding.

4

It is hereby **ORDERED** that Defendant, the U.S. Securities and Exchange Commission, is preliminarily enjoined from in any way further pursuing the pending administrative proceeding against Plaintiff, captioned In the Matter of Barbara Duka, Admin. Proc. File No. 3-16349 (Jan. 21, 2015), including the hearing scheduled for September 16, 2015.

The parties are requested to appear in this Court for a scheduling conference on Wednesday, September 16, 2015 at 12:00 p.m.

Dated: New York, New York
August 12, 2015

**RICHARD M. BERMAN, U.S.D.J.**

5